UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:22-cv-140-MOC-DSC

| | |
|---|---|
| TAMI BRUIN, *On behalf of herself and all others similarly situated*, Plaintiffs, vs. BANK OF AMERCA, N.A., Defendant. | ORDER |

**THIS MATTER** comes before the Court on a Motion to Dismiss and to Strike Class Allegations, filed by Defendant Bank of America, N.A. (Doc. No. 10).

## I. BACKGROUND

In this class action lawsuit, Plaintiff Tami Bruin alleges that Defendant Bank of America, N.A. ("BoA"), convinced Plaintiff and other reasonable consumers to pay $3 to $10 in "ACH Transfer Fees" for electronic transfers the consumers could effectuate for free by misleading Plaintiff and other reasonable consumers into believing that they had to pay these fees in order to make those transfers.

Plaintiff alleges that she incurred a $3 fee for an ACH transfer that she made from her BoA checking account on February 17, 2021. (Doc. No. 1, Compl. ¶ 40). She alleges that if she had "known that she could have made the exact same transfers for free had she initiated the transfer from the receiving bank account, she would not have paid the ACH Transfer Fees." (Id. ¶ 43).

Plaintiff asserts two claims against BoA on her own behalf and on behalf of a putative

1

nationwide class: (1) violation of North Carolina's Unfair and Deceptive Trade Practices Act, N.C. GEN. STAT. § 75.1, et seq. ("UDTPA"), and (2) unjust enrichment under North Carolina common law.

On June 13, 2022, Defendant filed the pending motion to dismiss and motion to strike, pursuant to Rules 12(b)(6) and 23 of the Federal Rules of Civil Procedure, respectively. Plaintiff has responded in opposition to the motion to dismiss, and Defendants have filed a Reply. (Doc. Nos. 15, 17). Thus, this matter is ripe for disposition.

## II. PLAINTIFF'S ALLEGATIONS

The following allegations in the Complaint are taken as true for the purposes of Defendant's motion to dismiss.

The National Automated Clearinghouse ("NACHA") system is a complex payments system operating in the background of this country's economic activity. (Compl. ¶ 10). Increasingly, the system is used for small-dollar consumer payments such as utility bills, gym memberships, insurance payments, etc. (Id.). Transactions made through the NACHA system are called "ACH transactions." Plaintiff alleges that, in every ACH transaction, there is an Originator and a Receiver, and an Originating Depository Financial Institution ("ODFI") and a Receiving Depository Financial Institution ("RDFI"). (Id. ¶ 11).

The Originator of the ACH transaction is the individual or merchant requesting that an ACH debit or credit take place. (Id. ¶ 12). The Receiver of the ACH transaction is the individual or merchant that authorized the Originator to initiate the ACH transaction. (Id. ¶ 13). The Originating Depository Financial Institution ("ODFI") is the financial institution that receives the request from the Originator and submits the request to the ACH network. (Id. ¶ 14). The Receiving Depository Financial Institution ("RDFI") is the financial institution that receives the

2

ACH transaction from the ODFI and posts the transaction to the account of the Receiver. (Id. ¶ 15).

Plaintiff alleges that, unbeknownst to reasonable consumers, the ACH system is built with a unique and elegant symmetry: any payment can either be "pushed" from an account to a recipient, or it can be, with proper authorization, "pulled" by a recipient from that same account. (Id. ¶¶ 16–18). Recipients "pulling" funds from an account do not charge fees for doing so, nor does the NACHA system assess any fees on recipients for transfers. (Id. ¶ 22). Accordingly, Plaintiff alleges, any transfer can be made via NACHA for free. (Id.).

Plaintiff alleges that BoA does not and cannot assess fees for transferring funds "pulled" from accounts. See (Id.). But it does assess fees on its accountholders for initiating transfers that are ultimately processed over the NACHA network—in other words, for starting the process that leads to "pushing" funds to a recipient. Plaintiff alleges that BoA therefore has a natural incentive to encourage its customers to use it to initiate "pushes" to recipients directly. Indeed, BoA charges a $3 to $10 fee each time it convinces an accountholder to do this, which according to Plaintiff is a wholly unnecessary service.

Plaintiff alleges that BoA used its account disclosures and its online banking interface to send the repeated message to accountholders that they must use BoA's services to effectuate a transfer and that accountholders must pay BoA's ACH Transfer Fee for the funds to be transferred at all. Plaintiff alleges that in all of its disclosures, and in its online banking interface, BoA perpetuated two falsehoods: (1) that ACH transfers had to be initiated through BoA; and (2) that the "transfer" of funds via the ACH network required paying a fee. According to Plaintiff, together, these misrepresentations caused Plaintiff and reasonable consumers to believe they had no choice but to pay the fee if they wanted their funds transferred.

3

More specifically, Plaintiff alleges that in the Online Banking Interface accountholders must use to "push" funds to a merchant, BoA explains to accountholders how they can "Transfer Money Between Your Accounts" and specifically explains that "transfers made to other banks are available in 3 delivery speeds . . . all for a fee." (Id. ¶¶ 23–25) (emphasis added). Plaintiff alleges that this representation is false, as transfers over the NACHA network do not incur any fee, and that by making this statement, BoA falsely represents that an accountholder's only choice to transfer funds is through BoA, and that a fee of some kind is unavoidable. See (Id. ¶ 24).

Plaintiff further alleges that, in its Online Banking Agreement, BoA misrepresents that "send[ing] and receiv[ing]" an "ACH (outbound)" will result in a $3 or $10 fee, depending on delivery speed. (Id. ¶¶ 25–26). In the same agreement, BoA goes on to explain that the only way to avoid such fees is to use Zelle or BillPay:

> You may also move money within the U.S. without a transfer fee by using Zelle (described in Section 4 above) or Bill Pay (described in Section 3 above). ACH and Wire transfers are alternatives that allow you to transfer funds when delivery of funds domestically by a specific date is critical or when you are transferring funds outside the U.S.

(Id. ¶ 29) (emphasis added). Plaintiff alleges that these representations are also false because it's simply not true that all ACH transfers will result in fees, as an outbound transfer that is "pulled" rather than "pushed" is free. See (Id. ¶ 30). Plaintiff alleges that, similarly, by stating that the only ways to avoid such transfer fees is to use Zelle or Bill Pay, BoA leads "reasonable consumers to believe that they must pay an ACH Transfer Fee in order to transfer money to a payee, when in fact they do not." (Id. ¶ 36).

Plaintiff alleges that, likewise, when logged into online banking, accountholders are provided with an option to "transfer" funds "between my accounts" "at other banks." (Id. ¶ 33–

34). On that screen, the only options listed are for a $3 ACH Transfer, a $10 ACH Transfer, or a $30 Wire Transfer. (Id.). Plaintiff alleges that, again, this misrepresents that the transfer must be made through BoA, and that such a transfer will necessarily result in a fee. Plaintiff alleges, furthermore, that the name of the fee itself is deceptive insofar as the name "ACH Transfer Fee" falsely reiterates that the fee is an unavoidable fee for the "transfer" of funds via the ACH network, which again is not true. (Id. ¶ 36).

Plaintiff further alleges that "the workings of the NACHA system are a mystery to the millions of American consumers whose payments are sent out on the system each day" and that BoA "is engaged in a multi-prong effort to deceive its accountholders about the workings of the NACHA system, so that it may use its superior knowledge about the system to extract extra fee income from its accountholders." (Id. ¶¶ 20, 21). Plaintiff alleges that none of BoA's major competitors charge ACH Transfer Fees like BoA does. (Id. ¶ 37).

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides that a motion may be dismissed for failure to state a claim upon which relief can be granted. A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint without resolving contests of fact or the merits of a claim. Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992), cert. denied, 510 U.S. 828 (1993). Thus, the Rule 12(b)(6) inquiry is limited to determining if the allegations constitute "a short and plain statement of the claim showing the pleader is entitled to relief" pursuant to Federal Rule of Civil Procedure 8(a)(2). To survive a defendant's motion to dismiss, factual allegations in the complaint must be sufficient to "raise a right to relief above a speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Thus, a complaint will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft

5

v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

For the purposes of a Rule 12(b)(6) analysis, a claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556). The Court must draw all reasonable factual inferences in favor of the plaintiff. Priority Auto Grp., Inc. v. Ford Motor Co., 757 F.3d 137, 139 (4th Cir. 2014). In a Rule 12(b)(6) analysis, the Court must separate facts from legal conclusions, as mere conclusions are not entitled to a presumption of truth. Iqbal, 556 U.S. at 678. Importantly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. However, well-pleaded factual allegations are entitled to a presumption of truth, and the court should determine whether the allegations plausibly give rise to an entitlement to relief. Id. at 679.

**IV.     DISCUSSION**

**A.     Plaintiff's North Carolina UDTPA Claim**

The elements of a claim under the North Carolina UDTPA are "(1) [the] defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." Bumpers v. Cmty. Bank of N. Va., 747 S.E.2d 220, 226 (N.C. 2013) (alteration in original). "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." Walker v. Fleetwood Homes of N.C., Inc., 653 S.E.2d 393, 399 (N.C. 2007) (internal quotation marks omitted). "[A] practice is deceptive if it has the capacity or tendency to deceive." Id. (alteration in original) (internal quotation marks omitted).

Here, Plaintiff essentially alleges that Defendant violated the North Carolina UDTPA

when it represented to its customers that they were required to pay a transfer fee that its customers did not have to pay. Convincing consumers to pay for an illusory or valueless service is a core deceptive business practice barred by consumer protection laws across the country. The Court finds that Plaintiff's allegations sufficiently state a claim under the North Carolina UDTPA. Therefore, the Court will deny the motion to dismiss this claim. Accord Khoday v. Symantec Corp., 858 F. Supp. 2d 1004, 1014 (D. Minn. 2012) (denying a motion to dismiss consumer protection laws where the plaintiff alleged that defendant deceived consumers into purchasing download insurance, which would supposedly allow consumers to re-download the software after sixty days, where in fact there were numerous other free methods for a customer to re-download the software); Yordy v. Plimus, Inc., No. C12-0229 TEH, 2012 WL 2196128, at *3 (N.D. Cal. June 14, 2012) (declining to dismiss the plaintiff's consumer protection claims, where the plaintiff alleged that she signed up for a subscription service for eBooks, only to receive access to books "that were already available elsewhere on the internet for free"); Gavin v. AT&T Corp., 543 F. Supp. 2d 885, 911 (N.D. Ill. 2008) (declining to dismiss the plaintiff's claim under the Illinois Consumer Fraud Act where a notice advised stockholders of their right to exchange their shares following a merger for a fee, where the shares could be exchanged elsewhere for free).

      In support of its motion to dismiss, BoA argues that its alleged actions, even if true, were not deceptive. BoA argues that the fee disclosures here are like a customer going to a restaurant that charges for water where the customer knows she can get tap water for free. Defendant describes the analogy in this way:

> Bojangles' menu board discloses the price for a bottle of water is $1.99. It does not disclose that a cup of tap water is available for free. And the menu does not disclose that Bojangles charges no fee if you buy a bottle of water from McDonald's or anywhere else. This practice is not deceptive. BofA's disclosure

7

of the fees that it charges for services that BofA provides is no different.

(Doc. No. 11 at 13).

Defendant's attempted Bojangles' analogy is silly. While reasonable consumers know that tap water is free, reasonable consumers aren't expected to know they don't have to pay a bank transfer fee, particularly where it's common knowledge among consumers that banks routinely charge a myriad of fees, and particularly where the language in the BoA disclosure documents relating to ACH Transfers expressly refer to "fees." Indeed, Plaintiff's theory is that BoA is intentionally exploiting consumers' unfamiliarity with complex NACHA rules and the NACHA payment system to recover a fee that's not required. These allegations are simply enough to state a claim for an unfair and deceptive trade practice in North Carolina.

For the foregoing reasons, the Court finds that Plaintiff has sufficiently alleged a claim under the North Carolina UDTPA. Therefore, Defendant's motion to dismiss this claim is denied.[1]

---

[1] As Plaintiff notes, the Southern District of New York recently denied BoA's motion to dismiss in a case brought by Plaintiff challenging the same conduct. Bruin v. Bank of Am., N.A., No. 21-CV-2272 (ALC), 2022 WL 992629 (S.D.N.Y. Mar. 31, 2022). In upholding Plaintiff's claims of deception under the New York and New Jersey consumer protection statutes, the court held that Plaintiff plausibly alleged materially misleading conduct. Id. at *4–5. Specifically, the court stated:
> Defendant argues that it could not have engaged in material misleading conduct because it expressly and accurately disclosed the fees it charges to initiate the ACH transfers. The Court rejects Defendant's argument and finds that Plaintiffs have satisfied the second [materially misleading] prong.
> [ . . .]
> Plaintiffs allege that Defendant misrepresents the necessity of paying fees for ACH transfers by informing "accountholders that the only way to effectuate an outbound transfer between an account at [BoA] and an account held by the same accountholder at a different financial institution is by initiating an ACH payment at [Bank of America] or by sending a costly wire." Pls.' Br. at 1. In reality, accountholders could effectuate a "pull" outbound transfer for no fee. In support of their allegations, Plaintiffs offer multiple bank-issued documents and statements. Construing these allegations as true for the purposes of this motion to

B.  **Plaintiff's Claim for Unjust Enrichment under North Carolina Common Law**

In North Carolina, unjust enrichment is premised on the "equitable principle that a person should not be permitted to enrich himself unjustly at the expense of another." Atl. Coast Line R. Co. v. State Highway Comm'n, 150 S.E.2d 70, 73 (N.C. 1966). First, BoA asserts that Plaintiff has not alleged unjust enrichment because Plaintiff "voluntarily paid" a fee to BoA for "services that the plaintiff received." (Def. Mot. at 14). As discussed above, however, Plaintiff alleges that she was misled into paying a fee for an ACH transfer that she would not have paid for had she known she didn't have to. Plaintiff alleges that she reasonably believed she was required to initiate the ACH transfer through BoA and was further required to pay a fee for an ACH "transfer." Plaintiff alleges she was duped into paying for an ACH "initiation" she did not need and could get for free elsewhere.

The Court agrees with Plaintiff that the mere fact that BoA actually provided that "initiation" does not undercut Plaintiff's unjust enrichment claim. See Intercollegiate Women's Lacrosse Coaches Ass'n v. Corrigan Sports Enters., Inc., 505 F. Supp. 3d 570, 587 (M.D.N.C. 2020) (declining to accept the defendant's argument that the retention of benefit was not unjust at the pleading stage); see also In re Auto. Parts Antitrust Litig., 50 F. Supp. 3d 836, 862–63 (E.D. Mich. 2014) ("Defendants argue that their retention of the payment is not unjust given the consideration they have provided. There is no dispute that Defendants gave Bearings to their

---

dismiss, the Complaint sufficiently states a claim.

(Id. at *4). North Carolina's consumer protection statute does not materially differ from the New York or New Jersey's.

9

direct customers. Nevertheless, the Court disagrees with Defendants that the exchange of Bearings for payment bars IPPs' unjust enrichment claims. The issue is whether the transaction was unjust.… Defendants have failed to cite a single case finding that payment or receipt of anything of value from a defendant will defeat a plaintiff's claims for unjust enrichment."); In re K-Dur Antitrust Litig., 338 F. Supp. 2d 517, 545 (D.N.J. 2004) ("Plaintiff's receipt of valuable medicine for their payments does not, as Defendants contend, bar an unjust enrichment claim."). Moreover, at the very least, BoA's retention of the fee is a fact issue that cannot be decided on a motion to dismiss. In re Valsartan, MDL No. 2875, 2020 WL 8970347, at *21 (D.N.J. Mar. 12, 2020) ("Determinations that depend on evaluating whether a benefit received approximates the value paid are primarily questions of fact, and as such, are not appropriately addressed on a motion to dismiss.").

Second, BoA argues a claim for unjust enrichment cannot be sustained when a contract governing the dispute exists. (Def. Mot. at 12). But the existence of a valid contract does not preclude an unjust enrichment claim if the subject matter of the suit is not directly covered by an enforceable contract provision. Spirit Locker, Inc. v. EVO Direct, LLC, 696 F. Supp. 2d 296, 305 (E.D.N.Y. 2010). Here, Plaintiff does not argue that BoA breached a specific contractual provision but, instead, alleges that BoA tricks accountholders into paying for an ACH transfer that she can otherwise get for free, which is unjust. Thus, BoA's reliance on the Online Banking Service Agreement to avoid Plaintiff's unjust enrichment claim fails.

Moreover, "[c]ourts may refuse to dismiss an unjust enrichment claim and allow the claim to proceed as an alternative theory despite defendants' argument that an express contract governed the parties' relationship." Urbino v. Ambit Energy Holdings, LLC, No. CIV.A. 14-5184 MAS, 2015 WL 4510201, at *7 n.8 (D.N.J. July 24, 2015). Indeed, "multiple courts have

10

allowed a plaintiff to plead claims under both theories of recovery in the alternative and have declined to dismiss unjust enrichment claims at the motion to dismiss stage finding such a dismissal premature." Network Commodities, LLC v. Golondrinas Trading Co., LTD., No. CIV. 11-3119 NLH/KMW, 2013 WL 1352234, at *11 (D.N.J. Apr. 1, 2013).

Here, the Court finds that Plaintiff has sufficiently alleged a claim for unjust enrichment under North Carolina common law. Therefore, Defendant's motion to dismiss this claim is denied.

### C. Defendant's Motion to Strike the Class Allegations

Finally, BoA also moves to strike the nationwide class, arguing that choice-of-law issues preclude class certification. "A motion to dismiss a complaint's class allegations should be granted when it is clear from the face of the complaint that the plaintiff cannot meet Rule 23's requirements for certification because the plaintiff has failed to properly allege facts sufficient for a class." Hogans v. Charter Commc'ns, Inc., 563 F. Supp. 3d 464, 472 (E.D.N.C. 2021), motion to certify appeal denied, No. 5:20-CV-566-D, 2022 WL 1500859 (E.D.N.C. May 12, 2022). "Generally, however, courts do not dismiss class allegations at the pleadings stage but instead allow for precertification discovery before making a certification decision under Federal Rule of Civil Procedure 23(c)(1)." Id. (refusing to strike class allegations at the pleadings stage). Here, the Court agrees with Plaintiff that the choice of law determination is premature, and thus the motion to strike will be denied. Guzman v. Diamond Candles, LLC, No. 1:15CV422, 2016 WL 5679451, at *3 (M.D.N.C. Sept. 30, 2016) (resolution of the choice-of-law issues presented here requires a "fact-specific inquir[y]" that is ill suited for resolution at the motion to dismiss stage).

### V. CONCLUSION

For the reasons stated herein, the Court will deny Defendant's motion to dismiss and motion to strike the class allegations.

**IT IS, THEREFORE, ORDERED** that Defendant's Motion to Dismiss and Motion to Strike Class Allegations, (Doc. No. 10), is **DENIED**.

Signed: August 31, 2022

Max O. Cogburn Jr
United States District Judge