**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| TAMI BRUIN, on behalf of herself and all others similarly situated, | |
| Plaintiff, | Case No. 3:22-cv-140-MOC-WCM |
| v. | |
| BANK OF AMERICA, N.A., | |
| Defendant. | |

**BRIEF IN SUPPORT OF MOTION FOR**
**PRELIMINARY APPROVAL OF SETTLEMENT**

ACTIVE/124707381.3

## INTRODUCTION

Plaintiffs Tami Bruin and Eline Barokas[1] ("Plaintiffs") respectfully submit this brief in support of preliminary approval of a proposed class action Settlement with Defendant BANA.[2] The Settlement provides substantial monetary relief to the Settlement Class along with the agreement not to assess fees in the future will continue to inure to the benefit of the Settlement Class Members and future BANA Accountholders. If approved, the Settlement will comprise a common fund of $8,000,000 and Settlement Class Members will receive their payments automatically, without having to submit a claim or take any other action. Just as significant is BANA's agreement to not assess the fees at the heart of this litigation—the fees on push transfers of Accountholder funds via the National Automated Clearing House Association network to the Accountholder's external account. This agreement is a remarkable result for Class Members and the Parties estimate it will save current BANA Accountholders more than $350,000 per month in fees that would otherwise have been assessed. Over the five-year term of the Settlement, that equates to approximately $21 million in additional relief for the Class and Accountholders. Thus, the total monetary value of the Settlement is estimated to be the combination of the $8 million common fund and the $21 million agreement not to assess those fees, equivalent to over 133% of what the Class could have recovered at trial in a best-case scenario. Declaration of Wilkerson, et. al. ("Joint Decl."), at ¶¶ 7-9.

The package of Settlement benefits here is an outstanding recovery for the Settlement Class Members in a case with a myriad of legal risks, and it easily satisfies all Fourth Circuit criteria for

---

[1] A Stipulation to Amend the Complaint to include Plaintiff Eline Barokas and revise the Settlement Class to reflect consumers who paid and were not refunded transfer fees for first party ACH transfers.

[2] Capitalized terms are defined in the Settlement Agreement. The Settlement Agreements and exhibits are attached as Exhibit 1 hereto.

preliminary approval. Accordingly, Plaintiffs respectfully request that this Court enter an Order: (1) granting Preliminary Approval of the Settlement; (2) certifying the proposed Settlement Class for settlement purposes under Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure; (3) appointing Plaintiffs as Class Representatives; (4) approving the Notice Plan set forth in the Settlement and approving the form and content of the Notices; (5) approving and ordering the opt-out and objection procedures set forth in the Settlement; (6) staying all deadlines in the Action pending Final Approval of the Settlement; (7) appointing as Class Counsel the law firms and attorneys identified herein; and (8) scheduling a Final Approval Hearing. A Proposed Order is attached hereto.

## FACTUAL BACKGROUND

### I. The Litigation

On March 17, 2021, Plaintiffs filed a class action in the United States District Court for the Southern District of New York, alleging claims for violations of state consumer protection laws in North Carolina, New York, and New Jersey, and for unjust enrichment, arising out of BANA's alleged imposition of improper fees on ACH transfer fees for outbound or "push" transfers to external bank accounts (the "*Barokas* Action"). *See Bruin et al. v. Bank of America, N.A.*, S.D.N.Y. Case No. 1:21-cv-02272, ECF No. 5.

On June 23, 2021, BANA moved to dismiss the class action complaint, and the Court dismissed Plaintiff Bruin's claims but denied the motion as to Plaintiff Barokas' claims under New York General Business Law, N.Y. Gen. Bus. Law § 349, *et seq*. (the "NYDPA") and the New Jersey Consumer Fraud Act, N.J.C.F.A § 56:8-1, *et seq*. (the "NJCFA"). *See Barokas* Action, ECF No. 28.

After her dismissal from the *Barokas* Action, Plaintiff Bruin filed this class action on April 4, 2022 in this Court, asserting almost identical claims for unjust enrichment and violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C.G.S. § 75.1-1, *et seq*. (the "NCUDTPA"), as those alleged (and previously dismissed) in the *Barokas* Action regarding ACH Transfer Fees. *See Bruin v. Bank of America, N.A.*, W.D.N.C. Case No. 3:22-cv-140, ECF No. 1.

On June 13, 2022, BANA moved to dismiss the class action complaint, and on September 1, 2022, the Court denied BANA's motion, finding that it was premature to assess the viability of the class without affording Bruin the opportunity for discovery. *See* ECF No. 21.

Following the Court's Order on the Motion to Dismiss, and after the Court issued a Scheduling Order, the Parties began an extensive discovery effort. Plaintiff Bruin served Interrogatories and Requests for Production of Documents, and engaged in extensive negotiations with BANA over a confidentiality order and protocol to govern the exchange of electronically stored information. Joint Decl., ¶ 2. The Parties immediately began meeting and conferring on various discovery issues, such as BANA's discovery responses, custodial ESI searches, and the production of transactional data. *Id*., ¶3. BANA produced, and Plaintiffs' Counsel reviewed, critical internal documents related to BANA's ACH fee practices, such as bank contractual agreements and transactional database excerpts showing how much money it made from the disputed fees at issue, among others. *Id*., ¶4. Plaintiffs also took the deposition of a BANA corporate representative. BANA took, and Plaintiffs defended, the deposition of Plaintiff Bruin, as well. *Id*., ¶5

The Parties participated in a formal mediation session with Judge Diane Welsh (Ret.) on June 30, 2023, which ultimately resulted in the Parties reaching a settlement in principle. *Id.* ¶6. The Parties then proceeded with limited confirmatory discovery related to damages.

## II.    The Settlement

### A.    Overview

Under the Settlement Agreement, BANA has agreed to do the following: (1) make a cash payment into a Settlement Fund of $8 million; and (2) not assess an ACH First Party Fee for five years, which can be valued at $21 million. Settlement ¶¶ 1.46, 1.35, 2.1, 2.2, 6.

The $8 million Settlement Fund will be used to pay Settlement Class Members, the costs of notice and administration, any attorneys' fees and expenses that the Court may award to Class Counsel, and any Service Award to the Class Representatives. *Id.* ¶6.3. BANA agreed to not assess ACH First Party Fees for a period of at least five (5) years from the Preliminary Approval of the Settlement. *Id.* ¶ 1.35.

The Settlement Fund will be distributed to Settlement Class Members according to the distribution plan set out in the Settlement Agreement. *Id.* ¶ 6.6, 6.7. Importantly, Settlement Class Members *do not* need to submit a claim form in order to receive payment. Current Accountholders will receive automatic *pro rata* distributions straight to their accounts. Past Accountholders will receive a check in the mail. Payments from the Net Settlement Amount to each Settlement Class Member shall be distributed *pro rata* based on the unrefunded ACH First Party Fees paid from each Settlement Class Member Account, with all Settlement Class Members receiving a minimum payment of $2.00.

After two hundred and forty (240) days from the Effective Date, any excess funds remaining from the Settlement Amount that have not been distributed in accordance with other provisions of this Settlement Agreement shall, if economically feasible, be distributed to the Settlement Class Members who successfully cashed checks or received their Settlement Class Member Payment as a credit. *Id.* ¶ 6.7. If a second distribution of remaining funds costs more than

the amount to be distributed or is otherwise economically unfeasible, or if additional funds remain after a second distribution, Class Counsel shall petition the Court to distribute any remaining funds to a consumer protection or financial services organization as a *cy pres* recipient. *Id.* There will be no reversion to BANA. *Id.*

### B. The Settlement Class

The proposed Settlement Class is defined as the following:

**ACH First Party Class**: All Accountholders in the United States who, during the Class Period, paid and were not refunded an ACH First Party Fee.

*Id.* ¶ 3.1. The class period is April 4, 2018 through the date on which the Court enters an order granting preliminary approval to the settlement. *Id.* ¶ 1.13. In exchange for the consideration described above, the Settlement Class shall release BANA from any claims that were or could have been alleged in this action. *Id.* ¶¶ 1.39, 11.1.

### C. Settlement Administrator and Proposed Notice Plan

The proposed Settlement Administrator is Kroll Settlement Administration LLC ("Kroll"), a nationally recognized and experienced class action administrator. The Parties' proposed Notice Plan is designed to reach as many Settlement Class Members as possible at the lowest cost to the Settlement Class. In Class Counsel's view, it is the best notice practicable under the circumstances. Notice shall be provided through the following means: (1) Email Notice to Current Accountholders who have agreed to receive account statements electronically; (2) Postcard Notice to Past Accountholders and those Current Accountholders who have not agreed to receive statements electronically; and (3) Long Form Notice, which will be available on the Settlement Website and the Settlement Administrator will mail to Settlement Class Members who request it. *Id.* ¶¶ 5.2. In addition, the Settlement Administrator will create and maintain a Settlement Website containing important information about the Settlement, and case-related documents. *Id.* ¶¶ 5.3.

The Notices will include, among other information, a description of the material terms of the Settlement; a date by which Settlement Class members may exclude themselves from, or "opt-out" of, the Settlement Class; a date by which Settlement Class Members may object to the Settlement; the date on which the Final Approval Hearing is scheduled to occur; and the address of the Settlement Website at which Settlement Class members may access the Settlement Agreement and other related documents and information. *Id.*, Exs. A-C.

**D.      Release**

The Release is narrowly tailored. As of the Effective Date of the Settlement, Plaintiffs and each Settlement Class Member who does not opt out agrees to release any claims "arising out of or relating in any way to the allegations made in the Action . . . ." *Id.* ¶¶ 1.38.

**E.      Opt-Outs and Objections**

The Notice will inform Settlement Class Members of their right to opt out or object. *Id.*, Exs. A-C. Settlement Class Members may opt out of the Settlement Class at any time during the Opt-Out Period. *Id.* ¶ 1.51. The Opt-Out Period ends 45 days prior to the Final Approval Hearing. *Id.* ¶¶ 1.30, 10.5. The deadline for the Opt-Out Period will be specified in each of the Notices. The Notices will also inform Settlement Class members of their right to object to the Settlement and/or to Class Counsel's application for attorneys' fees, costs, and expenses, and/or Service Award. *Id.*, Exs. A-C. Objections must be submitted no later than 45 days prior to the Final Approval Hearing. ¶¶ 1.30, 8.2.2. Objections must include information identified in the Settlement Agreement including information about the objector, their counsel, and previous objections they or counsel have made to ensure that any objections are made for a proper purpose. *Id.* ¶ 8.2.

### F.	Attorneys' Fees, Costs, and Expenses, and Service Award

To date, Class Counsel has not been paid for their extensive efforts or reimbursed for litigation costs and expenses incurred. The Settlement Agreement provides that Class Counsel will apply for an award of Attorneys' Fees and Costs. *Id.* ¶ 9.1. BANA has agreed not to oppose a request for fees up to $2,666,667, which represents one-third of the cash Settlement Fund and which would represent approximately 9% of the value of the common fund and the prospective relief combined. *Id.* ¶ 9.3. Such award will serve to compensate Class Counsel for the time, risk and expense they incurred pursuing claims on behalf of Settlement Class members. If the Court does not approve an award of fees, costs, and expenses in whole or in part, however, that will not prevent the Settlement from becoming effective nor shall it be grounds for termination. *Id.* ¶ 7.1.

Class Counsel will also ask the Court to approve Service Awards. BANA will not oppose such a request of $5,000 for each Class Representative. In total, this amounts to a "Service Award" for both Class Representatives of $10,000. *Id.* ¶ 10.1.

## LEGAL STANDARD

Federal Rule of Civil Procedure 23 requires court approval of class action settlements. Fed. R. Civ. P. 23(e). "The primary concern addressed by Rule 23(e) is the protection of class members whose rights may not have been given adequate consideration during the settlement negotiations." *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991). Accordingly, the Court may approve a settlement only upon a finding that the settlement is fair and adequate. *See id.* The relevant factors in determining "fairness" are "that the settlement was reached as a result of good-faith bargaining at arm's length, without collusion, on the basis of (1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel." *Id.* at 159. Adequacy is assessed

through "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter of the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *Id.* at 159.

## ARGUMENT

### I.     The Court Should Approve the Settlement.

After nearly three years of hard-fought litigation, the Parties have reached a settlement that provides substantial cash compensation to Settlement Class Members along with an agreement to protect Settlement Class Members from incurring fees on otherwise free push transfers of account holder funds via the National Automated Clearing House Association network to the accountholders external account for at least five years. In total, the Parties estimate the value of the Settlement to be comprised of an $8,000,000 Settlement Fund and the agreement not to assess ACH First Party Fees that will result in approximately $21,000,000 in savings to Settlement Class Members who are Current Accountholders over the next five years. This Settlement was the result of arm's-length negotiations by experienced counsel for both Plaintiffs and BANA, and is an outstanding result for the Class.

Under Rule 23, a settlement must be "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The Fourth Circuit has bifurcated the preliminary approval analysis into "consideration of the fairness of settlement negotiations and the adequacy of the consideration to the class." *Gaston v. LexisNexis Risk Sols. Inc.*, No. 5:16-cv-00009, 2021 WL 244807, at *5 (W.D.N.C. Jan. 25, 2021) (citing *In re Jiffy Lube Secs. Litig.*, 927 F.2d at 158–59). The 2018 amendments to Rule 23(e) also formalize a list of core considerations for settlement approval such as: (1) whether class

representatives and class counsel have adequately represented the class, (2) whether the proposal was negotiated at arm's length, (3) whether the relief provided for the class is adequate, and (4) whether the proposal treats Settlement Class Members equitably relative to each other. Fed. R. Civ. P. 23(e)(2). The Fourth Circuit has held that the *Jiffy Lube* standards "almost completely overlap with the new Rule 23(e)(2) factors, rendering the analysis the same." *See Herrera v. Charlotte School of Law, LLC*, 818 F. App'x 165, 176 n.4 (4th Cir. 2020) (citing *In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices & Prods. Liab. Litig.*, 952 F.3d 471, 474 n.8 (4th Cir. 2020)). At the preliminary approval stage, "the Court need only find that the settlement is within 'the range of possible approval.'" *Gaston*, 2021 WL 244807, at *5 (quoting *Scott v. Family Dollar Stores, Inc.*, No. 3:08-cv-00540, 2018 WL 1321048, at *3 (W.D.N.C. Mar. 14, 2018)). The Settlement here, reached after years of litigation by sophisticated counsel provides significant monetary and prospective relief to the Class and fits comfortably within the range of approval.

A.      **The Settlement Is Fair.**

Each of the Fourth Circuit's relevant fairness factors weighs in favor of preliminarily approving the Settlement here. *See In re Jiffy Lube Secs. Litig.*, 927 F.2d at 158–59.

*First*, the proposed settlement was reached after nearly three years of active, hard-fought litigation. Plaintiffs' claims were tested by BANA's motion to dismiss, which was thoroughly briefed and litigated by both sides and duly considered by this Court and the *Barokas* court.

*Second*, the Settlement follows active and extensive discovery by both sides. The Parties exchanged and critical internal documents and data from BANA and documents from Plaintiffs. Plaintiffs have deposed a BANA representative. The Parties have also exchanged formal written discovery. Importantly, no mediation or settlement discussions took place until after Plaintiffs'

counsel had obtained and analyzed classwide damages numbers in order to determine a reasonable settlement value. This extensive discovery has given both sides "additional insight to evaluate the merits" of the case and has "laid the groundwork for the arm's-length negotiations that resulted in the settlement." *Gaston*, 2021 WL 244807, at *6.

*Third*, the circumstances of the settlement negotiations demonstrate that the Settlement was the result of a fair, arm's length process that was often contentious. The Parties engaged in a formal mediation with Judge Diane Welsh (Ret.) in June 2023, followed by additional conversations that eventually led to the settlement being accepted. The Parties engaged in additional confirmatory discovery as part of the settlement process.

*Finally*, counsel for both sides have significant experience in consumer class-action litigation involving bank-fee practices. Class Counsel is highly experienced in consumer class action litigation, as demonstrated by their firm resumes, and they have brought that significant experience to bear in litigating and settling this case. *See* Joint Decl. ¶¶17-22, Exs. A-C; *see also* Fed. R. Civ. P. 23(e)(2)(A). Class Counsel collectively have decades of experience litigating consumer class actions against financial institutions and have litigated and settled dozens of class actions involving various types of improper fees. *Id*. Counsel "may be evaluated by their affiliation with well-regarded law firms with strong experience in the relative field," and by any measure, Class Counsel satisfies this prong. *See In re Neustar, Inc. Securities Litig.*, No. 1:14cv885, 2015 WL 5674798, at *11 (E.D. Va. Sept. 23, 2015) (quoting *In re Am. Capital S'holder Derivative Litig.*, No. 11-2424-PJM, 2013 WL 3322294, at *4 (D. Md. June 28, 2013)). Based on their experience, Class Counsel endorse the Settlement as fair and adequate. Joint Decl. ¶ 21. Counsel's "endorse[ment of] the settlement as fair and adequate under the circumstances . . . should be

afforded due consideration in determining whether a class settlement is fair and adequate." *Gaston*, 2021 WL 244807, at *6.

**B.    The Settlement Provides Substantial Relief to Class Members.**

The substantial relief provided by the Settlement also favors approval. Under the Settlement, BANA will provide a settlement fund of $8 million, which alone represents a significant portion of the estimated classwide damages should Plaintiffs have prevailed on every issue at class certification and trial. Joint Decl., ¶¶13-15. Assuming Plaintiffs prevailed at trial on liability (which BANA would have vigorously contested), Plaintiffs would have argued for a refund of every improperly assessed fee incurred by Class members, and the $8 million recovery represents approximately 37% of that damages figure.  In addition to this cash payment, however, BANA has also agreed to not charge fees on otherwise free push transfers of Accountholder funds via the National Automated Clearing House Association network to the Accountholders' external account, which will save Current and future Accountholder Settlement Class Members over $21,000,000 over the next five years in fees. In short, the settlement benefits are tremendous.

Courts assess the adequacy of relief provided under a settlement based on four factors: (1) the costs, risks, and delay of trial and appeal, (2) the effectiveness of the proposed method of distributing relief to the class, (3) the terms of the proposed award of attorney's fees, and (4) the existence of other agreements reached by the Parties outside the settlement. Fed. R. Civ. P. 23(e)(2)(C); *see also Jiffy Lube*, 927 F.2d at 159. Each factor is met here.

*1.    Costs, risks, and delay of trial and appeal*

Plaintiffs' remaining claims for breach of contract, violation of the UCL, and violation of the NCUDTPA are strong, but maintaining these claims through trial and appeal would entail significant risk, uncertainty, and costs for both sides. Throughout this case, BANA has zealously

disputed all of the Plaintiffs' claims. And BANA would have undoubtedly challenged class certification and moved for summary judgment. Both of these motions could have required appellate resolution. Where, as here, both sides have notched significant litigation victories and defeats over the course of several years of litigation, the resolution of potential appeals by both sides "would require protracted adversarial litigation and appeals at substantial risk and expense to both Parties." *Gaston*, 2021 WL 244807, at \*6. This strong likelihood of "substantial future costs favors approving the proposed settlement." *Id.*

### 2. *Effectiveness of the proposed method of distributing relief to the class*

The Settlement Fund will be *automatically* distributed to Settlement Class Members, without any need for a claim form, either by check or direct deposit. Under the terms of the Settlement, 45 days after the Settlement Effective Date, BANA will directly deposit payments under the settlement into the accounts of Settlement Class Members who are current accountholders as of the date of final approval of the Settlement. Settlement ¶ 6.6.3.3. For those Settlement Class Members that are not Current Accountholders at the time of final approval, BANA will mail them a check. *Id.* ¶ 6.6.3.4. Any remaining funds after the initial disbursement will be distributed to the Settlement Class Members that successfully cashed check or received direct deposits, to the extent economically feasible. *Id.* ¶ 6.7. If there are funds remaining after this second distribution or the distribution is not economically feasible, Class Counsel will petition the Court to distribute the remaining funds to an appropriate *cy pres* recipient, either a consumer protection or financial services charity. *Id.*

### 3. *Terms of the proposed award of attorney's fees*

Under the terms of the Settlement, Class Counsel may move for an award of attorneys' fees. Settlement ¶ 9.1. Plaintiffs intend to seek up to one-third of the Settlement Fund, or

$2,666,667, in attorneys' fees and will move for approval of an attorneys' fee award at least thirty days before the Opt-Out and Objection Deadline. Although the motion for an award of attorneys' fees is not yet before this Court, a fee award of one-third of the common cash fund is consistent with fee awards in this Circuit and in similar cases. "Within the Fourth Circuit, contingent fees of roughly 33% are common." *Earls v. Forga Contracting, Inc*., No. 1:19-CV-00190-MR-WCM, 2020 WL 3063921, at *4 (W.D.N.C. June 9, 2020); *see also Kelly v. The Johns Hopkins Univ*., No. 1:16-cv-2835-GLR, 2020 WL 434473, at *3 (D.Md. January 28, 2020) ("Contingent fees of up to one-third are common in [the 4th] circuit.").

### 4. *Existence of other agreements reached by the Parties outside the settlement*

Courts also consider whether there are additional agreements between the Parties outside of the settlement agreement that could cast doubt on the fairness or adequacy of the settlement. *See* Fed. R. Civ. P. 23(e)(2)(C)(iv). The Settlement here "contains the Parties' entire agreement on and understanding of the subject-matter at issue in the Action," and "supersedes all prior negotiations and proposals, whether written or oral." Settlement ¶ 13.9.2.

### C. The Settlement Treats Settlement Class Members Equitably.

The Settlement provides relief to Settlement Class Members on a *pro rata* basis depending on the total amount of unrefunded ACH First Party Fees that the Settlement Class Member paid during the Class Period. Settlement ¶ 6.6.2. This method for calculating each class member's recovery treats each class member equitably based on the extent to which they were impacted by BANA's conduct. All Current and future BANA Accountholder Settlement Class Members likewise benefit from the agreement not to assess ACH First Party Fees required by the Settlement.

## II. The Court Should Certify the Settlement Class.

A.     **The Proposed Class Is Ascertainable.**

Under Rule 23, a class definition must be sufficiently definite, so that "a court can readily identify the class members in reference to objective criteria." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014). This ascertainability requirement is easily satisfied in this case, as the members of the Class are identifiable based on objective criteria applied to BANA's well-maintained records covering every potential transaction and Class member during the Class Period.

B.     **The Proposed Class Satisfies the Requirements of Rule 23(a).**

Under Federal Rule of Civil Procedure 23(a), a class may be certified when "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative Parties are typical of the claims or defenses of the class; and (4) the representative Parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). The class here satisfies each of these requirements.

1.     *Numerosity*

Class certification is appropriate when class members are "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While "[n]o specified number is needed to maintain a class action," *Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir. 1984), courts within the Fourth Circuit generally "find classes of at least 40 members sufficiently large to satisfy the impracticability requirement," *In re Titanium Dioxide Antitrust Litig.*, 284 F.R.D. 328, 337 (D. Md. 2012), *amended*, 962 F. Supp. 2d 840 (D. Md. 2013) (citation omitted). Here, the Class contains hundreds of thousands of Settlement Class Members. Numerosity is therefore satisfied.

2.     *Commonality*

Rule 23's requirement that there are "questions of law or fact common to the class," is also satisfied here. A common question is "one that can be resolved for each class member in a single

hearing," and does not turn on the "'individual circumstances of each class member.'" *Thorn v. Jefferson-Pilot Life Ins. Co*., 445 F.3d 311, 319 (4th Cir. 2006) (quotation omitted). A common question must be "capable of classwide resolution" such that "determination of its truth or falsity will resolve an issue that is central" to each class member's claims "in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Rule 23(a) does not require commonality of all issues; rather, "even a single common question will do." *Id.* at 359 (quotation omitted),

Here, there are several common legal and factual questions that are common to all members in each class and even across classes. Common questions include: (1) whether BANA violated the consumer protection laws of North Carolina through its fee policies and practices; (2) the proper method or methods by which to measure damages; and (3) whether BANA was unjustly enriched. These common questions are sufficient to satisfy the requirements of Rule 23(a)(2).

### 3. *Typicality*

Under Rule 23's typicality requirement, class representatives are "typical" if they are "part of the class and possess the same interest and suffer the same injury as the class members." *Broussard v. Meineke Discount Muffler Shops, Inc*., 155 F.3d 331, 338 (4th Cir. 1998). "The essence of the typicality requirement is captured by the notion that 'as goes the claim of the named plaintiff, so goes the claims of the class.'" *Deiter v. Microsoft Corp*., 436 F.3d 461, 466 (4th Cir. 2006) (citing *Broussard*, 155 F.3d at 340).

The proposed Class Representatives assert the same claims stemming from the same conduct by BANA as the absent Settlement Class Members. The proposed Class Representatives' claims arise from the same factual circumstances, are based on the same legal theories, are subject to the same defenses, and rise or fall with the claims of the absent Settlement Class Members. Typicality is satisfied here.

### 4. *Adequacy of Representation*

The adequacy inquiry "serves to uncover conflicts of interest between named Parties and the class they seek to represent." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). For a conflict of interest to defeat class certification, that conflict "must be fundamental," "must go to the heart of the litigation," and "must be more than merely speculative or hypothetical." *Gunnells v. Healthplan Servs., Inc*., 348 F.3d 417, 430-31 (4th Cir. 2003) (quoting 6 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 18:14 (4th ed. 2002).

There is no such conflict here. As discussed above, the proposed Class Representatives assert the same claims based on the same alleged conduct as the absent Settlement Class Members. There is likewise no conflict between the Settlement Class Members, as they are all compensated under the settlement on a *pro rata* basis based on the total amount of unrefunded ACH First Party Fees that the Settlement Class Member paid during the Class Period. Moreover, the proposed Class Representatives and absent Class Members who are Current or future Accountholders benefit from the agreement not to assess ACH First Party Fees.

Class Counsel also satisfies the adequacy requirement. Class Counsel has effectively handled numerous consumer protection and complex class actions, including in the area of financial services, and bank fees specifically. *See* Joint Decl. ¶¶16-20, Exs. A-C. Class Counsel are qualified, experienced, and able to conduct this litigation and will fully and adequately represent the Class.

### C. **The Proposed Class Satisfies the Requirements of Rule 23(b).**

### 1. *Predominance*

The first requirement under Rule 23(b)(3) is that questions of law or fact common to Settlement Class Members predominate over questions affecting only individual members. Fed.

R. Civ. P. 23(b)(3). This inquiry tests whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997); *see also Gunnells*, 348 F.3d at 428.

Here, Plaintiffs seek to remedy common legal grievances based on BANA's assessment of certain fees, allegedly in violation of BANA's account agreements. The common questions of the legality of this practice and BANA's policies associated with the practice predominate over questions—if any—affecting only individual Settlement Class Members, providing a common link between all the Settlement Class Members and BANA. *See Jeffreys v. Comm'ns Workers of Am., AFL-CIO*, 212 F.R.D. 320, 323 (E.D. Va. 2003) (finding predominance satisfied where [t]he question in each individual controversy" would be resolved according to the same legal inquiry); *Talbott v. GC Servs. Ltd. P'Ship*, 191 F.R.D. 99, 105-06 (W.D. Va. 2000) (finding predominance satisfied based on the "standardized nature" of the defendant's conduct). "The fact that damages will differ from class member to class member does not defeat the finding of predominance because liability is common to the class." *Jeffreys*, 212 F.R.D. at 323.

### 2. *Superiority*

Finally, the Court must determine whether a class action is superior to other methods of adjudication for the fair and efficient adjudication of the controversy. *See* Fed. R. Civ. P. 23(b)(3). The factors to be considered are: (1) individual class members' interest in controlling individual cases; (2) the existence of related litigation; (3) the desirability of concentrating the litigation in one forum; and (4) manageability. *Droste v. Vert Capital Corp.*, No. 3:14-cv-467, 2015 WL 1526432, at *8 (E.D. Va. April 2, 2015). In settlement cases, courts need not consider the last factor. *Amchem Prods.*, 521 U.S. at 593. Here, a class action is superior to individual suits.

First, individual suits are unlikely here because the probable recovery (even of full damages) is relatively small per Settlement Class Member, particularly compared to the expense of litigation. *See In re NeuStar, Inc.*, 2015 WL 5674798, at *8 (finding superiority satisfied where individual actions were "unlikely due to the size of probable recovery and expense of individual litigation). Where the "policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights," *Amchem*, 521 U.S. at 617, a suit like this is well-suited for class action litigation. Second, Class Counsel is not aware of other pending individual litigation against BANA regarding the practices at issue in this Action. Joint Decl. ¶22. And third, it would promote judicial economy to resolve this case as a class before this Court rather than requiring individual plaintiffs to file separate lawsuits. *In re NeuStar, Inc.*, 2015 WL 5674798, at *9. Accordingly, a class action is a superior method of adjudication.

## III.    The Court Should Appoint Settlement Class Counsel.

Fed. R. Civ. P. 23(g) requires a Court to appoint class counsel. In appointing class counsel, the Court "must" consider: (a) the work counsel has done in identifying or investigating potential claims in the action; (b) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the  action; (c) counsel's knowledge of the applicable law; and (d) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). *See also In re Neustar*, 2015 WL 5674798, at *13. The court "may" also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Proposed Class Counsel from the law firms of KalielGold PLLC ("KalielGold"), Edelsberg Law, P.A. ("Edelsberg Law"), Shamis & Gentile, P.A. ("Shamis & Gentile"), and the Van Winkle

Law Firm ("Van Winkle") have expended a great deal of time, effort, and expense investigating, litigating, and resolving this Action. Further, as set forth in the firm resumes, each attorney from each firm is highly experienced in complex consumer class action litigation. *See* Joint Decl. Exs. A-C (Firm resumes of Class Counsel). It is clear from their track-record of success that Class Counsel are highly skilled and knowledgeable concerning class-action practice. Class Counsel have the experience to represent the Settlement Class vigorously. Accordingly, Plaintiffs request that the Court appoint Sophia Gold of KalielGold; Christopher Gold of Edelsberg Law; and Andrew Shamis of Shamis & Gentile as co-lead counsel, and David M. Wilkerson of The Van Winkle Law Firm as liaison counsel.

## IV. The Court Should Approve the Class Notice Plan and Appoint the Settlement Administrator.

The Parties' proposed Notice Plan is formulated to conform with the procedural and substantive requirements of Rule 23. Due process and Rule 23 require that Settlement Class members receive notice of the settlement and an opportunity to be heard and participate in the litigation. *See* Fed. R. Civ. P. 23(c)(2)(B). The mechanics of the notice process are left to the discretion of the Court, subject only to the broad reasonableness standards imposed by due process.

Here, the Notice Plan contemplates notice via direct mail and email. A Long Form Notice is also available for Settlement Class members who request it, and it will be posted on the Settlement Website. To ensure that notice reaches as many Settlement Class members as possible, the Settlement Administrator will perform reasonable address traces for the initial Postcard Notice and Email Notice.

All of the Notices will include important information about the Settlement, including how to opt out or object, and where to find more information about the case or contact Class Counsel. The substance of the notice will fully apprise Settlement Class members of their rights.

Additionally, the Notices are designed to be "noticed," reviewed, and—by presenting the information in plain language—understood by Settlement Class members. The design of the Notices follows principles embodied in the Federal Judicial Center's illustrative "model" notices posted at www.fjc.gov. The Notices contain plain-language summaries of key information about Settlement Class members' rights and options. Under Rule 23(e), the notice must generally describe the settlement in sufficient detail to alert those with adverse viewpoints to investigate and come forward to be heard. The proposed Notices contain all of the critical information required to apprise Settlement Class members of their rights. This approach to notice is adequate and provides sufficient detail to allow Settlement Class Members with adverse viewpoints to come forward and be heard.

This robust Notice Plan is informative, practical, and reasonably designed to reach the vast majority of Settlement Class members. There is no claim form, and the Notice Plan will be overseen by Kroll, a reputable settlement administrator with deep experience in the field.

The Federal Judicial Center states that a notice plan that reaches 70% of class members is one that reaches a "high percentage" and is within the "norm." Barbara J. Rothstein & Thomas E. Willging, Federal Judicial Center, "Managing Class Action Litigation: A Pocket Guide or Judges," at 27 (3d ed. 2010).[3] The Notice Plan proposed here is the best notice that is practicable and is equivalent or superior to notice campaigns approved in similar class action settlements.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court: (1) conditionally certify the Settlement Class, (2) appoint Tami Bruin and Eline Barokas as Class Representatives, (3) appoint Class Counsel, (4) preliminarily approve the Settlement, (5) approve the Notice Plan

---

[3] This document is available at https://www.fjc.gov/sites/default/files/2012/ClassGd3.pdf.

and direct that Notice be provided to the Settlement Class Members, (6) approve and order the opt-out and objection procedures set forth in the Settlement, (7) stay all deadlines in the Action pending Final Approval of the Settlement, and (8) set a date for a Final Approval Hearing.

Dated: September 11, 2023                    Respectfully submitted,

By:  s/ David M. Wilkerson
David M. Wilkerson
NC State Bar No. 35742
THE VAN WINKLE LAW FIRM
11 North Market Street
Asheville, NC 28801
(828) 258-2991
dwilkerson@vwlawfirm.com

EDELSBERG LAW, P.A.
Scott Edelsberg (pro hac vice)
Christopher Gold (pro hac vice)
20900 NE 30th Avenue, Suite 417
Aventura, FL 33180
(786) 289-9471
scott@edelsberglaw.com
chris@edelsberglaw.com

SHAMIS & GENTILE, P.A.
Andrew Shamis (pro hac vice)
Edwin Elliott (pro hac vice)
14 N.E. 1st Avenue, Suite 1205
Miami, FL 33132
(305) 479-2299
ashamis@shamisgentile.com

KALIEL PLLC
Jeffrey D. Kaliel (pro hac vice)
Sophia Gold (pro hac vice)
1875 Connecticut Avenue, NW, 10th Floor
Washington, D.C. 20009
(202) 350-4783
jkaliel@kalielpllc.com
sgold@kalielpllc.com