**EXHIBIT 1**

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

TAMI BRUIN, on behalf of herself and all
others similarly situated,

        Plaintiff,

    v.

BANK OF AMERICA, N.A.,

        Defendant.

Case No. 3:22-cv-140 - MOC-WCM

## STIPULATION AND SETTLEMENT AGREEMENT AND RELEASE

Subject to approval by the Court, this Stipulation and Settlement Agreement and Release ("Settlement Agreement") is made and entered into by (1) Plaintiffs Tami Bruin and Eline Barokas ("Class Representatives" or "Plaintiffs"), individually and as representatives of the Settlement Class (defined below) and (2) Bank of America, N.A. ("BANA"). The Class Representatives and BANA are collectively referred to herein as the "Parties." The Parties intend for this Settlement Agreement to fully and finally resolve and settle all released rights and claims to the extent set forth below and subject to the terms and conditions set forth below.

## RECITALS

WHEREAS, Plaintiff Tami Bruin, a North Carolina citizen and resident, and Plaintiff Eline Barokas, a current New Jersey citizen and resident and former New York citizen and resident, filed a class action on March 17, 2021 in the United States District Court for the Southern District of New York, regarding ACH transfer fees ("ACH Transfer Fees") for outbound or "push" transfers to external bank accounts (the "Barokas Action"). *See Bruin et al. v. Bank of America, N.A.*, S.D.N.Y. Case No. 1:21-cv-02272, ECF No. 5;

ACTIVE/124014350

Doc ID: f40dfd88fd0ad386742144ee8c7f5e38dee54ac1

WHEREAS, on June 23, 2021, BANA moved to dismiss the class action complaint; the Court dismissed Bruin's claims but denied the motion to dismiss as to Barokas' claims under New York General Business Law, N.Y. Gen. Bus. Law § 349, *et seq.* (the "NYDPA") and the New Jersey Consumer Fraud Act, N.J.C.F.A § 56:8-1, *et seq.* (the "NJCFA"). *See* Barokas Action, ECF No. 28;

WHEREAS, after her dismissal from the Barokas Action, Bruin filed a class action on April 4, 2022 in the United States District Court for the Western District of North Carolina, asserting almost identical claims for unjust enrichment and violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C.G.S. § 75.1-1, *et seq.* (the "NCUDTPA"), as those alleged (and previously dismissed) in the Barokas Action regarding ACH Transfer Fees, defined below (the "Action"). *See Bruin v. Bank of America, N.A.*, W.D.N.C. Case No. 3:22-cv-140, ECF No. 1;

WHEREAS, on June 13, 2022, BANA moved to dismiss the class action complaint in the Action; on September 1, 2022, the Court denied BANA's motion, finding that it was premature for it to assess the viability of the class without affording Bruin the opportunity for discovery. *See* ECF No. 21;

WHEREAS, the Parties have engaged in significant discovery and participated in an arms-length mediation in good faith through which the basic terms of settlement were negotiated and agreed as to Plaintiffs' claims related to ACH Transfer Fees assessed for push transfers to the accountholders' own external accounts ("ACH First Party Fees");

WHEREAS, Bruin filed a notice of settlement on July 6, 2023 in the Action. *See* ECF No. 40. Barokas filed a notice of settlement in the Barokas Action on July 6, 2023, requesting the court in the Barokas Action stay all pending deadlines and adjourn all upcoming hearings and conferences. *See* Barokas Action, ECF No. 55;

ACTIVE/124014350

Doc ID: f40dfd88fd0ad386742144ee8c7f5e38dee54ac1

WHEREAS, the Parties are ready and willing to make and enter into this Settlement Agreement to settle the claims of the Class Representatives and all putative class members in the Action;

WHEREAS, the Parties recognize that the outcome of the Action is uncertain, and that a final resolution through the litigation process would likely require several years of protracted adversarial litigation and appeals; involve substantial risk and expense; and could result in additional expenses associated with possible future litigation raising similar or duplicative claims. Class Counsel has concluded, after inquiry and investigation of the facts, that the terms of this Settlement Agreement are fair, reasonable, adequate, and in the best interests of the Settlement Class; and the Parties and their counsel have agreed to resolve the Action as a class action settlement according to the terms of this Settlement Agreement;

WHEREAS, BANA denies all wrongdoing and liability, denies that Class Representatives' claims entitle them or the class members to any relief, and denies that anyone was harmed by the conduct the Class Representatives allege. Nevertheless, BANA desires to settle Class Representatives' and the putative class members' claims on the terms described herein, solely for the purpose of avoiding the burden, expense, risk, and uncertainty of continuing litigation, and in order to put the litigation to rest;

NOW, THEREFORE, IT IS HEREBY AGREED, by the undersigned, on behalf of Plaintiffs, the Settlement Class, and BANA, without any admission or concession whatsoever by the Parties as to the strength or weakness of the merits of the claims and defenses asserted in the Action, that all Released Claims against BANA be fully and forever settled, compromised, released, and dismissed on the merits with prejudice on the following terms and conditions, subject to the Court's approval:

3

Doc ID: f40dfd88fd0ad386742144ee8c7f5e38dee54ac1

## DEFINITIONS

As used in this Settlement Agreement, the following terms have the meanings specified below:

**1.1.** "Account" means any consumer checking or savings account maintained by BANA at some point during the class period.

**1.2.** "Accountholder" means any individual who is or was identified as an owner of an Account during the Class Period. It includes Current Accountholders and Past Accountholders.

**1.3.** "Action" means the above-captioned action, *Tami Bruin v. Bank of America, N.A.*, 3:22-cv-140, pending in the United States District Court for the Western District of North Carolina, Charlotte Division, including all actions consolidated thereunder or that may be consolidated thereunder in the future.

**1.4.** "ACH First Party Fees" means the unrefunded fees that a Settlement Class Member paid to BANA in connection with a push transfer of funds from his/her Account via the National Automated Clearing House Association network to his/her own external account.

**1.5.** "Attorneys' Fees and Costs" means the attorneys' fees and costs related to this Settlement Agreement that Class Counsel intend to seek under Section 9 of this Settlement Agreement.

**1.6.** "BANA" means Defendant Bank of America, N.A.

**1.7.** "BANA's Counsel" or "Defendant's Counsel" means Allison J. Schoenthal and Laura G. Brys of Goodwin Procter LLP, and Bradley Kutrow of McGuireWoods LLP.

**1.8.** "Barokas Action" means the action entitled, *Eline Barokas v. Bank of America, N.A.*, 1:21-cv-02272 in United States District Court for the Southern District of New York.

ACTIVE/124014350

Doc ID: f40dfd88fd0ad386742144ee8c7f5e38dee54ac1

**1.9.** "CAFA Notice" means notice of this proposed Settlement to the United States Attorney General and appropriate state Attorneys General, as provided by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

**1.10.** "Class Counsel" means Andrew Shamis of Shamis & Gentile, P.A.; Scott Edelsberg and Christopher Gold of Edelsberg Law, P.A.; David M. Wilkerson and Larry McDevitt of The Van Winkle Law Firm; and Jeffrey D. Kaliel and Sophia Gold of Kaliel Gold PLLC.

**1.11.** "Class List" means the list of all Settlement Class Members and their email addresses (to the extent available) and last known postal addresses provided by BANA to the Settlement Administrator for the purposes of disseminating Notice. The Class List shall be designated Confidential and protected pursuant to the terms of the Stipulated Protective Order, and its usage shall be limited to administration of the Notice Plan in this Action as stated in Section 5.

**1.12.** "Class Notice" means the notice of this Settlement and Final Approval Hearing, which is to be sent to the Settlement Class substantially in the manner set forth in this Settlement Agreement and approved by the Court, consistent with the requirements of Due Process and Rule 23, and substantially in the form of Exhibits A (Email Notice), B (Postcard Notice), and C (Long Form Notice), attached hereto.

**1.13.** "Class Period" means the time period beginning on April 4, 2018 and ending on the date on which the Court enters Preliminary Approval Order of the Settlement.

**1.14.** "Class Representatives" means Plaintiffs Tami Bruin and Eline Barokas.

**1.15.** "Court" means the United States District Court for the Western District of North Carolina, Charlotte Division.

ACTIVE/124014350

Doc ID: f40dfd88fd0ad386742144ee8c7f5e38dee54ac1

**1.16.** "<u>Current Accountholder</u>" means a Settlement Class Member who is an Accountholder of BANA as of the date of the Preliminary Approval Order or the Effective Date as specified herein.

**1.17.** "<u>Effective Date</u>" means the next business day after the entry of the Final Approval Order and Final Judgment and Order of Dismissal provided there are no objections to the approval of the Settlement Agreement. If there are objections, then the Effective Date shall mean the next business day following the last date on which a notice of appeal directed to the entry of the Final Approval Order and Final Judgment and Order of Dismissal could have been timely filed but with no notice of appeal having been filed; or, should a notice of appeal be filed, it shall mean the next business day after the Final Approval Order and Final Judgment and Order of Dismissal is affirmed, all appeals are dismissed, and no further appeal is permitted.

**1.18.** "<u>Email Notice</u>" means the short form of notice that shall be sent by email to Current Accountholders as of the date of the Preliminary Approval Order who have agreed to receive notices from BANA by email, substantially in the form attached as Exhibit A.

**1.19.** "<u>Fees and Costs Award</u>" means the amount of Attorneys' Fees and Costs, if any, awarded by the Court to Class Counsel pursuant to a motion made under Section 9 herein, which will be paid out of the Settlement Amount.

**1.20.** "<u>Final Approval</u>" means the approval of this Settlement Agreement by the Court at or following the Final Fairness Hearing, and entry of the Final Approval Order on the Court's docket.

**1.21.** "<u>Final Approval Order</u>" means a final order and judgment in which the Court gives Final Approval to the Settlement and dismisses with prejudice the Class Representatives'

ACTIVE/124014350

Doc ID: f40dfd88fd0ad386742144ee8c7f5e38dee54ac1

and Settlement Class Members' claims and enters a judgment according to the terms set forth herein.

**1.22.** "Final Fairness Hearing" or "Final Approval Hearing" means the hearing at which the Court will consider and finally decide whether to approve this Settlement, enter the Final Approval Order, and make other such rulings contemplated by this Settlement Agreement.

**1.23.** "Final Judgment and Order of Dismissal" means a final judgment that dismisses the Action with prejudice following the Final Approval of the Settlement pursuant to Fed. R. Civ. P. 58.

**1.24.** "First Amended Complaint" means the operative First Amended Complaint filed concurrently with the Motion for Preliminary Approval of the Settlement, which shall be in substantially the same form as Exhibit E, and as further set forth herein in Paragraph 13.3 of this Settlement Agreement.

**1.25.** "First Party Transfers" means push transfers of funds by Accountholders from Accounts to Accountholders' own external (non-BANA) accounts.

**1.26.** "Long Form Notice" means the form of notice that shall be posted on the Settlement Website and available to Settlement Class Members by mail on request made to the Settlement Administrator in substantially the same form as that attached hereto as Exhibit C.

**1.27.** "Motion for Final Approval" means the motion seeking Final Approval, the Fee and Cost Award, and Service Award.

**1.28.** "Net Settlement Fund" means the Settlement Fund, minus Court-approved Fee and Cost Award to Class Counsel, Service Award to the Class Representatives, and Settlement Administration Costs.

Doc ID: f40dfd88fd0ad386742144ee8c7f5e38dee54ac1

1.29.   "Notice Plan" means the plan for sending Class Notice to Settlement Class Members, as set forth in Section 5.

1.30.   "Opt-Out Deadline" or "Objection Deadline" means the period that begins the day after the earliest date on which the Class Notice is first distributed, and that ends no later than forty-five (45) days before the Final Approval Hearing.

1.31.   "Party" means each of the Plaintiffs and BANA, and "Parties" means Plaintiffs and BANA, collectively.

1.32.   "Past Accountholder" means a Settlement Class Member who is not an Accountholder of BANA as of the date of the Preliminary Approval Order or the Effective Date as specified herein.

1.33.   "Person" means a natural person, firm, association, organization, partnership, business, trust, limited liability company, corporation, or public entity.

1.34.   "Postcard Notice" means the short form of notice that shall be sent by mail to Current Accountholders who have not agreed to receive notices from BANA by email, Past Accountholders, or for Current Accountholders whom the Settlement Administrator is unable to send Email Notice using the email address provided by the BANA, substantially in the form attached as Exhibit B.

1.35.   "Practice Change" means BANA's agreement to not assess an ACH First Party Fee for a period of at least five (5) years from the Preliminary Approval of the Settlement.

1.36.   "Preliminary Approval" means preliminary approval of the Settlement Agreement by the Court, conditional certification of the Settlement Class, and approval of the method and content of the Class Notice to the Settlement Class Members.

ACTIVE/124014350

Doc ID: f40dfd88fd0ad386742144ee8c7f5e38dee54ac1

**1.37.** "<u>Preliminary Approval Order</u>" means the Order agreed upon by the Parties and attached to the Motion for Preliminary Approval.

**1.38.** "<u>Released Claims</u>" means any individual, class, representative, group or collective claim, liability, right, demand, suit, matter, obligation, damage, loss, action or cause of action, of every kind and description, that a Releasing Party has or may have, including assigned claims, whether known or Unknown Claims, contingent or absolute, suspected or unsuspected, disclosed or undisclosed, accrued or un-accrued, latent or patent, contingent or non-contingent, liquidated or un-liquidated, at law or in equity, matured or un-matured, apparent or unapparent, that the Class Representatives or Settlement Class Members raised or could have raised in the Action or the Barokas Action, or which they could raise in the future, in any court, tribunal, forum, or proceeding, arising out of or relating in any way to the allegations made in the Action and the Barokas Action. The Released Claims described herein include, but are not limited to, claims or defenses concerning ACH First Party Fees, and any violation and/or alleged violation of state and/or federal law, whether common law or statutory, arising from or relating to the conduct, acts, and/or omissions concerning ACH First Party Fees.

**1.39.** "<u>Released Parties</u>" refers to BANA and each of its present, former, and future parents, predecessors, successors, assigns, assignees, affiliates, conservators, divisions, departments, subdivisions, owners, partners, principals, trustees, creditors, shareholders, joint ventures, co-venturers, officers, and directors (whether acting in such capacity or individually), attorneys, vendors, accountants, nominees, agents (alleged, apparent, or actual), representatives, employees, managers, administrators, and each Person or entity acting or purporting to act for them or on their behalf, including, but not limited to, Bank of America Corporation and all of its subsidiaries and affiliates.

9

Doc ID: f40dfd88fd0ad386742144ee8c7f5e38dee54ac1

1.40. "Releasing Parties" means the Class Representatives and Settlement Class Members, and any Person claiming by or through the Class Representatives and each Settlement Class Member, including their respective past, present and future heirs, children, spouses, beneficiaries, conservators, executors, estates, administrators, assigns, attorney, agents, consultants, and any other representatives of any of these Persons and entities.

1.41. "Service Award" means the total of any monetary award, if any, ordered to be paid to one or more of the Class Representatives, inclusive, as set forth in Section 10 herein.

1.42. "Settlement" means the Agreement between the Class Representatives, on behalf of themselves and as the proposed representatives of the Settlement Class, and BANA to settle and compromise the Class Representatives' and the Settlement Class Members' claims in the Action, as memorialized in this Settlement Agreement and accompanying documents attached hereto.

1.43. "Settlement Administrator" means the qualified third-party administrator and agent agreed to by the Parties and approved and appointed by the Court in the Preliminary Approval Order to administer the Settlement, including administering the Class Notice Plan. The Parties agree to recommend that the Court appoint Kroll as the Settlement Administrator.

1.44. "Settlement Administration Costs" means the costs and expenses reasonably and actually incurred in obtaining the services of the Settlement Administrator to facilitate the Settlement, including but not limited, to costs of identifying Settlement Class Members, printing and mailing the Class Notice, and mailing Settlement checks to Settlement Class Members, and related services.

1.45. "Settlement Agreement" means this Settlement Agreement and Release.

ACTIVE/124014350

Doc ID: f40dfd88fd0ad386742144ee8c7f5e38dee54ac1

1.46. "Settlement Amount" or "Settlement Fund" means the amount of eight million dollars ($8,000,000.00), which BANA will be obligated to pay to the Settlement Administrator on behalf of the Settlement Class, as set forth in Section 6, and only if all other contingencies outlined in Section 6 are met.

1.47. "Settlement Class" means the class of Accountholders charged "ACH First Party Fees," as described more specifically in Paragraph 3.1.

1.48. "Settlement Class Member" means any Person who falls within the definition of the Settlement Class, as further set forth below, and who does not timely submit a valid request to opt-out from the Settlement Class and who is entitled to benefits of the Settlement, including a Settlement Class Member Payment.

1.49. "Settlement Class Member Payment" means the settlement payment amount attributable to each Settlement Class Member to be computed by the Settlement Administrator according to the payment allocation described below.

1.50. "Settlement Website" means the website to be created, launched, and maintained by the Settlement Administrator which shall provide access to relevant case documents including the Notice, the operative complaint, and other relevant documents.

1.51. "Successful Opt-Out(s)" means the Person(s) who timely and validly exercised his, her, or their right to be excluded from the Settlement Class by the Opt-out Deadline.

1.52. "Unknown Claims" means any claim arising out of or related to ACH First Party Fees that a Releasing Party does not know or suspect exists in his, her or its favor at the time of the release of the Released Claims as against the Released Parties, including without limitation those which, if known, might have affected the decision to enter into the Settlement. The Settlement is intended to extinguish all Released Claims arising out of ACH First Party Fees,

ACTIVE/124014350

Doc ID: f40dfd88fd0ad386742144ee8c7f5e38dee54ac1

and, consistent with such intentions, the Releasing Parties shall waive their rights to the extent permitted by state law, federal law, foreign law or principle of common law, which may have the effect of limiting the release set forth above. Class Representatives, on behalf of themselves and the Releasing Parties, expressly waive and release any and all provisions, rights, and benefits conferred by California Civil Code Section 1542, and by any law of any other jurisdiction, or principle of common law, that is similar, comparable, or equivalent in effect to California Civil Code Section 1542 with respect to the release of claims. California Civil Code Section 1542 provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

In making this waiver of rights, the Class Representatives, on behalf of themselves and the Releasing Parties, acknowledge that they and Settlement Class Members may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of this release, but that it is their intention, as Class Representatives and on behalf of the Settlement Class Members, to fully, finally and forever settle and release any and all claims released hereby known or unknown, suspected or unsuspected, which now exist, or heretofore existed, or may hereafter exist, and without regard to the subsequent discovery or existence of such additional or different facts for any potential claims arising out of or related to ACH First Party Fees. The Class Representatives, and the Settlement Class Members by

12

Doc ID: f40dfd88fd0ad386742144ee8c7f5e38dee54ac1

operation of the judgment, shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of "Released Claims" was separately bargained for, constitutes separate consideration for, and was a key element of the Settlement and was relied upon by the BANA in entering into the Settlement.

1.53. As used herein, the plural of any defined term includes the singular thereof and *vice versa*, except where the context requires otherwise.

1.54. Other terms are defined in the text of this Settlement Agreement, and shall have the meaning given to those terms in the text. It is the intent of the Parties in connection with all documents related to the Settlement that defined terms as used in other documents shall have the meaning given to them in this Settlement Agreement.

## 2. SETTLEMENT CONSIDERATION

2.1. BANA shall pay the Settlement Amount in accordance with Section 6.

2.2. BANA shall not assess an ACH First Party Fee for a period of at least five (5) years from the Preliminary Approval Order.

2.3. Barokas shall file a Stipulation of Dismissal with Prejudice for the Barokas Action under Fed. R. Civ. P. 41(a).

## 3. SETTLEMENT CLASS

3.1. **Settlement Class Definition.** In order to effectuate the Settlement, the Parties agree and consent, for settlement purposes only, that the requirements of Fed. R. Civ. P. 23(a) and Fed. R. Civ. P. 23(b)(3) are satisfied, and subject to Court approval, the following Settlement Class shall be certified:

**ACH First Party Class**: All Accountholders in the United States who, during the Class Period, paid and were not refunded an ACH First Party Fee.

ACTIVE/124014350

Doc ID: f40dfd88fd0ad386742144ee8c7f5e38dee54ac1

Excluded from the Settlement Class is BANA, its parents, subsidiaries, affiliates, officers directors, employees, all Settlement Class Members who make a timely election to opt-out, and all judges assigned to this litigation and their immediate family members.

**3.2.** **Certification for Settlement Purposes.** The Parties' agreement as to certification of the Settlement Class is solely for purposes of effectuating a settlement and for no other purpose. BANA retains all of its objections, arguments, and defenses with respect to class certification, and reserves all rights to contest class certification, if the Settlement set forth in this Settlement Agreement does not receive the Court's Final Approval, if the Court's approval is reversed or vacated on appeal, if this Settlement Agreement is terminated as provided herein, or if the Settlement set forth in this Settlement Agreement otherwise fails to become effective. The Parties acknowledge that there has been no stipulation to any class or certification of any class for any purpose other than effectuating the Settlement, and that if the Settlement set forth in this Settlement Agreement does not receive the Court's Final Approval, if the Court's approval is reversed or vacated on appeal, if this Settlement Agreement is terminated as provided herein, or if the Settlement set forth in this Settlement Agreement otherwise fails to become effective, this agreement as to certification of the Settlement Class becomes null and void ab initio, and this Settlement Agreement or any other Settlement-related statement may not be cited or offered into evidence regarding certification of the Settlement Class, or in support of an argument for certifying a class for any purpose related to this or any other proceeding.

**4.** **MOTION FOR PRELIMINARY APPROVAL**

**4.1.** **Filing of Motion for Preliminary Approval**. As soon as reasonably practicable after execution of this Settlement Agreement, Class Counsel shall provide a draft of the Motion for Preliminary Approval, which will seek to (i) certify the Settlement Class solely for settlement purposes, pursuant to Fed. R. Civ. P. 23(a) and Fed. R. Civ. P. 23(b)(3); (ii) preliminarily

ACTIVE/124014350

Doc ID: f40dfd88fd0ad386742144ee8c7f5e38dee54ac1

approve the Settlement set forth in this Settlement Agreement as fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23; (iii) appoint Class Representatives as representatives of the Settlement Class; (iv) appoint Plaintiffs' counsel as Class Counsel; (v) approve the proposed Notice Plan and authorize the dissemination of Notice as set forth in Section 5; and (vi) approve of and appoint the Settlement Administrator, to BANA's Counsel. BANA's Counsel shall have no less than ten (10) business days to review and comment on the Motion for Preliminary Approval. No earlier than ten (10) business days after provision of the draft to BANA's Counsel, Class Counsel shall file this Settlement Agreement with the Court together with the Motion for Preliminary Approval.

      **4.2.**   **Preliminary Approval Order**. Class Counsel agrees that the proposed Preliminary Approval Order, which will be filed with the Motion for Preliminary Approval, will be in substantially the same form as Exhibit D. The Preliminary Approval Order shall (i) preliminarily approve the Settlement memorialized in this Settlement Agreement as fair, reasonable, and adequate, including the material terms of this Settlement Agreement; (ii) set a date for a Final Fairness Hearing; (iii) state that if Final Approval of the Settlement is not obtained, the Settlement is null and void, and the Parties will revert to their positions ex ante without prejudice to their rights, claims, or defenses; (iv) approve the proposed Class Notices in the forms attached hereto as Exhibits A through C, and authorize their dissemination to the Settlement Class; (v) set deadlines consistent with this Settlement Agreement for emailing and mailing of the Class Notice, the filing of objections, the filing of motions, and the filing of papers in connection with the Final Fairness Hearing; (vi) appoint and approve the Settlement Administrator; (vii) set deadlines by which Plaintiffs and Class Counsel shall file their Motion for Final Approval, which shall be at least forty-five (45) days prior to the Final Fairness

ACTIVE/124014350

Doc ID: f40dfd88fd0ad386742144ee8c7f5e38dee54ac1

Hearing; (viii) state that any appeal of the Court's order on the Fee and Cost Award or the motion for a Service Award shall have no effect on the Court's Final Approval of the Settlement; and (ix) prohibit and preliminarily enjoin the Class Representatives, all Settlement Class Members (excepting those who are Successful Opt-Outs), and Class Counsel from commencing, prosecuting, or assisting in any lawsuit against the Released Parties that asserts or purports to assert matters within the scope of the Release during the time between entry of the Preliminary Approval Order and final determination by the Court regarding whether to grant Final Approval of the Settlement. BANA agrees that it will not oppose the entry of the Preliminary Approval Order, provided it is substantially in the form of Exhibit D hereto and consistent with the material terms of the Settlement. Without implication of limitation, BANA's agreement that it will not oppose the entry of the Preliminary Approval Order shall not be an admission or concession by it that a class was appropriate in the Action (other than for purposes of this Settlement) or would be appropriate in any other matter, and/or that any relief was appropriate in the Action, for litigation purposes, or would be appropriate in any other matter.

4.3.    **Filing of Motion for Final Approval.**  If Preliminary Approval of the Settlement is entered by the Court, the Class Representatives shall seek, and BANA shall support, entry of a Final Approval Order and Final Judgment and Order of Dismissal that: (i) certifies the Settlement Class pursuant to Fed. R. Civ. P. 23(a) and Fed. R. Civ. P. 23(b)(3) solely for the purpose of the Settlement; (ii) approves finally the Settlement set forth in this Settlement Agreement and its terms as being a fair, reasonable, and adequate settlement as to Settlement Class Members within the meaning of Fed. R. Civ. P. 23 and directing its consummation according to its terms; (iii) finds that the Notice Plan constitutes due, adequate, and sufficient notice of the Settlement set forth in this Settlement Agreement and the Final Fairness Hearing

and meets the requirements of Due Process and the Federal Rules of Civil Procedure; (iv) directs that, as to the Released Parties, the Action shall be dismissed with prejudice and, except as provided for in this Settlement Agreement, without award of costs; (v) orders that the Releasing Parties are permanently enjoined and barred from instituting, commencing, or prosecuting any action or other proceeding asserting any Released Claims against any Released Party; (vi) retains with the Court exclusive jurisdiction over the Settlement and this Settlement Agreement, including the administration and consummation of the Settlement; and (vii) determines under Fed. R. Civ. P. 54(b) that there is no just reason for delay and directs that the judgment of dismissal as to BANA shall be final and entered forthwith.

5. **NOTICE PLAN**

   5.1. **Preparation and Production of Settlement Class List**. BANA or its agent shall compile the Class List, which shall consist of a list of all Settlement Class Members and provide such information to the Settlement Administrator within twenty-one (21) days after the Preliminary Approval Order. The Class List shall include the total amount of ACH First Party Fees for each Settlement Class Member, whether the Settlement Class Member is a Current Accountholder with BANA as of the date of the Preliminary Approval Order, as well as all known physical addresses and email addresses in BANA's possession, custody, or control, for the Settlement Class Members. The Settlement Administrator shall use this information for the sole purpose of identifying the current postal addresses and/or email addresses for the Settlement Class Members.

   5.2. **Dissemination of Class Notice**. For purposes of providing Court-approved class notices and establishing that the best practicable notice has been given, Class Notice will be provided as follows:

ACTIVE/124014350

Doc ID: f40dfd88fd0ad386742144ee8c7f5e38dee54ac1

**5.2.1.** Within forty-five (45) days after entry of the Preliminary Approval Order, for those Settlement Class Members who are Current Accountholders of BANA, and have agreed to receive electronic account statements from BANA, the Settlement Administrator shall begin the process of sending Email Notice to each such Settlement Class Member's last known email address, in a manner that is calculated to avoid being caught and excluded by spam filters or other devices intended to block mass email. For any emails that are returned undeliverable, the Settlement Administrator shall send a Postcard Notice in the manner described below. The Email Notice shall inform Settlement Class Members how they may request a copy of the Long Form Notice.

**5.2.2.** Within forty-five (45) days after entry of the Preliminary Approval Order, for those Settlement Class Members who are Current Accountholders of BANA who have not agreed to receive account statements electronically, or who are Past Accountholders, the Settlement Administrator shall begin the process of mailing those Class Members the Postcard Notice by first-class U.S. mail, postage prepaid, to the last known or best available mailing address. The Postcard Notice shall inform Settlement Class Members how they may request a copy of the Long Form Notice.

**5.2.3.** The Settlement Administrator shall obtain updates, if any, to the addresses contained therein to any of the following using (i) information reasonably available from a Lexis-Nexis or alternative persons search performed as to each Settlement Class Member, (ii) information reasonably available from

18

ACTIVE/124014350

Doc ID: f40dfd88fd0ad386742144ee8c7f5e38dee54ac1

the National Change of Address ("NCOA") database maintained by the United States Postal Service ("Postal Service"), or (iii) such additional efforts as the Settlement Administrator reasonably believes are appropriate to identify updated addresses, if any, for each Settlement Class Member and/or as the Court may direct. The resulting list shall be the Class List.

**5.2.4.** The Settlement Administrator shall format the Class Notice(s) and otherwise administer the Notice Plan in a reasonable manner to minimize costs.

**5.2.5.** For up to forty-five (45) days following the last date on which the Settlement Administrator mailed Postcard Notice under this Section 5, if a Postcard Notice is returned by the Postal Service as undeliverable, the Settlement Administrator shall re-mail the Postcard Notice immediately to the forwarding address, if any, provided by the Postal Service on the face of the returned mail. For any Postcard Notice that is returned as undeliverable without a forwarding address, the Settlement Administrator will use commercially reasonable efforts to obtain updated addresses during the forty-five (45) days following the date the last Postcard Notice was mailed. Other than as set forth above, BANA and the Settlement Administrator shall have no other obligation to re-mail Class Notice.

**5.2.6.** In support of the Motion for Final Approval, the Settlement Administrator shall prepare a declaration describing what it did to comply with the Notice Plan, as well as providing its opinion that the Notice Plan satisfied the requirements of Due Process.

19

Doc ID: f40dfd88fd0ad386742144ee8c7f5e38dee54ac1

5.2.7. Neither the Parties nor the Settlement Administrator shall have any further obligation to send notice of the Settlement to Settlement Class Members once these Class Notice provisions have been complied with.

5.3. **Settlement Website.** The Settlement Administrator shall establish a website to assist in facilitating notice to the Settlement Class Members. This Settlement Website, www.ACHFirstPartyFeeSettlement.com, shall be accessible no later than seven (7) days prior to the Class Notice mailing described above. The Settlement Website shall set forth the following information: (i) the First Amended Complaint; (ii) the full text of this Settlement Agreement; (iii) the Long Form Notice (Exhibit C); (iv) the Motion for Preliminary Approval and the Preliminary Approval Order; (v) the method for opting-out of the Settlement; (vi) contact information for the Settlement Administrator; (vii) the Motion for Final Approval and the Final Approval Order (once filed); (viii) if the Settlement is terminated, a notice of such termination, which language shall be approved by the Parties; and (ix) such other document(s) as the Parties jointly or the Court determine to place on the Settlement Website.

5.3.1. Not later than twenty (20) days before the Final Fairness Hearing, the Settlement Administrator shall cause proof of the establishment and maintenance of the Settlement Website to be provided to Class Counsel and BANA's Counsel.

5.3.2. The Settlement Website shall be taken down thirty (30) days after the completion of the distribution of remaining funds in accordance with Paragraph 6.7 or, if the Settlement is terminated, thirty (30) days after such termination.

ACTIVE/124014350

Doc ID: f40dfd88fd0ad386742144ee8c7f5e38dee54ac1

**5.4.** **CAFA Notice**. The Settlement Administrator shall send CAFA Notice to the United States Attorney General and appropriate state Attorneys General in accordance with 28 U.S.C. § 1715(a) no later than ten (10) days after this Settlement Agreement is filed with the Court.

## 6. PAYMENT OF THE SETTLEMENT AMOUNT

**6.1.** **Payments to Settlement Administrator.** Within five (5) business days following BANA advising the Settlement Administrator of the number of Current Accountholders, Past Accountholders, and the breakdown of those Settlement Class Members that shall receive Email Notice and Postcard Notice, the Settlement Administrator shall provide an estimate of the Settlement Administration Costs to BANA and Class Counsel. BANA will pay all Settlement Administration Costs within thirty (30) days following its receipt of an invoice from the Settlement Administrator, but not until BANA has received a properly completed W-9 Form from the Settlement Administrator. All Settlement Administration Costs shall be paid out of the Settlement Amount. The Settlement Amount represents the total extent of BANA's monetary obligations under this Settlement and includes all sums to be paid under this Settlement Agreement as the consideration to eligible Settlement Class Members, including Service Award(s), if any, the Fee and Cost Award, if any, and any Settlement Administration Costs.

**6.2.** **Escrow Account.** Within twenty (20) business days after the date of entry of the Final Approval Order, the Settlement Administrator shall establish and BANA shall fund an escrow account with funds sufficient for the payment of the remainder of the Settlement Amount, less any funds previously provided to the Settlement Administrator for the Settlement Administration Costs, as set forth in Paragraph 6.1. BANA (a) shall have the right to impose any reasonable terms and conditions on the operation and maintenance of the fund, and of any funds

ACTIVE/124014350

Doc ID: f40dfd88fd0ad386742144ee8c7f5e38dee54ac1

that it pays in connection with the Settlement, that it deems appropriate to take advantage of the

Qualified Settlement Fund ("QSF") provisions of the tax code or to protect the moneys from

intentional or unintentional diversion, expenditure, forfeiture, escheat, or other dispersion that is

inconsistent with the express terms of the Settlement, and (b) shall inform Class Counsel of any

such terms and conditions.  In the event that BANA desires to have the Settlement Administrator

enter into an agreement or undertaking to take advantage of the QSF provisions of the tax code

or to protect the moneys in accordance with this paragraph, or to obtain any order from the Court

in connection with this paragraph, the Class Representatives agree not to object to such requested

agreement or order other than on the grounds that the terms or relief sought, in whole or in part,

is inconsistent with the express terms of the Settlement. BANA shall pay no portion of the

Settlement Amount until it has received a properly completed W-9 Form from the Settlement

Administrator.

      **6.3.**    **<u>Application of Settlement Amount.</u>**  The Settlement Amount shall be applied as

follows:

> To pay all Settlement Administration Expenses; to pay any other
> Court-approved fees and expenses; to distribute the Net Settlement
> Fund to Settlement Class Members; to pay the Fee and Cost Award;
> and to pay the Service Award.

      **6.4.**    **<u>No Other Payments from BANA.</u>**  As set forth above, BANA shall be

responsible for paying the total Settlement Amount. BANA shall have no responsibility for any

other costs, including, as further detailed in this Settlement Agreement, any Attorneys' Fees and

Costs, including any taxes or tax-related costs relating to the Settlement Amount, but all such

fees, expenses, and costs shall be paid out of the Settlement Amount as approved by the Court.

The Class Representatives and Settlement Class Members shall look solely to the Settlement

Amount as full, final, and complete satisfaction of all Released Claims. Except as set forth

Doc ID: f40dfd88fd0ad386742144ee8c7f5e38dee54ac1

herein, BANA shall have no obligation under this Settlement Agreement or the Settlement to pay or cause to be paid any amount of money, and BANA shall have no obligation to pay or reimburse any fees, expenses, costs, liability, losses, taxes, or damages whatsoever alleged or incurred by Class Representatives, by any Settlement Class Member, or by any Releasing Parties, including but not limited to their attorneys, experts, advisors, agents, or representatives, with respect to the Action and Released Claims. Class Representatives and Settlement Class Members acknowledge that as of the Effective Date, the releases given herein shall become effective immediately by operation of the Final Judgment and Order of Dismissal and shall be permanent, absolute, and unconditional.

6.5. **Interest on Settlement Amount.** Any interest earned on the Settlement Amount, once it has been delivered to the Settlement Administrator, shall be for the benefit of the Settlement Class.

6.6. **Use and Disbursal of Settlement Amount**

6.6.1. **Purpose and Use**. The Settlement Amount shall be used only in the manner and for the purposes set forth in this Settlement. No portion of the Settlement Amount shall be disbursed except as expressly set forth herein. The Settlement Amount shall be used only for payments to Settlement Class Members, Settlement Administration Costs, Attorneys' Fees and Costs (described in Section 9), and the Service Award(s) (described in Section 10).

6.6.2. **Settlement Class Member Payments**.

6.6.2.1. **Amounts of Settlement Class Member Payment**. Settlement Class Members are entitled to payment by distributing the

Doc ID: f40dfd88fd0ad386742144ee8c7f5e38dee54ac1

proceeds from the Net Settlement Fund to the Settlement Class Members on a proportionate basis based on the total amount of ACH First Party Fees that were assessed to the Accounts of all Settlement Class Members during the Class Period. Each Settlement Class Member will receive a share of the Net Settlement Fund proportionate to the total amount of ACH First Party Fees that were assessed to his or her Accounts during the Class Period. Each Settlement Class Member shall receive a minimum payment of $2.00.

**6.6.3.** **Timing of Payments.** The Settlement Amount shall be distributed by the Settlement Administrator to Settlement Class Members only after the Effective Date and after: (i) all timely objections have been resolved by the Court, and all appeals therefrom have been resolved or the time therefor has expired; (ii) all matters with respect to Class Counsel's Attorneys' Fees and Costs Application discussed at Section 9 herein, have been resolved by the Court, and all appeals therefrom have been resolved or the time therefor has expired; and (iii) all Settlement Administration Expenses incurred as of that date have been paid.

**6.6.3.1.** Within seven (7) days after the Effective Date, BANA shall determine whether the Class List needs to be updated with respect to which Settlement Class Members are Current Accountholders with BANA as of the Effective Date, and if necessary, will provide an updated Class List to the Settlement Administrator. The

24

Doc ID: f40dfd88fd0ad386742144ee8c7f5e38dee54ac1

Settlement Administrator will use the Class List to determine which Settlement Class Members are to receive their Settlement Class Member Payment via a credit to their BANA Account.

**6.6.3.2.** Within twenty-one (21) days of the Effective Date, the Settlement Administrator shall (i) provide to Class Counsel and to BANA's Counsel the sum total of all Settlement Class Member Payments for Settlement Class Members, including the breakdown of Settlement Class Members who are Current Accountholders as of the Effective Date who will receive their Settlement Class Member Payments in the form of a credit into the Account from which the ACH First Party Fee was paid ("Credit Settlement Class Member Payment Amount") and Settlement Class Members who are Past Accountholders who will receive their Settlement Class Member Payment in the form of a check; (ii) provide to BANA, the Class List with the applicable Credit Settlement Class Member Payment Amount owed to each Credit Settlement Class Member; and (iii) cause to be transmitted to BANA the total Credit Settlement Class Member Payment Amount for deposit into the BANA accounts of Settlement Class Members who are Current Accountholders as of the Effective Date.

**6.6.3.3.** Within forty-five (45) days after the Effective Date, BANA shall directly deposit the Settlement Class Member Payments to those Settlement Class Members who are Current Accountholders with

ACTIVE/124014350

Doc ID: f40dfd88fd0ad386742144ee8c7f5e38dee54ac1

BANA as of the Effective Date into the Account from which the ACH First Party Fee was paid.

**6.6.3.4.** Within thirty (30) days after the Effective Date, the Settlement Administrator shall mail payment notices and Settlement Class Member Payments, in the form of checks, as determined in the payment allocation for Settlement Class Members described herein who are Past Accountholders as of the Effective Date. Within ninety (90) days of the Effective Date, checks and payment notices shall also be issued to Settlement Class Members whom BANA was unable to complete an Account Credit.

**6.6.3.5.** Payment pursuant to this Settlement Agreement shall be deemed final and conclusive as against all Settlement Class Members. If any Settlement Check is returned as undeliverable, the Settlement Administrator will attempt to notify the Settlement Class Member, including by attempting to obtain a new mailing address as practical in the same manner as set forth in Paragraph 5.2.3 (with any costs incurred treated as Settlement Administration Expenses). If, after a second attempt, such Settlement Check is again returned as undeliverable, no further efforts need to be taken by the Settlement Administrator. All Settlement Class Members who do not cash their checks within 180 days otherwise shall be bound by all of the terms of this Settlement Agreement and the Settlement, including the terms of the Final Judgment and Order of Dismissal

ACTIVE/124014350

Doc ID: f40dfd88fd0ad386742144ee8c7f5e38dee54ac1

to be entered in the Action and the releases provided for herein, and will be barred from bringing any action or proceeding against the Released Parties concerning the Released Claims.

**6.6.4.** Each Settlement payment notice shall state: "This payment is tendered to you as a class member in *Bruin, et al. v. Bank of America, N.A.*, 3:22-cv-140 (W.D.N.C.) in consideration for your release from liability of Defendant and other Released Parties as set forth in the Settlement Agreement and Release." Except as provided in Paragraph 6.7, the payment notices accompanying the Settlement checks shall notify the recipients that the checks must be cashed within one hundred and eighty (180) days from the date on the check and that the enclosed check shall not be valid after that date. In the event a Settlement check becomes void, the Settlement Class Member to whom that Settlement check was made payable will forfeit the right to payment and will not be entitled to have the check reissued or any further distribution from the Settlement Amount or to any further recourse against the Parties.

**6.6.5.** For a jointly held Account, a single check, payable to all Accountholders named on the Account, jointly, and mailed to the first Accountholder listed on the Account.

**6.6.6.** The Settlement Administrator will make reasonable efforts to locate the proper address for any check returned undeliverable and will re-mail it once to the updated address or, in the case of a jointly held Account, and

27

Doc ID: f40dfd88fd0ad386742144ee8c7f5e38dee54ac1

in the Settlement Administrator's discretion, to an Accountholder other than the one listed first.

**6.7.**   **Remaining Funds**.  BANA shall not have a reversionary interest in the Settlement Amount. After two hundred and forty (240) days from the Effective Date, any excess funds remaining from the Settlement Amount that have not been distributed in accordance with other provisions of this Settlement Agreement shall, if economically feasible, be distributed to the Settlement Class Members who successfully cashed checks or received their Settlement Class Member Payment as a credit. The payment notices accompanying the Settlement checks for a second distribution shall notify the recipients that the checks must be cashed within ninety (90) days from the date on the payment notice and that the enclosed check shall not be valid after that date. If a second distribution of remaining funds costs more than the amount to be distributed or is otherwise economically unfeasible, or if additional funds remain after a second distribution, Class Counsel shall petition the Court to distribute any remaining funds to a consumer protection or financial services organization as a *cy pres* recipient.

**6.8.**   **Jurisdiction Over Payments.** All proceedings with respect to the notice, administration and processing of payments and the determination of all controversies relating thereto shall be subject to the jurisdiction of the Court.

**7.**   **TERMINATION OF THE SETTLEMENT**

**7.1.**   This Settlement is contingent upon Court approval. If the Court fails to grant final approval of the Settlement in any material respect, the Settlement will be subject to termination by any Party. Notwithstanding this paragraph, the Court's determination as to the Attorneys' Fees and Costs Application and/or any plan of distribution, or any determination on appeal from

any such order, shall not provide grounds for termination of this Settlement Agreement or Settlement.

**7.2.** Except as otherwise provided herein, in the event the Settlement Agreement is terminated in accordance herewith, is vacated, is not approved, or the Effective Date fails to occur for any reason, then the Parties to this Settlement Agreement shall be deemed to have reverted to their respective status in the Action as of June 30, 2023. BANA retains all rights regarding any defenses on the statute of limitations that it had as of June 30, 2023. Further, the Parties agree that BANA reserves and preserves all of its defenses and claims related to the Action, including the First Amended Complaint, and the Barokas Action, which it may assert if this Settlement Agreement is terminated, and that BANA shall have sixty (60) days from the date of termination of the Settlement Agreement to file its response to the First Amended Complaint. Further, in such circumstances, the Parties shall thereafter work together to arrive at a mutually agreeable schedule for resuming the Action and the Barokas Action.

**7.3.** Except as otherwise expressly provided herein, in the event the Settlement Agreement is terminated in accordance herewith, is vacated, nor approved, or the Effective Date fails to occur for any reason, the Parties shall proceed in all respects as if this Settlement Agreement and any related orders had not been entered, and any portion of the Settlement Amount previously paid by or on behalf of BANA, together with any interest earned thereon (and, if applicable, re-payment of any Attorneys' Fees and Costs Award, if any, with respect to such income) shall be returned to BANA within ten (10) business days from the date of the event causing such termination. The Parties further agree that any Settlement Administration Costs that have been paid prior to termination shall be split evenly between the Parties.

ACTIVE/124014350

Doc ID: f40dfd88fd0ad386742144ee8c7f5e38dee54ac1

## 8.     PROCEDURES FOR OPT-OUTS AND OBJECTIONS

**8.1.     <u>Opt-Out Procedures.</u>** The Class Notice shall inform proposed Settlement Class Members how they may opt out of the Settlement and shall explain the potential implications of doing so, including the possibility that opting out may preclude later participation in any later class action against the Released Parties.

    **8.1.1.** A proposed Settlement Class Member may request to be excluded from the Settlement Class by sending a written, printed request for exclusion, addressed to "Exclusion Requests: Bank of America ACH First Party Fee Class Action" at the Settlement Administrator's address as shown in the Class Notice. The proposed Settlement Class Member's opt-out request must contain his or her original signature, current postal address, and a specific affirmative statement that the proposed Settlement Class Member wishes to be excluded from the Settlement Class. Opt-Out requests must be postmarked no later than forty-five (45) days prior to the Final Approval Hearing (the Opt-Out Deadline).

    **8.1.2.** No Party hereto or its counsel shall directly, or indirectly, solicit or encourage any Person to request exclusion from the Settlement Class.

    **8.1.3.** Persons who purport to opt-out of the Settlement Class as a group, aggregate, or class involving more than one purported class member shall **not** be considered to have validly opted out.

    **8.1.4.** <u>List of Successful Opt-Outs</u>. Not later than seven (7) days after the Opt-Out Deadline, the Settlement Administrator shall provide Class Counsel

30

ACTIVE/124014350

Doc ID: f40dfd88fd0ad386742144ee8c7f5e38dee54ac1

and BANA's Counsel a complete list of the Successful Opt-Outs, together with all opt-out requests.

**8.1.5.** <u>**Representation of Opt-Outs**</u>. Class Counsel agree that this Settlement Agreement is fair, reasonable, and in the Settlement Class Members' best interests. Class Counsel furthermore agree that potential Settlement Class Members who seek to opt out should be represented by counsel who believe the Settlement Agreement is not fair, reasonable, and not in the Settlement Class Members' best interests. Accordingly, Class Counsel shall not solicit Settlement Class Members who opt out for purposes of legal representation and, if contacted, shall refer any such persons to the applicable referral service maintained by the bar association in those persons' respective jurisdictions for any subsequent representation.

**8.2.** <u>**Objections from Settlement Class Members**</u>.

**8.2.1.** Any Settlement Class Member who does not opt-out but instead wishes to object to the Settlement or any matters described in the Class Notice may do so by filing with the Court a notice of his or her intention to object.

**8.2.2.** Each Settlement Class Member desiring to object to the Settlement Agreement or to the attorneys' fees, costs and expenses, shall submit a timely written notice of his or her objection. Such notice shall state: (i) the objector's full name, address, telephone number, and e-mail address (if any); (ii) information identifying the objector as a Settlement Class Member in this Action, including evidence that the objector is a member of the Settlement Class; (iii) a written statement of all grounds for the

31

objection, accompanied by any legal support for the objection the objector believes applicable; (iv) the identity of all counsel representing or assisting the objector, if any; (v) the identity of all counsel representing the objector who will appear at the Final Fairness Hearing, if any; (vi) a list of all persons who will be called to testify at the Final Fairness Hearing in support of the objection, if any; (vii) a statement confirming whether the objector intends to personally appear and/or testify at the Final Fairness Hearing; (viii) the objector's signature and the signature of the objector's duly authorized attorney or other duly authorized representative (along with documentation setting forth such representation), if any; (ix) a list, by case name, court, and docket number, of all other cases in which the objector (directly or through counsel) has filed an objection to any proposed class action settlement within the last three (3) years; (x) a list, by case name, court, and docket number, of all other cases in which the objector's counsel (on behalf of any person or entity) has filed an objection to any proposed class action settlement within the last 3 years; and (xi) a list, by case name, court, and docket number, of all other cases in which the objector has been a named plaintiff in any class action or served as a lead plaintiff or class representative. To be timely, written notice of an objection in the appropriate form must be filed with the Clerk of the Court by the date certain as ordered by the Court in the Preliminary Approval Order forty-five days before the Final Approval Hearing and served concurrently therewith upon Class Counsel and BANA's Counsel.

32

Doc ID: f40dfd88fd0ad386742144ee8c7f5e38dee54ac1

8.2.3. If the objection is made by or through an attorney, the written objection must also include: (1) the identity and number of the Settlement Class Members represented by objector's counsel; (2) the number of such represented Settlement Class Members who have opted out of the Settlement Class; and (3) the number of such represented Settlement Class Members who have remained in the Settlement Class and have not objected. If the attorney intends to seek fees and expenses from anyone other than the objectors he or she represents, the attorney shall also file with the Court and serve upon Class Counsel and BANA's Counsel, not later than fifteen (15) days before the Final Fairness Hearing or as the Court may otherwise direct, a document containing the following: (i) the amount of fees sought by the attorney for representing the objector and the factual and legal justification for the fees being sought; (ii) a statement regarding whether the fees being sought were calculated on the basis of a lodestar, contingency, or other method; (iii) the number of hours already spent by the attorney and an estimate of the hours to be spent in the future; and (iv) the attorney's hourly rate.

8.2.4. Any Settlement Class Member who fails to comply with the requirements for objecting set forth herein shall waive and forfeit any and all rights he or she may have to appear separately and/or to object to the Settlement Agreement and shall be bound by all the terms of the Settlement Agreement and by all proceedings, orders and judgments in the Action. The exclusive means for any challenge to the Settlement Agreement shall

ACTIVE/124014350

Doc ID: f40dfd88fd0ad386742144ee8c7f5e38dee54ac1

be through the provisions set forth herein. Without limiting the foregoing, any challenge to the Settlement Agreement, the Final Approval Order and Judgment to be entered upon final approval shall be pursuant to appeal under the Federal Rules of Appellate Procedure and not through a collateral attack.

**8.2.5.** The Settling Parties shall file their responses to Objections, if any, to the settlement no later than ten (10) days prior to the Final Fairness Hearing.

**8.2.6.** By filing an objection, objectors and their counsel submit to the jurisdiction of the Court for all purposes, including but not limited to subpoenas and discovery.

**8.2.7.** Objectors must also make themselves available for deposition by counsel for the Parties between the time the objection is filed and a date no later than five (5) days before the Final Fairness Hearing, and the objection must include the dates when the objector is available for deposition.

**8.2.8.** Any Settlement Class Member who, within forty-five (45) prior to the Final Approval Hearing (the Objection Deadline), files and serves a written objection satisfying the requirements of this section may appear at the Fairness Hearing, either in person or through personal counsel hired at the Settlement Class Member's expense, to object to any aspect of the fairness, reasonableness, or adequacy of the Settlement. Settlement Class members, or their attorneys, intending to make an appearance at the Final Fairness Hearing must deliver to Class Counsel and BANA's Counsel and have file-marked by the Court, no later than forty-five (45) days before the

Doc ID: f40dfd88fd0ad386742144ee8c7f5e38dee54ac1

Final Fairness Hearing or as the Court otherwise may direct, a Notice of Intent to Appear. The Notice of Intent to Appear must: (i) state how much time the Settlement Class Member anticipates needing to present the objection; (ii) identify, by name, address, and telephone number all witnesses the Settlement Class Member proposes to have testify; (iii) summarize in detail the anticipated testimony of all such witnesses; (iv) identify all exhibits the Settlement Class Member intends to offer in support of the objection; and (v) attach complete copies of all such exhibits.

**8.2.9.** Any Settlement Class Member who fails to timely file such a written statement of his or her intention to object shall be foreclosed from making any objection to the Settlement and shall waive and forfeit any and all rights he or she may have to appear separately and/or object, and shall be bound by all the terms of this Settlement Agreement and by all proceedings, orders and judgments, including but not limited to, the Release contained in this Settlement Agreement.

## 9. ATTORNEYS' FEES AND COSTS

**9.1.** Class Counsel will move for approval of an award of Attorneys' Fees and reimbursement of the expenses of this Action at least thirty (30) days prior to the Opt-Out and Objection Deadline, which motion shall be separate and apart from the Motion for Preliminary Approval and the Motion for Final Approval. The Motion for Attorneys' Fees and Costs shall include a proposed order on said Motion.

ACTIVE/124014350

Doc ID: f40dfd88fd0ad386742144ee8c7f5e38dee54ac1

**9.2.** BANA agrees that Class Counsel shall be entitled to an award of reasonable Attorneys' Fees, to be determined by the Court.

**9.3.** BANA agrees not to object to Class Counsel's request for attorneys' fees not to exceed one-third (1/3) of the Settlement Amount. Based upon the total Settlement Amount of $8,000,000, BANA will not object to a request for Attorneys' Fees of up to $2,666,667. However, BANA reserves its rights to object or oppose any request for Attorneys' Fees by Class Counsel over and above that amount.

**9.4.** In addition, Class Counsel may request reimbursement of expenses and costs in prosecuting this matter. BANA expressly reserves its rights to object or oppose the amount sought by Class Counsel. Any Court-approved Costs and Fees shall be deducted from the Settlement Amount.

**9.5.** The Attorneys' Fees and Costs Award shall be paid from the Settlement Amount, with no further obligation by BANA.

**9.6.** As stated above, any Attorneys' Fees and Costs Award shall be paid into the account for distribution to Class Counsel in accordance with this Agreement within five (5) business days after the Effective Date.

**9.7.** If the award of Attorneys' Fees is reduced or reversed on appeal, Class Counsel shall make all necessary refunds and repayments into the Settlement Amount no later than thirty (30) days after the Court notifies Class Counsel. Such refunds shall be distributed by the Settlement Administrator to the Settlement Class in the manner provided by the Final Approval Order.

ACTIVE/124014350

Doc ID: f40dfd88fd0ad386742144ee8c7f5e38dee54ac1

## 10. SERVICE AWARD TO CLASS REPRESENTATIVES

**10.1.** __Application for Service Award__.  Class Counsel shall apply to the Court for a service award to be paid from the Settlement Amount to the Class Representatives for serving as class representative in support of the Settlement at least thirty (30) days prior to the Opt-Out Deadline, which motion shall be separate and apart from the Motion for Preliminary Approval and the Motion for Final Approval. BANA will not oppose a request of $5,000 to each Class Representative. In total, this amounts to a total "Service Award" for both Class Representatives of $10,000.

**10.2.** __No Additional Obligation by BANA__.  BANA shall have no other responsibility for or liability with respect to the payment of a service award to the Class Representatives beyond the amount stated above for resolution of the Released Claims herein.

**10.3.** __Source of Payment__.  A Service Award in the amount approved by the Court shall be paid by the Settlement Administrator through distribution from the Settlement Amount as set forth above.

**10.4.** If a Service Award is reduced or reversed on appeal, Class Representatives shall make all necessary refunds and repayments into the Settlement Amount no later than thirty (30) days after the Court notifies Class Counsel. Such refunds shall be distributed by the Settlement Administrator to the Settlement Class in the manner provided by the Final Approval Order.

## 2. FINAL FAIRNESS HEARING AND FINAL APPROVAL

**10.5.** __Final Fairness Hearing__.  The Parties will jointly request that the Court hold the Final Fairness Hearing to consider approval of the settlement of the Action as provided for herein approximately one hundred and sixty-five (165) days after Preliminary Approval but in no event fewer than ninety (90) days after the CAFA Notice is served. At least forty-five (45) days

before the Final Fairness Hearing, Class Counsel shall provide a draft of the motion for entry of the Final Approval Order to BANA's Counsel for review and comment. Class Counsel shall file motion for entry of the Final Approval Order no less than thirty (30) days before the Final Fairness Hearing. The Parties agree that the Final Approval Order constitutes a final judgment dismissing the Action with prejudice.

10.6. **Final Approval**. All relief contemplated by this Settlement Agreement is expressly contingent upon the Court's Final Approval.

10.7. **Dismissal of Barokas Action.** Within five (5) business days of the filing of the First Amended Complaint in the Action, Barokas shall file a Stipulation of Dismissal with Prejudice under Fed. R. Civ. P. 41(a)(1)(A)(ii) in the Barokas Action, in the form annexed hereto as Exhibit F.

## 11. RELEASE OF CLAIMS

11.1. **Release of BANA and Released Parties**. Upon the Effective Date, in exchange for the relief described herein, each Releasing Party releases and discharges the Released Parties of and from the Released Claims. This Release shall be included as part of any judgment, so that all released claims and rights shall be barred by principles of *res judicata*, collateral estoppel, and claim and issue preclusion. Subject to the Court's approval, this Settlement Agreement shall bind all Settlement Class Members, and all Released Claims shall be dismissed with prejudice and released as against the Released Parties. The Released Claims are released regardless of whether these claims are known or Unknown Claims, actual or contingent, liquidated or unliquidated.

11.2. **Covenant Not to Sue.** The Class Representatives, on behalf of themselves and the Settlement Class Members, covenant and agree: (i) not to file, commence, prosecute,

ACTIVE/124014350.16

intervene in, or participate in (as class members or otherwise) any action in any jurisdiction based on or relating to any of the Released Claims, or the facts and circumstances relating thereto, against any of the Released Parties; (ii) not to organize or solicit the participation of Settlement Class Members, or Persons who would otherwise fall within the definition of the Settlement Class but who requested to be excluded from the Settlement Class, in a separate class for purposes of pursuing any action (including by seeking to amend a pending complaint to include class allegations, or seeking class certification in a pending action in any jurisdiction) based on or relating to any of the Released Claims or the facts and circumstances relating thereto, against any of the Released Parties; and (iii) that the foregoing covenants and this Settlement Agreement shall be a complete defense to any of the Released Claims against any of the Released Parties.

## 12. DISPUTES RELATING TO THE SETTLEMENT

12.1. **Good Faith.** The Parties shall work in good faith to resolve any disputes that may arise in connection with the Settlement.

12.2. **Best Efforts.** Until and unless this Settlement Agreement is dissolved or becomes null and void by its own terms, or unless otherwise ordered by the Court, or if Final Approval is not achieved, the Class Representatives, BANA, Class Counsel and BANA's Counsel represent and warrant that they shall take all appropriate steps in the Action necessary to preserve the jurisdiction of the Court, use their best efforts to cause the Court to grant Preliminary Approval and Final Approval of this Settlement Agreement as promptly as possible, and take or join in such other steps as may be necessary to implement this Settlement Agreement and to effectuate the Settlement.

ACTIVE/124014350

Doc ID: f40dfd88fd0ad386742144ee8c7f5e38dee54ac1

## 13.    MISCELLANEOUS PROVISIONS

**13.1.    <u>Non-Disparagement</u>**:  The Class Representatives, Class Counsel, BANA, and BANA's Counsel shall not issue, or otherwise cause to be issued, any press release, advertisement, or Internet posting related to this Settlement, including that which (i) disparages the Class Representatives, Class Counsel, BANA, or BANA's Counsel with respect to any matters or issues alleged or asserted in the Action or relating to this Settlement; or (ii) includes evidence or information protected from disclosure by the Protective Order in the Action.

**13.2.    <u>No Admission.</u>**  Nothing herein shall constitute any admission as to any assertion, claim, or allegation made by any Party, or as to the scope of liability. The Parties further agree that BANA's decision to resolve these claims prior to responding to the First Amended Complaint likewise does not constitute any admission as to any assertion, claim, or allegation made by any Party, or as to the scope of liability stated therein. BANA specifically denies any wrongdoing or liability in this Action, including in the First Amended Complaint, and in the Barokas Action, and specifically denies that a class could or should be certified in the Action for litigation purposes. This Settlement Agreement is entered into to resolve all claims amicably and avoid the risk and expense of additional litigation, and does not imply or suggest in any way fault or wrongdoing. The Parties agree that this Settlement Agreement and its Exhibits, and any and all associated negotiations, documents, discussions, shall not be deemed or construed by anyone to be an admission or evidence of any violation of any statute or law, or of any liability or wrongdoing by BANA.

**13.3.    <u>First Amended Complaint</u>**: Prior to, or concurrent with the filing of the Motion for Preliminary Approval, Plaintiffs shall file a First Amended Complaint, substantially in the form of Exhibit E attached hereto, which shall become the operative complaint in the Action,

Doc ID: f40dfd88fd0ad386742144ee8c7f5e38dee54ac1

adding Class Representative, Eline Barokas, as plaintiff and as a proposed Class Representative, and limiting the claims to ACH First Party Fees, and which shall not substantively change the complaint in any way except as set forth herein. Except as provided in Section 7.2 above, the Parties agree that no answer or response to the First Amended Complaint by BANA is required, and that BANA shall not be regarded as having admitted any allegations asserted against it.

      **13.4.**   **Admissibility of Settlement Agreement**. This Settlement Agreement shall not be offered nor shall be admissible as evidence in any action or proceeding except (i) the hearings necessary to obtain and implement Court approval of this Settlement; and (ii) any hearing to enforce the terms of this Settlement Agreement or related order by the Court. This Settlement Agreement, whether or not consummated, any proceedings relating to the Settlement, and any of the terms of the Settlement Agreement, whether or not consummated, shall in no event be construed as, or deemed to be evidence of, an admission or concession on the part of BANA with respect to any fact or matter alleged in the Action, or any fault or liability or wrongdoing or damage whatsoever, or any infirmity in any defense that has been or could have been asserted.

      **13.5.**   **Successors and Assigns**. This Settlement Agreement's terms shall apply to and bind the Parties and their heirs, successors, and assigns.

      **13.6.**   **No Assignments.** The Class Representatives and Class Counsel represent, covenant, and warrant that they have not directly or indirectly assigned, transferred, encumbered, or purported to assign, transfer, or encumber any portion of any Released Claim except as set forth herein, and that there are no Persons having any interest in any award of attorneys' fees, expenses, or litigation costs in connection with the Action. Class Counsel agrees to indemnify and hold BANA and its counsel harmless as to (a) any breach of the representation and warranty

contained in the prior sentence; and (b) any claim by any other Person against BANA or its counsel for such an award of attorneys' fees, expenses, or litigation costs.

13.7. <u>**No Tax Advice**</u>. BANA may be required to file certain Form 1099 or other information reports with the United States Internal Revenue Service or other government agencies as required indicating its payments to the Settlement Class Members. No representations or advice regarding the tax consequences of this Settlement Agreement have been made by anyone. The Parties further understand and agree that each Party, each Settlement Class Member, and each of Class Counsel shall be responsible for his, her, its, or their own taxes, if any, resulting from this Settlement Agreement and any payments made pursuant to this Settlement Agreement.

13.8. <u>**Communications with Parties Relating to Settlement Agreement**</u>. All notices, requests for consent, and other formal communications under this Settlement Agreement shall be in writing and sent by mail and email to counsel for the Party to whom notice is directed at all of the addresses below. Any Party may change its designated recipient(s) or notice address(es) by written notice to all other Parties.

| **If to Class Representatives:** | **If to Defendants:** |
|---|---|
| Larry McDevitt (NC Bar No. 5032)<br>David M. Wilkerson (NC Bar No. 35742)<br>The Van Winkle Law Firm<br>11 North Market Street<br>Asheville, NC 28801<br>(828)258-2991<br>dwilkerson@vwlawfirm.com<br>lmcdevitt@vwlawfirm.com | Bradley Kutrow (NC Bar No. 13851)<br>MCGUIREWOODS LLP<br>201 N. Tryon Street, Suite 3000<br>Charlotte, NC 28202<br>Telephone: (704) 343-2000<br>Fax: (704) 343-2300<br>bkutrow@mcguirewoods.com |
| Jeffrey D. Kaliel (*pro hac vice*)<br>Sophia Gold (*pro hac vice*)<br>KALIEL GOLD PLLC<br>1100 15th St. NW, 4th Floor | GOODWIN PROCTER LLP<br>Allison J. Schoenthal (*pro hac vice*)<br>Chenxi Jiao (*pro hac vice*)<br>The New York Times Building<br>620 Eighth Avenue<br>New York, NY 10018 |

42

Washington, D.C. 20005          (212) 813-8800
(202) 350-4783                  aschoenthal@goodwinlaw.com
jkaliel@kalielpllc.com          cjiao@goodwinlaw.com
sgold@kalielpllc.com

                                GOODWIN PROCTER LLP
                                Laura G. Brys (*pro hac vice*)
                                601 South Figueroa Street, Suite 4100
                                Los Angeles, CA 90017
                                (213) 426-2584
                                lbrys@goodwinlaw.com

**13.9.   Entire and Voluntary Agreement**.

   **13.9.1. <u>Knowing and Voluntary Assent</u>**.  The Parties agree that the Settlement

   Agreement is voluntary and that its terms were negotiated at arm's length.

   The Parties agree that they were represented by competent and

   experienced counsel.

   **13.9.2. <u>Entire Agreement</u>**.  The Parties intend the Settlement Agreement to be a

   complete and final resolution to the Action. This Settlement Agreement

   contains the Parties' entire agreement on and understanding of the subject-

   matter at issue in the Action. This Settlement Agreement merges with and

   supersedes all prior negotiations and proposals, whether written or oral.

**13.10.  <u>Headings and Titles</u>.**  The headings and titles in this Settlement Agreement are

for the reader's convenience only and shall not affect or alter the meaning of the Settlement

Agreement's terms.

**13.11.  <u>Settlement Agreement Controls Over Exhibits</u>**.  All exhibits attached to this

Settlement Agreement are hereby incorporated into this Settlement Agreement as though fully

set forth herein. If there is any conflict between the terms of the Settlement Agreement and the

attached exhibits, the Settlement Agreement shall control.

ACTIVE/124014350

Doc ID: f40dfd88fd0ad386742144ee8c7f5e38dee54ac1

13.12.  **Amendments and Modifications**.  This Settlement Agreement may be amended or modified only by a written instrument signed by the Parties or by the respective attorneys, or their respective successors-in-interest.

13.13.  **Authorization of Counsel**.  The Class Representatives and Settlement Class Members expressly authorize Class Counsel to take all appropriate action required or permitted to be taken by the Settlement Class pursuant to the Settlement Agreement to effectuate its terms. Class Counsel are furthermore expressly authorized to enter into any modifications or amendments to the Settlement Agreement on behalf of the Settlement Class Members that they deem necessary or appropriate. Each attorney or other Person executing the Settlement Agreement on behalf of a Party hereto warrants that such attorney or other Person has full authority to do so. The undersigned representatives of BANA represent that they are fully authorized to enter into and execute this Settlement Agreement on behalf of BANA. Class Counsel represent that they are fully authorized to conduct settlement negotiations with BANA's Counsel on behalf of the Class Representatives and to enter into and execute this Settlement Agreement on behalf of the Class Representatives and the putative Settlement Class Members, subject to approval by the Court.

13.14.  **Computation of Time**. Except as expressly set forth herein, in computing any period of time prescribed or allowed by this Settlement Agreement, the provisions of Federal Rule of Civil Procedure 6 shall govern.

13.15.  **Continuing Jurisdiction and Exclusive Venue**.  Each of the Parties, each Settlement Class Member, and each of the Releasing Parties that are otherwise subject to the jurisdiction of a United States court hereby irrevocably submits to the exclusive jurisdiction and venue of the United States District Court for the Western District of North Carolina for any suit,

44

ACTIVE/124014350

Doc ID: f40dfd88fd0ad386742144ee8c7f5e38dee54ac1

action, proceeding, case, controversy, or dispute arising from or related to this Settlement Agreement and/or Exhibits hereto and the negotiation, performance, or breach of same.

**13.16.  Construction and Interpretation of Terms**.  The Parties have cooperated in drafting and preparing this Settlement Agreement. There shall therefore be no presumption for or against any Party because that Party initially drafted a particular section or subsection. Before declaring any provision invalid, a court should first attempt to construe the provision as valid, consistent with the Settlement Agreement's purposes, and consistent with applicable precedent.

**13.17.  No Claims Arising from this Settlement Agreement**. No Person shall have any claim against any of the Released Parties, against any Class Representative, or against counsel for any Party, based on distribution of benefits made substantially in accordance with this Settlement Agreement or related order(s) of the Court.

**13.18.  Standing of Released Parties**.  The Released Parties who are not signatories hereto shall be third-party beneficiaries under this Settlement Agreement and shall be entitled to enforce this Settlement Agreement in accordance with its terms. Aside from the Released Parties, it is not the intention of the Parties to confer third-party beneficiary rights or remedies upon any other Person or entity.

**13.19.  Applicable Law**. This Settlement Agreement shall be interpreted under and governed by federal law. To the extent state law applies, the laws of the State of North Carolina shall apply, without regard to choice of law principles. All judicial proceedings regarding this Settlement Agreement shall be brought only in this Court.

**13.20.  Counterparts**. This Settlement Agreement may be executed in two or more counterparts and by facsimile or email of PDF, both of which shall be deemed an original. Original signatures are not required. All executed counterparts shall be deemed to be one and the

same instrument. Counsel for the Parties shall exchange among themselves signed counterparts. A complete set of executed Counterparts shall be filed with the Court.

IN WITNESS THEREOF, the Parties have caused this Settlement Agreement and Release to be executed by their duly authorized representatives.

ACTIVE/124014350

Doc ID: f40dfd88fd0ad386742144ee8c7f5e38dee54ac1

APPROVED BY PLAINTIFFS AND CLASS COUNSEL

_____     Date: 09 / 11 / 2023 _____
Tami Bruin

_____     Date: 09 / 08 / 2023 _____
Eline Barokas

*Sophia Gold*
_____     Date: 09 / 08 / 2023 _____
Jeffrey D. Kaliel
Sophia Gold
KALIEL GOLD PLLC

_____     Date: 09 / 08 / 2023 _____
David Wilkerson
Larry McDevitt
The Van Winkle Law Firm


APPROVED BY DEFENDANT AND COUNSEL FOR DEFENDANT

*James Ciccone*
_____     Date:  September 5, 2023 _____
On behalf of Bank of America, N.A.


_____     Date:  9/5/2023 _____
Allison J. Schoenthal
GOODWIN PROCTER LLP

Doc ID: f40dfd88fd0ad386742144ee8c7f5e38dee54ac1



| | |
|---|---|
| **Title** | Settlement Agreement for Eline Barokas and Tami Bruin v.... |
| **File name** | content |
| **Document ID** | f40dfd88fd0ad386742144ee8c7f5e38dee54ac1 |
| **Audit trail date format** | MM / DD / YYYY |
| **Status** | ● Signed |

**This document was requested from sflinjuryattorneys.lightning.force.com**

## Document History

| | | |
|---|---|---|
| SENT | **09 / 08 / 2023** 16:37:33 UTC | Sent for signature to Tami Bruin (tamibruin@yahoo.com), Eline Barokas (elinebarokas@gmail.com), Sophia Gold (sgold@kalielgold.com) and David Wilkerson (dwilkerson@vwlawfirm.com) from gpalacios@shamisgentile.com IP: 134.56.254.34 |
| VIEWED | **09 / 08 / 2023** 16:37:50 UTC | Viewed by Eline Barokas (elinebarokas@gmail.com) IP: 142.105.34.89 |
| SIGNED | **09 / 08 / 2023** 16:38:13 UTC | Signed by Eline Barokas (elinebarokas@gmail.com) IP: 142.105.34.89 |
| VIEWED | **09 / 08 / 2023** 16:48:53 UTC | Viewed by Sophia Gold (sgold@kalielgold.com) IP: 71.202.248.206 |
| SIGNED | **09 / 08 / 2023** 16:49:10 UTC | Signed by Sophia Gold (sgold@kalielgold.com) IP: 71.202.248.206 |
| | **09 / 08 / 2023** 20:12:22 UTC | Viewed by David Wilkerson (dwilkerson@vwlawfirm.com) IP: 167.160.36.22 |

Powered by ✖ Dropbox Sign



| | |
|---|---|
| **Title** | Settlement Agreement for Eline Barokas and Tami Bruin v.... |
| **File name** | content |
| **Document ID** | f40dfd88fd0ad386742144ee8c7f5e38dee54ac1 |
| **Audit trail date format** | MM / DD / YYYY |
| **Status** | ● Signed |

**This document was requested from sflinjuryattorneys.lightning.force.com**

## Document History

| | | |
|---|---|---|
| SIGNED | **09 / 08 / 2023**<br>20:14:29 UTC | Signed by David Wilkerson (dwilkerson@vwlawfirm.com)<br>IP: 71.11.83.68 |
| VIEWED | **09 / 09 / 2023**<br>13:03:14 UTC | Viewed by Tami Bruin (tamibruin@yahoo.com)<br>IP: 216.250.210.3 |
| SIGNED | **09 / 11 / 2023**<br>16:24:43 UTC | Signed by Tami Bruin (tamibruin@yahoo.com)<br>IP: 108.70.128.172 |
| COMPLETED | **09 / 11 / 2023**<br>16:24:43 UTC | The document has been completed. |

# EXHIBIT A

Re: Legal Notice of Class Action Settlement

IF YOU HAD A CONSUMER CHECKING AND/OR SAVINGS ACCOUNT WITH BANK OF AMERICA, N.A. AND PAID CERTAIN ACH TRANSFER FEES FOR PUSH TRANSFERS TO YOUR OWN EXTERNAL ACCOUNT **BETWEEN APRIL 4, 2018, AND ==[THE DATE OF PRELIMINARY APPROVAL]==**, YOU MAY BE ENTITLED TO A PAYMENT FROM A CLASS ACTION SETTLEMENT.

**The District Court for the Western District of North Carolina has authorized this Notice. It is not a solicitation from a lawyer.**

**PLEASE READ THIS NOTICE FULLY AND CAREFULLY; THE PROPOSED SETTLEMENT MAY AFFECT YOUR RIGHTS**

*For more information, including a more detailed description of your rights and options, please click here or visit* www.ACHFirstPartyFeeSettlement.com

A Settlement has been reached with Bank of America, N.A. ("BANA") in a class action lawsuit about ACH Transfer Fees assessed for push transfers to accountholders' own external accounts ("ACH First Party Fees") related to certain ACH transactions that were charged on accounts from **April 4, 2018, through ==[the date of preliminary approval]==.**

**Who is included? BANA records indicate that you are a "Settlement Class Member" in this Settlement because you are in the following Settlement Class definition:** All Accountholders in the United States who, during the Class Period, paid and were not refunded an ACH First Party Fee.  Excluded from the Settlement Class is BANA, its parents, subsidiaries, affiliates, officers, directors, employees, all Settlement Class Members who make a timely election to opt-out, and all judges assigned to this litigation and their immediate family members.

**What does the Settlement provide?** BANA will create an $8,000,000 Settlement Fund. After deducting Attorneys' Fees and Costs, a Service Award to the Class Representatives, and the Settlement Administration Costs, the Net Settlement Fund will be divided *pro rata* among all Settlement Class Members with a minimum payment of $2.00.

**What are my options?** If you do nothing and the Settlement is approved by the Court and becomes final, you will automatically receive a Settlement Class Member Payment and your rights will be affected. If you do not want to be legally bound by the Settlement and receive a Settlement Class Member Payment, you must opt-out of the Settlement by _____ **2023**. Unless you opt-out, you will not be able to sue or continue to sue BANA for any claim made in this lawsuit or released by the Settlement Agreement. If you stay in the Settlement (and do not opt-out), you may object to it by _____ **2023**.

**The Court's Final Fairness Hearing.** The Court will hold a Final Fairness Hearing on _____ **2023**. At this hearing, the Court will decide whether to approve: (1) the Settlement; (2) Class Counsel's request for attorneys' fees (up to 33.33% of the Settlement Fund) and expenses; and (3) a Service Award of $5,000 for each of the Class Representatives. You or your lawyer may appear at the hearing at your own expense, but you do not have to.

*For more information, including a detailed copy of the Long Form Notice and the full Settlement Agreement, visit* www.ACHFirstPartyFeeSettlement.com *or call XXX-XXX-XXX.*

# EXHIBIT B

*Bruin, et al. v. Bank of America, N.A. Settlement*
P.O. Box ####
City, State Zip Code

<u>Legal Notice</u>

**If you had a consumer checking and/or savings account with Bank of America, N.A., and paid certain ACH Transfer Fees for push transfers to your own external account, between April 4, 2018, and [the date of preliminary approval], you may be entitled to payment from a class action settlement.**

**Phone Number**
www.ACHFirstPartyFeeSettlement.com

<<MAIL ID>>
<<NAME 1>>
<<NAME 2>>
<<ADDRESS LINE 1>>
<<ADDRESS LINE 2>>
<<ADDRESS LINE 3>>
<<ADDRESS LINE 4>>
<<ADDRESS LINE 5>>
<<CITY, STATE ZIP>>
<<COUNTRY>>

ACTIVE/124626293.1

A Settlement has been reached with Bank of America, N.A. ("BANA") in a class action lawsuit about ACH Transfer Fees assessed for push transfers to accountholders' own external accounts ("ACH First Party Fees") from **April 4, 2018, through [the date of preliminary approval]**.

**Who is included? BANA records indicate that you are a "Settlement Class member" in this Settlement because you fit the following Settlement Class definition:** All Accountholders in the United States who, during the Class Period, paid and were not refunded an ACH First Party Fee. Excluded from the Settlement Class is BANA, its parents, subsidiaries, affiliates, officers, directors, employees, all Settlement Class Members who make a timely election to opt-out, and all judges assigned to this litigation and their immediate family members.

**What does the Settlement provide?** BANA will create an $8,000,000 Settlement Fund. After deducting Attorneys' Fees and Costs, a Service Award to the Class Representatives, and the Settlement Administration Costs, the Net Settlement Fund will be divided *pro rata* among all Settlement Class Members with a minimum payment of $2.00.

**What are my options?** If you do nothing and the Settlement is approved by the Court and becomes final, you will automatically receive a Settlement Class Member Payment and your rights will be affected. If you do not want to be legally bound by the Settlement and receive a Settlement Class Member Payment, you must opt-out of the Settlement by **[forty five days before the final approval hearing]**. Unless you opt-out, you will not be able to sue or continue to sue BANA for any claim made in this lawsuit or released by the Settlement Agreement. If you stay in the Settlement (and do not opt-out), you may object to it by **[forty five days before the final approval hearing]**.

**The Court's Final Fairness Hearing.** The Court will hold a Final Fairness Hearing on _____ **2023**. At this hearing, the Court will decide whether to approve: (1) the Settlement; (2) Class Counsel's request for Attorneys' Fees of up to 33% of the Settlement Fund and reimbursement of Costs; and (3) a Service Award of $5,000 for each of the Class Representatives. You or your lawyer may appear at the hearing at your own expense, but you do not have to.

**More information, including a detailed Long Form Notice and the full Settlement Agreement, are available at** www.ACHFirstPartyFeeSettlement.com **or by calling XXX-XXX-XXX.**

# EXHIBIT C

*Tami Bruin, et al. v. Bank of America, N.A.*

**NOTICE OF PENDING CLASS ACTION AND PROPOSED SETTLEMENT**

**READ THIS NOTICE FULLY AND CAREFULLY; THE PROPOSED SETTLEMENT MAY AFFECT YOUR RIGHTS.**

**IF YOU HAD A CONSUMER CHECKING AND/OR SAVINGS ACCOUNT WITH BANK OF AMERICA, N.A. ("BANA"), AND PAID CERTAIN ACH TRANSFER FEES FOR PUSH TRANSFERS TO YOUR EXTERNAL ACCOUNT BETWEEN APRIL 4, 2018, AND [THE DATE OF PRELIMINARY APPROVAL], YOU MAY BE ENTITLED TO A PAYMENT FROM A CLASS ACTION SETTLEMENT.**

The Court for the Western District of North Carolina has authorized this Class Notice; it is not a solicitation from a lawyer.

| SUMMARY OF YOUR OPTIONS AND THE LEGAL EFFECT OF EACH OPTION | |
|---|---|
| **DO NOTHING** | If you were assessed, paid, and were not refunded the types of fees that are being challenged in this case, then you will receive a payment from the Settlement Fund so long as you do not opt-out of the Settlement (described in the next box). |
| **OPT-OUT and EXCLUDE YOURSELF FROM THE SETTLEMENT; RECEIVE NO PAYMENT BUT RELEASE NO CLAIMS** | You can choose to opt-out of the Settlement which means you are excluding yourself from the Settlement. This means you choose not to participate in the Settlement. You will keep your legal right to bring your individual claims against BANA, but you will not receive a payment from this Settlement. The deadline to opt-out of the Settlement is _____ **2023**. If you opt-out, but still want to recover against BANA, then you will have to file a separate lawsuit or claim. |
| **OBJECT TO THE SETTLEMENT** | If you do not opt-out, but instead wish to object to the Settlement or any matters described in the Class Notice, you may do so by filing with the Court a notice of your intention to object. The deadline to object to the Settlement is _____ **2023.** |

These rights and options—***and the deadlines to exercise them***—along with the material terms of the Settlement are explained in this Class Notice.

# BASIC INFORMATION

## 1. What is this lawsuit about?

The lawsuit that is being settled is entitled: Tami Bruin and Eline Barokas v. Bank of America, N.A., Civil Action No. 3:22-cv-140 ("Action"). The people who sued are called the "Class Representatives" or "Plaintiffs." The Defendant is "BANA." The case is a "class action." That means that Class Representatives are acting on behalf of the Settlement Class. The transactions at issue occurred **between April 4, 2018, and [the date of preliminary approval]** ("Class Period").

All Accountholders in the United States who, during the Class Period, paid and were not refunded an ACH First Party Fee. Excluded from the Settlement Class is BANA, its parents, subsidiaries, affiliates, officers directors, employees, all Settlement Class Members who make a timely election to opt-out, and all judges assigned to this litigation and their immediate family members.

BANA denies all wrongdoing and liability and denies that Plaintiffs' claims entitle Plaintiffs or the Settlement Class Members to any relief and denies that anyone was harmed by the conduct that Plaintiffs allege.

## 2. Why did I receive Notice of this lawsuit?

You received the Class Notice because BANA's records indicate that you are in the Settlement Class that was alleged to have been charged one or more of the fees at issue. The Court directed that the Class Notice be sent to all Settlement Class Members because each Settlement Class Member has a right to know about the proposed Settlement and the options available to him or her before the Court decides whether to approve the Settlement.

## 3. Why did the Parties settle?

In any lawsuit, there are risks and potential benefits that come with a trial versus settling at an earlier stage. It is the Class Representatives' lawyers' job to identify when a proposed settlement offer is good enough that it justifies recommending settling the case instead of continuing to trial. In a class action, these lawyers, known as Class Counsel, make this recommendation to the Class Representatives. The Class Representatives have the duty to act in the best interests of the Settlement Class as a whole and, in this case, it is their belief, as well as Class Counsel's opinion, that this Settlement is in the best interest of all Settlement Class Members for at least the following reasons:

There is legal uncertainty about whether a judge or a jury will find that BANA breached its agreements with customers or otherwise acted improperly by assessing the ACH Transfer Fees that are the subject of this Action. There is also uncertainty about whether the Class Representatives' claims are subject to other defenses that might result in no or less recovery to Settlement Class Members. Even if the Class Representatives were to win at trial, there is no assurance that the Settlement Class Members would be awarded more than the current Settlement Amount, and it may take years of litigation before any payments would be made. By settling, the Settlement Class Members will avoid these, and other risks, and the delays associated with continued litigation.

While BANA disputes Plaintiff's claims, it has agreed to settle to avoid the costs, distractions, and risks of litigation. Thus, even though BANA denies that it did anything improper, it believes the Settlement is in the best interest of both Parties and the Settlement Class.

# WHO IS IN THE SETTLEMENT

## 4. How do I know if I am part of the Settlement?

If you received the Class Notice, then BANA's records indicate that you are a Settlement Class Member who is entitled to receive a payment.

ACTIVE/124626261.2

# <u>YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT</u>

## 5. What options do I have with respect to the Settlement?

You have three options: (1) do nothing and you will receive a Settlement Class Member Payment according to the terms of this Settlement, but you give up your rights to sue BANA separately about the same legal claims in this lawsuit; (2) opt-out of the Settlement and you will not receive a Settlement Class Member Payment; or (3) participate in the Settlement but object to it. Each of these options is described in a separate section below.

## 6. What are the critical deadlines?

If you do nothing, you will receive a Settlement Class Member Payment.

The deadline for sending a letter to opt-out or exclude yourself from the Settlement is _____ **2023**.

The deadline to file an objection with the Court is _____ **2023**.

## 7. Under what circumstances should I opt-out?

If you do not like the Settlement and you believe that you could receive more money by pursuing your claims on your own (with or without an attorney that you could hire), and you are comfortable with the risk that you might lose your case or get less than you would in this Settlement, then you may want to consider opting-out.

## 8. What happens if I file an objection?

If you believe the Settlement is unreasonable, unfair, or inadequate and the Court should reject the Settlement, you can object to the Settlement terms. The Court will decide if your objection is valid. If the Court agrees with you, then the Settlement will not be approved, and no payments will be made to you or any other Settlement Class Member. If your objection (and any other objection) is overruled, and the Settlement is approved, then you will still get a Settlement Class Member Payment.

## 9. What must happen for the Settlement to be approved?

The Court must decide that the Settlement is fair, reasonable, and adequate before it will approve it. The Court already has decided to provide Preliminary Approval of the Settlement which is why you received this Class Notice. The Court will make a final decision regarding the Settlement at a Final Fairness Hearing, which is currently scheduled for _____ **2023**.

# <u>THE SETTLEMENT PAYMENT</u>

## 10. How much is the Settlement?

BANA has agreed to create a Settlement Fund of $8,000,000 ("Settlement Fund" or "Settlement Amount"). As discussed separately below, Attorneys' Fees and Costs, a Service Award to the Class Representatives, and Settlement Administration Costs will be paid out of this amount. The remainder is the Net Settlement Amount/Fund. Subject to Court approval, the Net Settlement Amount/Fund will be divided among all Settlement Class Members on a *pro rata* basis pursuant to the formula described in the Settlement Agreement.

## 11. How much of the Settlement Fund will be used to pay for Attorneys' Fees and Costs?

Class Counsel will request that the Court award up to 33.33% of the Settlement Amount as Attorneys' Fees, plus reimbursement of litigation costs incurred in prosecuting the Action. The Court will decide the amount of the Attorneys' Fees based on a number of factors, including the risk associated with bringing the case, the amount of time

spent on the case, the amount of costs incurred to prosecute the case, the quality of the work, and the outcome of the case.

## 12. How much of the Settlement Fund will be used to pay the Class Representatives a Service Award?

Class Counsel, on behalf of the Class Representatives, will request a Service Award of $5,000 for each of the Class Representatives. The Service Award must be approved by the Court.

## 13. How much will my payment be?

Subject to Court approval, the Net Settlement Amount/Fund will be divided among all Settlement Class Members entitled to Settlement Class Member Payments *pro rata* with a minimum payment of $2.00 as outlined in the Settlement Agreement, which may be found at www.ACHFirstPartyFeeSettlement.com. Current Accountholders of BANA as of the Effective Date of the Settlement Agreement will receive a credit to their BANA accounts for the amount they are entitled to receive. Past Accountholders of BANA will receive a check from the Settlement Administrator.

## 14. Do I have to do anything if I want to participate in the Settlement?

No. Any amount you are entitled to under the terms of the Settlement will be distributed to you, unless you choose to opt-out of the Settlement. Opting-out from the Settlement means you choose not to participate in the Settlement. You will keep your legal right to bring your individual claims against BANA, but you will not receive a Settlement Class Member Payment. In that case, if you choose to seek recovery against BANA, then you will have to file a separate lawsuit or claim.

## 15. When will I receive my payment?

The Court will hold a Final Fairness Hearing on _____ 2023, to consider whether the Settlement should be approved. If there are no objections and the Court approves the Settlement, then Settlement Class Member Payments should be made within approximately 30 to 60 days after the Settlement's Effective Date. The Effective Date means the next business day after the entry of the Final Approval Order and Final Judgement and Order of Dismissal provided there are no objections to the approval of the Settlement Agreement. If there are objections, then the Effective Date shall mean the next business day following the last date on which a notice of appeal directed to the entry of the Final Approval Order and Final Judgment and Order of Dismissal could have been timely filed but with no notice of appeal having been filed; or, should a notice of appeal be filed, it shall mean the next business day after the Final Approval Order and Final Judgment and Order of Dismissal is affirmed, all appeals are dismissed, and not further appeal is permitted.

# <u>OPTING-OUT OF THE SETTLEMENT</u>

## 16. How do I opt-out from the Settlement?

If you do not want to receive a Settlement Class Member Payment, or if you want to keep any right you may have to sue BANA for the claims alleged in this lawsuit, then you must opt-out of the Settlement.

To opt-out, you **must** send a letter to the Settlement Administrator that you want to opt-out from the Settlement. Your letter can simply say, "I hereby elect to opt-out from the Settlement in the *Tami Bruin, et al. v. Bank of America, N.A.* class action." Be sure to include your name, your address, and your signature. Your exclusion or opt-out request must be **postmarked by** _____ 2023, and sent to the following address:

Bruin v. Bank of America Settlement
Opt-Out Requests: Bank of America ACH Fee Class Action
P.O. Box XXXX
Cit, State Zip Code

4

## 17. What happens if I opt-out of the Settlement?

If you opt-out of the Settlement, you will preserve and not give up any of your rights to sue BANA for the claims alleged in this case. However, you will not be entitled to receive a Settlement Class Member Payment from this Settlement.

## 18. If I opt-out of the Settlement, can I obtain a Settlement Class Member Payment?

No. If you opt-out, you will not be entitled to a Settlement Class Member Payment.

# OBJECTING TO THE SETTLEMENT

## 19. How do I notify the Court that I do not like the Settlement?

You can object to the Settlement or any part of it that you do not like IF you do not opt-out from the Settlement. (Settlement Class Members who opt-out from the Settlement have no right to object to how other Settlement Class Members are treated.) To object, you must do so by filing with the Court a notice of your intention to object. Your objection must include the following:

- A statement of your intention to object to the Settlement in the Tami Bruin, et al. v. Bank of America, N.A. class action;

- the objector's full name, address, telephone number, and e-mail address (if any);

- information identifying the objector as a Settlement Class Member, including evidence that the objector is a member of the Settlement Class;

- a written statement of all grounds for the objection, accompanied by any legal support for the objection the objector believes applicable;

- the identity of all counsel representing or assisting the objector, if any;

- the identity of all counsel representing the objector who will appear at the Final Fairness Hearing, if any;

- a list of all Persons who will be called to testify at the Final Fairness Hearing in support of the objection, if any;

- a statement confirming whether the objector intends to personally appear and/or testify at the Final Fairness Hearing;

- the objector's signature and the signature of the objector's duly authorized attorney or other duly authorized representative (along with documentation setting forth such representation), if any;

- a list, by case name, court, and docket number, of all other cases in which the objector (directly or through counsel) has filed an objection to any proposed class action settlement within the last 3 years;

- a list, by case name, court, and docket number, of all other cases in which the objector's counsel (on behalf of any Person) has filed an objection to any proposed class action settlement within the last 3 years;

- a list, by case name, court, and docket number, of all other cases in which the objector has been a named plaintiff in any class action or served as a lead plaintiff or class representative; and

- the objector's signature (an attorney's signature is not sufficient).

If your objection is made by or through an attorney, the objection must also include:

- the identity and number of the Settlement Class Members represented by objector's counsel;

- the number of such represented Settlement Class Members who have opted-out of the Settlement Class; and

- the number of such represented Settlement Class Members who have remained in the Settlement Class and have not objected.

5

The objection must also include the dates when the objector is available for deposition, which dates may be no later than ==XX== days before the Final Fairness Hearing.

Be advised that if you object to the Settlement and retain an attorney for purposes of objecting, you are solely responsible for paying that attorney's fees and costs. If the attorney intends to seek attorneys' fees and expenses from anyone other than the objector(s) he or she represents, the attorney shall also file with the Court and serve upon Class Counsel and BANA's Counsel, not later than ==XX== days before the Final Fairness Hearing or as the Court may otherwise direct, a document containing the following: (i) the amount of fees sought by the attorney for representing the objector and the factual and legal justification for the fees being sought; (ii) a statement regarding whether the fees being sought were calculated on the basis of a lodestar, contingency, or other method; (iii) the number of hours already spent by the attorney and an estimate of the hours to be spent in the future; and (iv) the attorney's hourly rate.

If you fail to comply with the provisions herein, you will waive and forfeit any and all rights to appear and/or object separately and will be bound by the terms of the Settlement Agreement and the orders and judgments of the Court.

To be timely, written notice of an objection must be filed or received by the Settlement Administrator and/or Court by _____ **2023**, and served at the same time to Class Counsel and Defendant's counsel to the following addresses:

| SETTLEMENT ADMINISTRATOR | CLERK OF COURT | CLASS COUNSEL | BANA'S COUNSEL |
|---|---|---|---|
| Bruin v. Bank of America Settlement<br>P.O. Box ==XXXX==<br>==City, State Zip code== | United States Courthouse Western District of North Carolina<br>401 West Trade Street<br>Room 1200<br>Charlotte, NC 28202 | Andrew Shamis<br>Shamis & Gentile P.A.<br>14 N.E. 1st Ave<br>Suite 705<br>Miami, FL 33132<br><br>Chris Chagas Gold<br>Edelsberg Law P.A. 15th<br>20900 NE 30th Ave<br>Suite 417 33180<br>Aventura, FL 33139<br><br>Sophia Goren Gold<br>KalielGold PLLC<br>950 Gilman Street<br>Suite 200<br>Berkeley, CA 94710<br><br>David M. Wilkerson<br>The Van Winkle Law Firm<br>P.O. Box 7376<br>Ashville, NC 28802 | Bradley Kutrow<br>MCGUIREWOODS LLP<br>201 North Tryon Street<br>Suite 3000<br>Charlotte, NC 28202<br><br>Laura Brys<br>Goodwin Procter LLP<br>601 S. Figueroa Street<br>Suite 4100<br>Los Angeles, CA 900017<br><br>Allison Schoenthal<br>Goodwin Procter LLP<br>620 Eighth Avenue<br>New York, NY 10018 |

## 20. What is the difference between objecting and opting-out of the Settlement?

Objecting is telling the Court that you do not believe the Settlement is fair, reasonable, and adequate for the Settlement Class, and asking the Court to reject it. You can object only if you do not opt-out of the Settlement. If you object to the Settlement and do not opt-out, then you are entitled to a Settlement Class Member Payment if the Settlement is approved, but you will release claims you might have against BANA. Opting-out is telling the Court that you do not want to be part of the Settlement, and do not want to receive a Settlement Class Member Payment or release claims you might have against BANA for the claims alleged in this lawsuit.

## 21. What happens if I object to the Settlement?

If the Court sustains your objection, or the objection of any other Settlement Class Member, then there may be no Settlement. If you object, but the Court overrules your objection and any other objection(s), then you will be part of the Settlement.

# THE COURT'S FAIRNESS HEARING

## 22. When and where will the Court decide whether to approve the Settlement?

The Court will hold a Final Fairness Hearing on _____ **2023**. At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. The Court may also decide how much to award Class Counsel for Attorneys' Fees and Costs and how much the Class Representatives should get as a Service Award for acting as the Class Representatives.

## 23. Do I have to come to the hearing?

No. Class Counsel will answer any questions the Court may have. You or your lawyer may appear at the hearing at your own expense if you desire to do so, but you do not have to. If you have submitted an objection, then you may want to attend.

## 24. May I speak at the hearing?

If you have objected, you may ask the Court for permission to speak at the Final Approval Hearing. To do so, you must separately file a "Notice of Intent to Appear" with the Court no later than _____ **2023**, and in that notice you must:

- state how much time the Settlement Class Member anticipates needing to present the objection;
- identify, by name, address, and telephone number all witnesses the Settlement Class Member proposes to have testify;
- summarize in detail the anticipated testimony of all such witnesses;
- identify all exhibits the Settlement Class Member intends to offer in support of the objection; and.
- attach complete copies of all such exhibits.

You must also deliver a copy of the Notice of Intent to Appear with the above listed items to Class Counsel and BANA's counsel.

# IF YOU DO NOTHING

## 25. What happens if I do nothing at all?

If you do nothing at all, and if the Settlement is approved, then you may receive a Settlement Class Member Payment that represents your share of the Net Settlement Fund. You will be considered a part of the Settlement Class, and you will give up claims against BANA for the conduct identified in the Settlement. You will not give up any other claims you might have against BANA that are not released in this Settlement.

# THE LAWYERS REPRESENTING YOU

## 26. Do I have a lawyer in this case?

The Court ordered that the lawyers and their law firms referred to in this Class Notice as Class Counsel will represent you and the other Settlement Class Members. You may hire your own attorney, at your own expense if you desire to do so, but you do not have to.

## 27. Do I have to pay the lawyer for accomplishing this result?

7

No. Class Counsel will be paid directly from the Settlement Fund.

## 28. Who determines what the attorneys' fees will be?

The Court will be asked to approve the amount of attorneys' fees at the Final Fairness Hearing. Class Counsel will file an application for Attorneys' Fees and Costs and will specify the amount being sought as discussed above. You may review a physical copy of the fee and cost application at the website established by the Settlement Administrator, www.ACHFirstPartyFeeSettlement.com.

8

## GETTING MORE INFORMATION

This Class Notice only summarizes the proposed Settlement. More details are contained in the Settlement Agreement, which can be viewed/obtained online at www.ACHFirstPartyFeeSettlement.com (or at the Office of the Clerk of the Western District of North Carolina, which is located at 401 West Trade Street, Charlotte, NC 28202, by asking for the court file containing the Motion for Preliminary Approval of Class Settlement [the Settlement Agreement is attached to the motion]).

For additional information about the Settlement and/or to obtain copies of the Settlement Agreement, the pleadings in this case, or to change your address for purposes of receiving a Settlement Class Member Payment, you should contact the Settlement Administrator as follows:

Bruin v. Bank of America Settlement
P.O. Box XXXX
City, State Zip code
Phone number
www.ACHFirstPartyFeeSettlement.com

***PLEASE DO NOT CONTACT THE COURT OR ANY REPRESENTATIVE OF BANA CONCERNING THIS NOTICE OR THE SETTLEMENT.***

9

**EXHIBIT D**

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

TAMI BRUIN, on behalf of herself and all
others similarly situated,

               Plaintiff,

     v.

BANK OF AMERICA, N.A.,

               Defendant.

Case No. 3:22-cv-140-MOC-WCM

## <u>MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT</u>

Plaintiffs Tami Bruin and Eline Barokas ("Class Representatives"), on behalf of themselves and a proposed class of current and former Bank of America, N.A. ("BANA") accountholders, move for entry of an Order granting Preliminary Approval of a Proposed Settlement embodied in a Settlement Agreement, attached as Exhibit 1. The grounds for this Motion are set forth in a Memorandum filed contemporaneously herewith.

The Court's approval of the proposed settlement is warranted for the reasons fully stated in said Memorandum.

The Class Representatives respectfully request that said Order include the following: (1) conditionally certify the Settlement Class,[1] (2) appoint Tami Bruin and Eline Barokas as Class Representatives, (3) appoint Class Counsel, (4) preliminarily approve the Settlement, (5) approve the Notice Plan and direct that the Class Notice be provided to the Settlement Class Members, (6)

---

[1] The definitions and capitalized terms in the Settlement Agreement and Memorandum in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Settlement and for Certification of Settlement Class are hereby incorporated as though fully set forth in this Motion and shall have the same meanings attributed to them in those documents.

ACTIVE/124707380.3

approve and order the opt-out and objection procedures set forth in the Settlement, (7) stay all deadlines in the Action pending Final Approval of the Settlement, and (8) set a date for a Final Approval Hearing.

Respectfully Submitted,

Dated:  September 11, 2023

s/ David Wilkerson
David Wilkerson
N.C. State Bar No. 35742
**THE VAN WINKLE LAW FIRM**
11 North Market Street
Asheville, NC 28801
(828) 258-2991
dwilkerson@vwlawfirm.com

EDELSBERG LAW, P.A.
Scott Edelsberg (pro hac vice)
Christopher Gold (pro hac vice)
20900 NE 30th Avenue, Suite 417
Aventura, FL 33180
(786) 289-9471
scott@edelsberglaw.com
chris@edelsberglaw.com

SHAMIS & GENTILE, P.A.
Andrew Shamis (pro hac vice)
Edwin Elliott (pro hac vice)
14 N.E. 1st Avenue, Suite 1205
Miami, FL 33132
(305) 479-2299
ashamis@shamisgentile.com

KALIEL PLLC
Jeffrey D. Kaliel (pro hac vice)
Sophia Gold (pro hac vice)
1875 Connecticut Avenue, NW, 10th Floor
Washington, D.C. 20009
(202) 350-4783
jkaliel@kalielpllc.com
sgold@kalielpllc.com

**EXHIBIT E**

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

TAMI BRUIN and ELINE BAROKAS, on behalf of themselves and all others similarly situated,

     Plaintiffs,

     vs.

BANK OF AMERICA, N.A.,

     Defendant.

CASE NO. 3:22-cv-140-MOC-WCM

**AMENDED CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

## AMENDED CLASS ACTION COMPLAINT

Plaintiffs Tami Bruin and Eline Barokas ("Plaintiffs"), on behalf of themselves and all persons similarly situated, allege the following based on personal knowledge as to allegations regarding the Plaintiffs and on information and belief as to other allegations.

## INTRODUCTION

1. Plaintiffs bring this action on behalf of themselves and classes of all similarly situated consumers against Defendant Bank of America, N.A. ("Defendant," "BofA," or "Bank"), arising from its deceptive practice of misleading accountholders into paying ACH Transfer Fees.

2. For those looking to make a dishonest dollar, the question is a perennial one: how to convince unsophisticated consumers to spend money on an otherwise free or valueless service? The answer is also perennial: use superior information to trick consumers who don't understand a complicated system or novel product.

3. This action concerns the National Automated Clearinghouse ("NACHA") system, a complex electronic payments system operating invisibly in the background of much of the nation's

economic activity. With many actors playing specialized roles, all tying thousands of banking institutions, merchants, and payment processors together, the system is well beyond the comprehension of individual consumers like Plaintiffs.

4.      As described further herein, BofA exploits its informational advantage to deceive its accountholders into paying $3 or $10 ACH Transfer Fees. It does so with a multi-prong effort to misrepresent and obscure the truth about the NACHA payment processing system. That truth is as follows: *any* transfer over the NACHA system can *always* be made for free.

5.      Plaintiffs, on behalf of themselves and Classes of similarly situated consumers (defined below), seek to end BofA's deceptive practices and force it to refund improper ACH Transfer Fees. Plaintiffs seek damage, restitution, and injunctive relief, as set forth more fully below.

## JURISDICTION AND VENUE

6.      This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed class is a citizen of a different state than BofA.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because BofA is subject to personal jurisdiction here and regularly conducts business here, and because a substantial part of the events giving rise to the claims of Plaintiffs asserted herein occurred in this District.

## PARTIES

8.      Plaintiff Bruin is a citizen and resident of North Carolina. Plaintiff Bruin maintains a checking account at BofA. At all times relevant, Plaintiff patronized a BofA banking center located in North Carolina.

2

9.      Plaintiff Barokas was a citizen and resident of New York, New York until July 2018. In July 2018, Plaintiff Barokas moved to New Jersey and became a citizen and resident of New Jersey. Plaintiff Barokas maintains a checking account at Bank of America.  Prior to July 2018, Plaintiff Barokas patronized a BofA banking center located in New York, New York

10.      Defendant BofA is a national bank with its headquarters and principal place of business located in Charlotte, North Carolina.  Among other things, BofA is engaged in the business of providing retail banking services to consumers, including Plaintiffs and members of the putative classes.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

## I.      THE NACHA SYSTEM

11.      The NACHA system is a complex electronic payments system operating invisibly in the background of much of the nation's economic activity.  Without being aware of it, millions of consumer payments take place on the system daily, including for utility bills, insurance payments, deposits into investment accounts, gym and other monthly memberships, and even small-dollar PayPal and Venmo transfers.

12.      In every ACH transaction, there is an Originator and a Receiver, and an Originating Depository Financial Institution ("ODFI") and a Receiving Depository Financial Institution ("RDFI").

13.      The Originator of the ACH transaction is the individual or merchant requesting that an ACH debit or credit take place.

14.      The Receiver of the ACH transaction is the individual or merchant that authorized the Originator to initiate the ACH transaction.

15.      The ODFI is the financial institution that receives the request from the Originator and submits the request to the ACH network.

3

16.     The RDFI is the financial institution that receives the ACH transaction from the ODFI and posts the transaction to the account of the Receiver.

17.     This complicated, multi-actor system has a defining design feature: payees and payors are on equal footing.  Any given transfer of money can be *affirmatively sent* to a payee or—with the proper authorization—that same payee can take the money directly from a payor's account.

18.     In other words, unlike with most all other consumer economic activity, which requires the payor to send or provide funds to a payee (as with writing a check or handing over cash), the NACHA system allows payees with proper authorization to "pull" money directly from accounts.

## II.     BOFA DECEIVES ACCOUNTHOLDERS INTO PAYING ACH TRANSFER FEES

19.     That means, for any given payment or transfer, the NACHA system allows the payee to affirmatively send it *or* the payor to simply take funds from an account.

20.     An accountholder wishing to make a transfer from their BofA account can easily accomplish this by *either* "pushing" the funds from BofA via BofA's online banking portal or "pulling" the funds from BofA via a portal operated by the receiving financial institution.  The end result is the same:  money transferred seamlessly, electronically, and quickly between accounts.

21.     Still, the workings of the NACHA system are a mystery to the millions of American consumers whose payments are sent on the system each day.

22.     BofA is engaged in a multi-prong effort to deceive its accountholders about the workings of the NACHA system, so that it may use its superior knowledge about the system to extract fee income from its accountholders.

4

23.    BofA misrepresents the central design feature of the NACHA system—that *any* transfer can be "pushed" from a payor or "pulled" from a payee, and that the latter is *free*—in three ways.

24.    *First*, on its Online Banking interface and website, BofA misrepresents that transferring money from a BofA account to an account at another institution necessarily entails a charge:

⌄ Transfer money between your accounts

Make immediate or future-dated transfers between your eligible Bank of America accounts or to your accounts at other U.S. banks. Transfers between your accounts at Bank of America are immediate, while transfers made to other banks are available in 3 delivery speeds: same business day using a wire, next business day or 3 business days, all for a fee. View cutoff and processing times for transfers.

Ex. A at 1.

25.    But BofA's representation that "transfers made to other banks are available in 3 delivery speeds . . . *all for a fee*" is false. As described above, the NACHA system's design ensures that "transfers made to other banks" are always available for free when the payee simply requests the funds.

26.    *Second*, BofA misrepresents the workings of the NACHA system in its Online Banking Agreement. BofA states that "you may send and receive the following types of ACH and Wire transfers" for $3 or $10 (depending on delivery speed):

5

**B. Types of ACH and Wire Transfers**

You may send and receive the following types of ACH and Wire transfers:

| Types of Transfers[1, 2] | Sending Limits (24 hours)[3] | Receiving Limits[3] | Fees[4] | Cut-Off Times (all eastern PM) |
|---|---|---|---|---|
| Three Business Day ACH (outbound)<br><br>• Consumer<br>• Small Business | $1000<br>$5000 | N/A | $3.00<br>$1.00 | 8:00<br>8:00 |
| Three Business Day ACH (inbound)<br><br>• Consumer | N/A | $10,000 (per 24 hours)<br>$50,000 (monthly) | $0.00 | 8:00 |
| Next Business Day ACH (outbound)<br><br>• Consumer<br>• Small Business | $1000<br>$5000 | N/A | $10.00<br>$5.00 | 8:00<br>8:00 |
| Next Business Day ACH (inbound)[5]<br><br>• Consumer | N/A | $10,000 (per 24 hours)<br>$50,000 (monthly) | $0.00 | 8:00 |

Ex. B at 10-11.

27.     But this too is false.  As above, an accountholder may "send and receive" ACH transfers for free, with no fee whatsoever, by simply instructing the payee to pull funds from his or her account.

6

28.     By stating that an accountholder may "send and receive" an ACH transfer only for $3 or $10, BofA deceives accountholders into believing that such fees are a fundamental part of moving money via the ACH system. That is not true, as described above.

29.     Moreover, by stating that the fee is "$0" *only* for "inbound" ACH transfers, BofA again deceives accountholders into believing the NACHA system does not allow the transfer of money from an account without a fee.

30.     Immediately after it discloses its $3 and $10 fees for ACH transfers, BofA further misrepresents in its Online Banking Agreement that the only way to *avoid* such a fee for transferring money to a payee is to use "Zelle" or "Bill Pay" (two other services that are not universally accepted):

> *You may also move money within the U.S. without a transfer fee* by using Zelle (described in Section 4 above) or Bill Pay (described in Section 3 above). ACH and Wire transfers are alternatives that allow you to transfer funds when delivery of funds domestically by a specific date is critical or when you are transferring funds outside the U.S.

*Id*. (emphasis added).

31.     But again, this is false.  ACH transfers can "move money" without any fee as well, provided they are initiated at the receiving institution.

32.     Accountholders can initiate the same ACH transfer from BofA to other financial institutions "without a transfer fee" provided they do so from the receiving financial institution. Thus, BofA's disclosure again provides the misimpression that ACH and wire transfers always require a fee, when in fact, they do not.

33.     *Third*, in the very design of its Online Banking interface, BofA yet again misrepresents the true nature of the NACHA system, misrepresenting that the *only* options for moving funds via ACH require a $3 or $10 fee.

ACTIVE/124707388.2

34. When logged in to BofA's online banking, accountholders are provided the option to "Transfer" funds "Between My Accounts" "At Other Banks." On that screen, BofA lists the following options for executing the transfer:



35. BofA lists only three options—each of which requires a fee. The "3 business days" and "Next business day" "ACH Transfer" for $3 or $10 are the cheapest options, and consumers like Plaintiffs pay these fees under the mistaken belief that such fees are unavoidable.

36. BofA furthers this misconception by labeling it an "ACH Transfer" fee, which leads reasonable consumers to believe the fee is an unavoidable fee for the "transfer" of funds via the ACH network. That is not true, as described above.

37. As discussed herein, each of the above representations are false and misleading, as they lead reasonable consumers like Plaintiffs to believe that they must pay an ACH Transfer Fee in order to transfer money to a payee, when in fact they do not.

38. Because—in the absence of misrepresentations regarding the NACHA system—no reasonable consumer would ever pay to make an ACH transfer, none of BofA's major competitors charge ACH Transfer Fees like BofA does, *viz.,* Chase, Capital One, Citibank, HSBC, PNC, TD Bank, Ally, U.S. Bank, and Wells Fargo.

8

39.     Through its misrepresentations, BofA deceives its accountholders into paying for a transfer that they otherwise could get for free.

**C.     Plaintiffs' Experiences**

40.     In support of their claims, Plaintiffs offer examples of fees that they would not have paid had they known they did not have to.

41.     At various times while a BofA accountholder, Plaintiff Bruin transferred funds from her BofA account to her accounts at other financial institutions.   Because of BofA's misrepresentations and deceptive design of its Online Banking Interface, Plaintiff Bruin unwittingly incurred fees for making ACH transfers.  For example, on February 17, 2021, Plaintiff Bruin transferred funds from her BofA account to her account at another financial institution.

42.     Believing she was required to pay an ACH Transfer Fee for sending money to a payee via NACHA, Plaintiff Bruin initiated the transfer from her BofA account and was charged and paid a $3 fee.

43.      Plaintiff Bruin paid the same fee to BofA numerous times while an accountholder at BofA, each time relying upon BofA's misrepresentations regarding the operation of the NACHA system.

44.     Similarly, at various times while a BofA accountholder, Plaintiff Barokas transferred funds from her BofA account to her accounts at other financial institutions.  Because of BofA's misrepresentations and deceptive design of its Online Banking Interface, Plaintiff Barokas unwittingly incurred fees for making ACH transfers. For example, on June 11, 2018, and on March 1, 2021, Plaintiff Barokas transferred funds from her BofA account to her account at another financial institution.

9

45. Believing she was required to pay an ACH Transfer Fee for sending money to a payee via NACHA, Plaintiff Barokas initiated the transfer from her BofA account and was charged and paid a $3 fee each time.

46. Plaintiff Barokas paid the same fee to BofA numerous times while an accountholder at BofA, each time relying upon BofA's misrepresentations regarding the operation of the NACHA system.

47. Had Plaintiffs known that they could have made the exact same transfers for free had they initiated the transfers from the receiving bank account, they would not have paid the ACH Transfer Fees.

48.

## CLASS ALLEGATIONS

49. Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

50. The proposed Nationwide Class is defined as:

> All current and former Bank of America accountholders in the United States who, during the applicable statute of limitations, paid and were not refunded fees to Bank of America in connection with a push transfer of funds from his/her account via the National Automated Clearing House Association network to his/her own external account.

51. The alternative North Carolina state subclass is defined as:

> All current and former Bank of America accountholders in the state of North Carolina who, during the applicable statute of limitations, paid and were not refunded fees to Bank of America in connection with a push transfer of funds from his/her account via the National Automated Clearing House Association network to his/her own external account.

10

52.     The alternative New York state subclass is defined as:

> All current and former Bank of America accountholders in the state of New York who, during the applicable statute of limitations, paid and were not refunded fees to Bank of America in connection with a push transfer of funds from his/her account via the National Automated Clearing House Association network to his/her own external account.

53.     The alternative New Jersey state subclass is defined as:

> All current and former Bank of America accountholders in the state of New Jersey who, during the applicable statute of limitations, paid and were not refunded fees to Bank of America in connection with a push transfer of funds from his/her account via the National Automated Clearing House Association network to his/her own external account.

54.     The Class and alternative state subclasses defined above are collectively referred to herein as the "Class." Plaintiffs reserve the right to modify or amend the definitions of the proposed Classes before the Court determines whether certification is appropriate.

55.     Excluded from the Classes are BofA, its parents, subsidiaries, affiliates, officers and directors, any entity in which BofA has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

56.     The members of the Classes are so numerous that joinder is impractical.  The Classes consists of thousands of members, the identity of whom is within the knowledge of, and can be ascertained only by resort to, BofA's records.

57.     The claims of the representative Plaintiffs are typical of the claims of the Classes they seek to represent in that the representative Plaintiffs, like all Class members, were charged improper and deceptive fees as alleged herein. The representative Plaintiffs, like all Class members, have been damaged by BofA's misconduct in that they have been assessed deceptive

ACTIVE/124707388.2

ACH Transfer Fees. Furthermore, the factual basis of BofA's misconduct is common to all Class members and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Class. And BofA has no unique defenses that would apply to Plaintiffs and not the Class.

58.    There are numerous questions of law and fact common to the Class and those common questions predominate over any questions affecting only individual Class members.

59.    Among the questions of law and fact common to the Class include the following:

     a.    Whether BofA violated the consumer protection laws of certain states through its fee policies and practices;

     b.    The proper method or methods by which to measure damages;

     c.    Whether BofA was unjustly enriched; and

     d.    Whether Plaintiffs and the class are entitled to declaratory and injunctive relief and the nature of that relief.

60.    Plaintiffs' claims are typical of the claims of other Class members, in that they arise out of the same wrongful BofA ACH fee policies and practices. Plaintiffs have suffered the harm alleged and have no interests antagonistic to the interests of any other Class member.

61.    Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel experienced in the prosecution of class actions and, in particular, consumer class actions against financial institutions. Accordingly, Plaintiffs are adequate representatives and will fairly and adequately protect the interests of the Class.

62.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of BofA, no

ACTIVE/124707388.2

Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the Class members will continue to suffer losses and BofA's misconduct will proceed without remedy.

63.     Even if Class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

64.     Plaintiffs know of no difficulty to be encountered in the maintenance of this action that would preclude its treatment as a class action.

65.     BofA has acted or refused to act on grounds generally applicable to each of the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to each Class as a whole.

66.     All conditions precedent to bringing this action have been satisfied and/or waived.

67.     Application of North Carolina law to the Nationwide Class with respect to Plaintiffs' and Class members' claims is neither arbitrary nor fundamentally unfair because North Carolina has significant contacts and a significant aggregation of contacts that create a state interest in the claims of Plaintiffs and the Nationwide Class.

68.     The State of North Carolina has a significant interest in regulating the conduct of businesses operating within its borders. North Carolina, which seeks to protect the rights and interests of North Carolina and all residents and citizens of the United States against a company

13

headquartered and doing business in North Carolina, has an interest in the Plaintiffs' claims.

69.     The principal place of business of BofA in Charlotte, North Carolina, is the "nerve center" of its business activities—the place where its high-level officers direct, control, and coordinate the corporation's activities, including account and major policy, financial, and legal decisions related to ACH Fees.

70.     BofA's corporate decisions regarding its misrepresentation and/or failure to disclose ACH Fees were made from and in North Carolina.

71.     BofA's tortious conduct emanated from North Carolina.

72.     Under choice of law principles, the common law of North Carolina applies to the nationwide common law claims of all Class members. Additionally, given North Carolina's significant interest in regulating the conduct of businesses operating within its borders, North Carolina's consumer protection statutes may be applied to non-resident consumer plaintiffs.

## FIRST CLAIM FOR RELIEF
### North Carolina Consumer Protection Law
**(On Behalf of Plaintiffs and the Nationwide Class and North Carolina Subclass)**

73.     Plaintiffs repeat, reallege, and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

74.     As described herein, BofA's practice of misleading accountholders into believing they must pay ACH Transfer Fees to transfer via the ACH network constitutes an unfair and deceptive trade practice under N.C.G.S. § 75.1-1 *et seq.*

75.     As described herein, BofA's description of its ACH Transfer Fees are deceptive, and they mislead customers into paying these fees when they can otherwise avoid them. And BofA's description of its ACH Transfer Fees are material.

76.     BofA's actions affected commerce in North Carolina, as many of its North Carolina

customers were charged these unfair and deceptive fees.

77.     Plaintiffs reasonably relied upon Bank of America's deceptive misrepresentations regarding its ACH Transfer Fees.  Had Plaintiffs known that they could have made the exact same transfers for free, they would not have paid the ACH Transfer Fees.

78.     Plaintiffs have been actually damaged as the direct and proximate result of BofA's unfair competition and unfair and deceptive trade practices.

79.     Plaintiffs and the Class are entitled to recovery of treble damages and, in the discretion of the Court, reasonable attorneys' fees and costs by virtue of BofA's unfair and deceptive trade practices.

**SECOND CLAIM FOR RELIEF**
**New York General Business Law, N.Y. Gen. Bus. Law § 349 *et seq*.**
**(On Behalf of Plaintiff Barokas and the New York Subclass)**

80.     Plaintiffs repeat, reallege, and incorporate paragraphs 1-78 as if fully set forth herein.

81.     BofA's practice of misleading accountholders into believing they must pay ACH Transfer Fees to transfer via the ACH network violates New York General Business Law § 349 ("NYGBL § 349").

82.     NYGBL § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in the state of New York.

83.     As one of the largest banks in the United States with multiple branch locations in New York, BofA conducted business, trade or commerce in New York State.

84.     In the conduct of its business, trade, and commerce, and in furnishing services in New York, BofA's actions were directed at consumers.

46.     In the conduct of its business, trade, and commerce, and in furnishing services in

15

New York, BofA engaged in deceptive, unfair, and unlawful acts or practices, in violation of N.Y. Gen. Bus. Law § 349(a) by misrepresenting material facts, pertaining to the sale and/or furnishing of banking services to the New York Class by representing to accountholders that they must pay ACH Transfer Fees to transfer via the ACH network.

73.　BofA systematically engaged in these deceptive, misleading, and unlawful acts and practices, to the detriment of Plaintiffs and members of the Class.

74.　BofA willfully engaged in such acts and practices and knew that it violated NYGBL § 349, or showed reckless disregard for whether it violated NYGBL § 349.

75.　As a direct and proximate result of BofA's deceptive trade practices, members of the New York Subclass suffered injury and/or damages, including being charged ACH Transfer Fees, and through the loss of the benefit of their respective bargains with BofA.

76.　BofA's description of its ACH Transfer Fees are material.

77.　Had Plaintiff Barokas known she could make the exact same transfer for free, she would not have paid the ACH Transfer Fee.

78.　As a result of BofA's violations of NY GBL § 349, Plaintiffs and members of the putative Class have paid and will continue to pay excessive fees to BofA. Accordingly, they have suffered and will continue to suffer actual damages.

79.　Accordingly, Plaintiffs and the New York Subclass members are entitled to relief under N.Y. Gen. Bus. Law § 349(h), including, but not limited to, actual damages, treble damages, statutory damages, injunctive relief, and/or attorney's fees and costs.

**THIRD CLAIM FOR RELIEF**
**Violation of the New Jersey Consumer Fraud Act, N.J. STAT. ANN. § 56:8-1 *et seq.*
(On Behalf of Plaintiffs Barokas and the New Jersey Subclass)**

80.　Plaintiffs repeat, reallege, and incorporate paragraphs 1-79 as if fully set forth

16

herein.

81.     BofA's representations regarding its ACH Transfer Fees are false, deceptive and misleading, as described above.

82.     BofA's representations regarding its ACH Transfer Fees are material.

83.     BofA misleads accountholders into believing they must pay ACH Transfer Fees to transfer funds via the ACH network.

84.     BofA's violation of the New Jersey Consumer Fraud Act caused Plaintiff Barokas and putative New Jersey Subclass members to suffer ascertainable losses. Had Plaintiffs and class members known they could make the exact same transfer for free, they would not have paid the ACH Transfer Fees.

85.     Plaintiffs and class members request all available relief including but not limited to damages, treble damages, statutory damages, restitution, attorneys' fees, and injunctive relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and the Class demand a jury trial on all claims so triable and judgment as follows:

1.     Certifying the Class and appointing Plaintiffs as Class Representatives and theifr counsel as Class Counsel;

2.     Declaring BofA's ACH Fee misrepresentations described herein to be wrongful;

3.     Restitution of all ACH Transfer Fees paid to BofA by Plaintiffs and the Class as a result of the wrongs alleged herein, in an amount to be determined at trial;

4.     Disgorgement of the ill-gotten gains derived by BofA from its misconduct;

5.     Actual damages in an amount according to proof;

6.     Punitive and exemplary damages;

7.     Pre-judgment interest at the maximum rate permitted by applicable law;

8.     Treble damages, statutory damages, punitive damages, and attorneys' fees as provided by law;

9.     Costs and disbursements assessed by Plaintiffs in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

10.    Such other relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs and all others similarly situated hereby demand trial by jury on all issues in this complaint that are so triable as a matter of right.

Dated:  September 11, 2023                    Respectfully submitted,


                                              By:  s/ David M. Wilkerson
                                              David M. Wilkerson
                                              NC State Bar No. 35742
                                              The Van Winkle Law Firm
                                              11 North Market Street
                                              Asheville, NC 28801
                                              (828) 258-2991
                                              *dwilkerson@vwlawfirm.com*

                                              Christopher Gold
                                              Edelsberg Law, P.A.
                                              20900 NE 30th Ave., Suite 417
                                              Aventura, FL 33180
                                              (786) 289-9471
                                              chris@edelsberglaw.com

                                              Andrew Shamis
                                              Shamis & Gentile, P.A.
                                              14 N.E. 1st Ave. St. 1205
                                              Miami, FL 33132
                                              (305) 479-2299
                                              ashamis@shamisgentile.com

Sophia Goren Gold
KALIELGOLD PLLC
950 Gilman Street, Suite 200
Berkeley, CA 94710
(202) 350-4783
sgold@kalielgold.com

*Attorneys for Plaintiffs and the Class*

ACTIVE/124707388.2

**EXHIBIT A**

Online Banking

# Help & Support

Help & Support home   >   Common Topics   >   Types of Transfers

## Types of transfers I can make

You can make immediate or scheduled transfers to your own accounts or to your accounts at other U.S. banks, or make transfers from an eligible checking or savings account to another person using their email address, mobile number or account information on the **Transfers** tab.

Go to Transfers

### Transfer money between your accounts

Make immediate or future-dated transfers between your eligible Bank of America accounts or to your accounts at other U.S. banks. Transfers between your accounts at Bank of America are immediate, while transfers made to other banks are available in 3 delivery speeds: same business day using a wire, next business day or 3 business days, all for a fee. View cutoff and processing times for transfers.

Higher dollar transfers to other banks may require enrollment in Safepass. Please see your Online Banking Service Agreement.

### Send money using an account number

### Send money using Zelle®

### International Wire transfers



> **You can make transfers under:**
> Transfers

Locations  |  Contact Us

Browse with a Specialist  |  Privacy

Security  |  Online Banking Service Agreement

Advertising Practices  |  Website Feedback

Investing in securities involves risks, and there is always the potential of losing money when you invest in securities. You should review any planned financial transactions that may have tax or legal implications with your personal tax or legal advisor.

Securities products are provided by Merrill Lynch, Pierce, Fenner & Smith Incorporated (also referred to as "MLPF&S" or "Merrill"), a registered broker-dealer, registered investment adviser, Member SIPC, and a wholly-owned subsidiary of Bank of America Corporation. MLPF&S makes available certain investment products sponsored, managed, distributed or provided by companies that are affiliates Bank of America Corporation.

Bank of America Private Bank is a division of Bank of America, N.A., Member FDIC and a wholly owned subsidiary of Bank of America Corporation. Trust and fiduciary services are provided by Bank of America, N.A. and U.S. Trust Company of Delaware. Both are indirect subsidiaries of Bank of America Corporation.

Insurance Products are offered through Merrill Lynch Life Agency Inc. (MLLA) and/or Banc of America Insurance Services, Inc., both of which are licensed insurance agencies and wholly-owned subsidiaries of Bank of America Corporation.

Banking, credit card, automobile loans, mortgage and home equity products are provided by Bank of America, N.A. and affiliated banks, Members FDIC and wholly owned subsidiaries of Bank of America Corporation. Credit and collateral are subject to approval. Terms and conditions apply. This is not a commitment to lend. Programs, rates, terms and conditions are subject to change without notice.

Investment and insurance products:

| Are Not FDIC Insured | Are Not Bank Guaranteed | May Lose Value |
|---|---|---|
| Are Not Deposits | Are Not Insured By Any Federal Government Agency | Are Not a Condition to Any Banking Service or Activity |

Bank of America, N.A. Member FDIC.
Equal Housing Lender
© 2020 Bank of America Corporation.
All rights reserved.

**EXHIBIT B**

 **Online Banking**

# Online Banking Service Agreement

‹ Go to Online Banking Overview

## Bank of America Online Banking Service Agreement

Effective Date: January 29, 2021

**Table of Contents:** Show all Topics

1. General Description of Bank of America Online Banking Service Agreement (this "Agreement")
2. Internal Transfer Services
3. Bill Payment Services
4. Zelle® Network Service (Email and Mobile Transfers)
5. ACH and Wire Transfers
6. Online Banking Alerts
7. Error Resolution Procedures for Consumer Accounts
8. Additional Provisions Only Applicable to Small Business Accounts
9. Disclaimer of Warranties, Limitation of Liability and Indemnification
10. Other Terms and Conditions

## 1. General Description of Bank of America Online Banking Service Agreement (this "Agreement")

### A. What This Agreement Covers

This Agreement is between each owner of an eligible account, a person applying for an eligible account, or authorized representative appointed or entitled to online access on another person's behalf ("you" or "your") and Bank of America, N.A. (Bank of America). This Agreement governs your use of any online or mobile banking services maintained by Bank of America and accessible through bankofamerica.com using a personal computer or a mobile device, including a smartphone, tablet, or any other eligible handheld or wearable communication device (the "Service(s)").

Under the terms of this Agreement, you may use the Services to obtain financial products and services, access and view account information, and, for certain accounts, move money electronically and perform authorized transactions, for eligible U.S.-based Bank of America consumer and small business accounts and affiliate accounts linked to the Service, such as those at Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill").

When used in the Agreement, the term "small business" includes sole proprietors, non-consumer business entities, and individual owners of the business, unless the context indicates otherwise. If you are a small business customer, additional or different terms and conditions applicable to the Services, as well as additional Services available exclusively to small business customers, are included in the Business Services Addendum, which is a part of this Agreement.

When you first set up your Online/Mobile ID, we will link all of your eligible Bank of America and affiliate accounts, including joint accounts. If you open an additional eligible account at a later date, we will link your new account to the Service, unless you tell us not to do so. Unless indicated otherwise by the context, "linked Bank of America accounts" or "linked accounts" refers to all of your accounts with Bank of America and its affiliates that are linked to the Service.

When your Service is linked to one or more joint accounts, we may act on the verbal, written or electronic instructions of any authorized signer.

Please note that some of the Services may not be available when using certain digital devices or applications. For example, some functions may be available online through a personal computer but not available through our mobile app.

Case 3:22-cv-00140-MOC-WCM    Document 42-3    Filed 09/11/23    Page 93 of 115

### B. Accepting the Agreement

When you apply for, enroll in, activate, download or use any of the Services described in this Agreement or authorize others to do so on your behalf, you are contracting for all Services described in the Agreement and agree to be bound by the terms and conditions of the entire Agreement, as well as any terms and instructions that appear on a screen when enrolling in, activating or accessing the Services.

### C. Relation to Other Agreements

Your use of the Services may also be affected by your Deposit Agreement and Disclosures, including the applicable schedule of fees ("Deposit Agreement"), or other agreement with us for your linked Bank of America accounts and/or an agreement with our affiliates for your affiliate accounts linked to the Service, including your investment accounts at Merrill. When an account is linked to the Services, it does not change the agreements you already have with us or our affiliates for that account and you are still subject to the terms and conditions we gave you in the agreement and disclosure for the linked account. The terms and conditions for those account agreements, including any applicable fees, transaction limitations, liability rules and other restrictions that might impact your use of an account with the Services, are incorporated into this Agreement.  In the event of a conflict between the terms of those account agreements and this Agreement, the terms of the applicable account agreement will prevail unless this Agreement specifically states otherwise.

If you use the Services to move money between your investment accounts governed by the Merrill Lynch Brokerage Website Terms and Conditions, which you agreed to when you became a Merrill online customer, that agreement, and not this Agreement will apply to your transaction.

## 2. Internal Transfer Services

### A. Transfers Between Your Accounts

You may use the Service to transfer funds between your linked Bank of America accounts without a fee on either a one-time or recurring basis, including as a payment to a linked installment loan, credit card or mortgage.

| Transfer From | Transfer To | $ Limit[1] | Cut-off Time (all eastern PM) |
|---|---|---|---|
| Your Checking/Savings account | Your Checking/Savings account | $9,999,999.99 | 10:45[2] |
| Your Checking/Savings account | Your Investment account | $9,999,999.99 | 10:45 |
| Your Investment account | Your Checking/Savings account | $100,000.00 per 24 hours $250,000 per week | 10:45[2] |
| Your Checking/Savings or Investment account | Your Bank of America Loan Account | N/A | 11:59[3] |
| Your Credit Card/ Business Line of Credit/HELOC | Your Checking/Savings,  Investment account or Loan Account | N/A | 11:59 |

There are no receiving limits for Internal Transfers between your own accounts.

[1]/ Higher limits may apply for Bank of America Private Bank, Merrill or small business accounts.

[2]/ Transfers to a Bank of America checking or savings account made after the applicable cut-off time indicated above but before 11:59 p.m. on a business day in the State where your checking or savings account was opened, will be posted as of the next business day in your transaction history, but will be included in the balance on your own transactions that night. This process may impact when fees apply to your account.

[3]/ Funds transferred as a payment to an eligible credit card, business line of credit, home equity line of credit during draw period ("HELOC"), installment loan or mortgage (together "Loan Accounts") will be credited with the date the payment is submitted. Updates to account balances, funds availability, and transaction posting may take up to 2 business days.

- One-time transfers may be made at any time and are immediately debited from a checking or savings account's available balance or a credit account's available credit.
- Future dated or recurring transfers scheduled for a weekend or a non-business day will be debited from the funding account on the prior business day. All other scheduled and recurring transfers will be debited from the funding account at the beginning of the business day requested.
- Future scheduled and recurring transfers can be canceled prior to midnight ET on the business day prior to the date the transfer is scheduled to be made. A one-time immediate transfer cannot be canceled after it has been submitted.
- The best way to cancel a future scheduled or recurring transfer is to follow the instructions on our website. The cancel feature is found in the Transfer Activity or Recurring Transfers sections. You may also request to cancel a future scheduled or recurring transfer by calling us at **800.432.1000** for consumer accounts and **866.758.5972** for small business accounts. If you are calling from outside of the continental U.S., call us collect at **925.681.7600**.

### B. Transfers to Someone Else Using Their Account Number

You may use the Service to make one-time transfers from a linked Bank of America checking, savings, money market or line of credit account to most checking, savings or money market accounts of other Bank of America customers using their account number.

| Transfer From | Transfer To | $ Limit[1] | Cut-off Time (all eastern PM) |
|---|---|---|---|
| Your Checking/Savings account | Checking/Savings account of Someone Else | **$3**,500 per 24 hours <br><br> $10,000 per week | 10:45 |

[1]/ You may be eligible for higher limits if you enroll in SafePass. Learn more about SafePass. Higher limits may also apply for Bank of America Private Bank, Merrill or small business accounts.

One time transfers may be made at any time and are immediately debited from a checking or savings account's available balance. A one-time transfer cannot be cancelled after it has been submitted.

You may receive transfers from other Bank of America customers in the aggregate of $999,999.00 per week.

Internal Transfer send limits for both Sections 2.A and 2.B are set at the customer profile (Online ID) and apply to all accounts visible in the "From" dropdown when initiating an Internal Transfer. If you are a small business customer and are not receiving the small business limits, make sure you are signed in with your small business Online ID.

## 3. Bill Payment Services

### A. Bill Pay for Checking, Money Market and Home Equity Line of Credit Accounts

Bank of America customers may use Bill Pay to make payments to companies or individuals ("Payees") in the following manner:

- Payments can be scheduled from linked checking, money market savings, and HELOC accounts during the draw period. Note that you may not link HELOC accounts opened in Texas.
- Payments can be scheduled from a checking, money market savings or other consumer asset account maintained at another financial institution that you have added to Bill Pay. You certify that any account you add to Bill Pay is an account from which you are authorized to make payments, and any payment you make using Bill Pay will debit an account that you are legally authorized to use. When you add an account maintained at another financial institution, you do not change the agreements you have with that financial institution for that account. Please review those agreements for any fees, limitations or restrictions that might

limit your use of the account with Bill Pay.

- Payments can be entered as a one-time transaction up to a year in advance, recurring transactions or as payments that are automatically scheduled upon the receipt of an electronic bill (e-Bill).

- Future scheduled or recurring payments that fall on a weekend or a non-business day will be processed on the prior business day.

- You authorize us to make payments in the manner we select from the following methods:

  > Electronic transmission. Most payments are made by electronic transmission.

  > Corporate check – This is a check drawn on our account or the account of our vendor. If a Payee on a corporate check fails to negotiate the check within ninety (90) days, we will stop payment on the check and re-credit your account for the amount of the payment. If a corporate check is returned to you prior to the end of the ninety (90) day period, please inform us immediately so that we can stop payment on the check and re-credit your account.

  > Personal check – This is a check drawn on your account when it is presented for payment.

- All payments under Bill Pay that are sent care of APO/FPO or similar addresses will be sent by corporate or personal check. Because all such payments will be made by check, they will not be Remittance Transfers (as defined in section 5.F. of this Agreement).

- Any obligations that you wish to pay through Bill Pay must be payable in U.S. dollars to a Payee located in the United States. We reserve the right to restrict categories of Payees to whom payments may be made using the Service. We recommend that you not use the Service to make:

  > Tax payments

  > Court-ordered payments

  > Payments to settle securities transactions

- Scheduling Bill Payments

  > The scheduled delivery date is the date you enter for the payment to be delivered to the Payee. For payments made by electronic transmission or corporate check, the payment amount will be debited from the account that you designate on the scheduled delivery date. For payments made by personal check, the account you designate will be debited when the check is presented to us for payment which may occur before, on or after the scheduled delivery date.

  > Payments (other than payments to a Bank of America Payee) initiated before 5:00 p.m. ET on a business day will be scheduled and begin processing on the same business day. Payments that are entered after this cut-off time or on a day that is a non-business day will be scheduled and processed the next bank business day.

  > For payments to a Bank of America Payee, such as a vehicle loan, HELOC or mortgage, Bank of America will process and credit the payment to the account effective the same business day, provided the payment is scheduled prior to the 5:00 p.m. ET cut-off.

  > For payments to Bank of America credit card and business line of credit accounts, Bank of America will process and credit the payment to the account effective the same day, provided the payment is scheduled prior to the 11:59 p.m. ET cut-off.

- Bill Discovery Service. At your option, we may offer you the opportunity to add Payees from our service provider's network or, with your consent, to access your credit report to help you identify Payees which you would like to add to this service. Information from these sources may make it easier for you to make payments or add relevant e-bills to your Service.

When you attempt to schedule a payment, we will inform you of the earliest available delivery date. To assure timely payment and obtain the full benefit of the Online Banking Guarantee described below, you must schedule payments, and your account must be in good standing and have sufficient available funds in the designated deposit account to cover the payment, at least five (5) bank business days before the payment due date, NOT the date after which late payment fees may be assessed.

If an account does not have sufficient available funds on the scheduled date, we may elect not to initiate one or more of the transfers. If we do elect to initiate the transfer, which may involve one or more attempts on subsequent business days, it may cause an overdraft in your account in which case you shall be fully responsible for the overdraft and any overdraft fees, as set forth in your Deposit Agreement, as well as all late fees, interest charges or other action taken by the Payee.

Under our Online Banking Guarantee, if we fail to process a payment in accordance with your properly completed instructions, we will reimburse you for any late payment fees. As indicated above, some payments may be made by a personal check. Since we can't predict the exact date that a personal check will be presented to us for payment, please make sure you have sufficient funds in your account beginning a few days before your scheduled delivery date and keep such funds available until the payment is deducted from your account.

Bill Pay payments sent via corporate or personal check with different Payee names may be combined in one envelope if those payments have the same mailing address, and your intended Payee has not registered their full/unique mailing address with the USPS, including their secondary

address designation, e.g., Suite, Room, Floor, Dept., Building, or Unit. If we need to, we'll change or reformat your Payee account number to match the account number or format required by your Payee for electronic payment processing and eBill activation.

**B. Bill Pay for Credit Card, Business Line of Credit or Vehicle Loan (automotive, recreational vehicle, boat or aircraft) Only Customers**

Bank of America credit card, business line of credit or vehicle loan account only customers may use Bill Pay in the following manner:

- Payments to your Bank of America credit card up to $250,000, your business line of credit or vehicle loan account can be scheduled from a checking, money market savings or other consumer asset account maintained at another financial institution that you have added to Bill Pay.

- Payments can be entered as a one-time transaction up to a year in advance, or as payments that are automatically scheduled upon the receipt of an e-Bill.

- Payments to your credit card or business line of credit account initiated before 11:59 p.m. ET will be applied on the same day. Payments entered after this cut-off will be scheduled and processed on the next calendar day.

- Payments to your vehicle loan account initiated before 5 p.m. ET on a business day will be applied on the same day. Payments entered after this cut-off will be scheduled and processed on the next business day.

- If the financial institution upon which your payment is drawn rejects, refuses, or returns the payment, the payment to your Bank of America credit card, business line of credit or vehicle loan will be reversed and you may incur late payment or other fees. The institution holding your deposit account may impose a returned item or other fee.

**C. E-Bills**

E-Bills is a feature of the Bill Pay Service that enables you to receive bills electronically from participating Payees

- **Approval of e-Bills**
  Participating Payees establish their own criteria for reviewing requests to receive e-Bills and have sole discretion to accept or decline your request.

- **Accessing e-Bills from a Third Party**
  In some cases we obtain the e-Bill from the web site of the Payee. To do so, we will ask you for information needed for this purpose, such as any required password. When you provide this information, you authorize us to access the third party web site to retrieve the account information on your behalf, and you appoint us your agent for this limited purpose.

- **Timely Delivery of e-Bills**.
  We take no responsibility if a Payee does not provide the necessary data to forward an e-Bill in a timely manner. If you do not receive an e-Bill, it is your responsibility to contact the Payee directly. We are not responsible for any late charges or other adverse consequences. Any questions regarding your e-Bill details should be directed to your Payee.

- **Stop e-Bills**
  You or we can cancel the e-Bill service, or a particular e-Bill at any time. If you request that a particular e-Bill be discontinued, we require seven (7) business days for the Payee to receive and process the request.  If an e-Bill from a Bank of America Payee is canceled, any e-Bills previously delivered but not paid will be removed from your list of payable e-Bills.

- **Privacy**
  When you request e-Bills from a participating Payee you may be asked to provide certain information that will be forwarded to the Payee to complete your enrollment. When you provide this information, you authorize us to share it with the Payee.

- **Introductory e-Bill Opportunity**
  You understand and agree that selected Payees may provide e-Bills to you through Bill Pay for up to three months in order to introduce you to the convenience of Bill Pay.  We will notify you in advance of such introductory opportunities.  Bank of America does not have access to and does not store detailed billing information contained in the e-Bill. Only you will have access to the detailed bill information. If at any time you choose not to participate in this introductory e-Bill opportunity, you have the following options:

  You can discontinue a specific e-Bill by signing into Bill Pay and selecting "cancel the e-Bill trial."

  To be removed from all future e-Bill trial enrollments, please e-mail customer care at optoutebill@customercenter.net from the email address that you use for the Service.

If you wish to continue to receive the e-Bills after the introductory period, please follow the instructions at the e-Bills page of Bill Pay.

**D. Limits**

Bill payments from your Bank of America account can be for any amount up to $99,999.99. Please note, however, that some Payees may place limits on the amount they will accept via electronic transmission. When the limit is exceeded, the payment will be remitted by check.

**E. Canceling Bill Payments**

- In order to cancel a bill payment (including a payment you scheduled from an account maintained at another financial institution), follow the directions provided in Bill Pay. The cancel feature is found in the Payment History or Recurring Payments sections. You may also request to cancel a future scheduled or recurring transfer by calling us at **800.432.1000** for consumer accounts and **866.758.5972** for small business accounts. If you are calling from outside of the continental U.S., call us collect at **925.681.7600**.

- Future-dated or recurring payments can be canceled prior to 5 p.m. ET on the third bank business day prior to the scheduled delivery date. Once a payment has begun processing, it cannot be canceled.

- If a check has been issued for your bill payment, any stop payment provisions that apply to checks in the agreement governing your bill pay funding account will also apply to Bill Pay.

**F. Fees**

There are no service fees for use of the Bill Pay Service.

## 4. Zelle® Network Service (Email and Mobile Transfers)

**A. Description of Service**

We have partnered with the *Zelle*® Network to enable a convenient way to transfer money between you and others who are enrolled directly with *Zelle* or enrolled with another financial institution that partners with *Zelle* (each, a "User") using aliases, such as email addresses or mobile phone numbers. We will refer to financial institutions that have partnered with *Zelle* as "Network Banks."

*Zelle* provides no deposit account or other financial services. *Zelle* neither transfers nor moves money. You may not establish a financial account with *Zelle* of any kind. All money will be transmitted by a Network Bank.

Transfers will be governed by the rules of any funds transfer system through which the transfers are made, as amended time from time, including, without limitation, the National Automated Clearing House Association ("NACHA") or real time payment services ("RTP").

THE SERVICE IS INTENDED TO SEND MONEY TO FRIENDS, FAMILY AND OTHERS YOU TRUST.  YOU SHOULD NOT USE THE SERVICE TO SEND MONEY TO RECIPIENTS WITH WHOM YOU ARE NOT FAMILIAR OR YOU DO NOT TRUST.

Zelle and the Zelle related marks are wholly owned by Early Warning Services, LLC and are used herein under license.

**B. Eligibility and User Profile**

When you enroll to use the Service or when you permit others to whom you have delegated to act on your behalf to use or access the Service, you agree to the terms and conditions of this Agreement. You represent that you have the authority to authorize debits and credits to the enrolled bank account. You agree that you will not use the Service to send money to anyone to whom you are obligated for tax payments, payments made pursuant to court orders (including court-ordered amounts for alimony or child support), fines, payments to loan sharks, gambling debts or payments otherwise prohibited by law, and you agree that you will not use the Service to request money from anyone for any such payments.

The Service allows you to send or receive money using your consumer or small business deposit account. We reserve the right to suspend or terminate your use of the Service if we believe, in our sole discretion, that you are using the Service for other purposes, or if we believe you are using the Service in a manner that exposes Bank of America or *Zelle* to liability, reputational harm or brand damage, including but not limited to using the Service to request, send or receive money related to any of the following:

Illegal or brand damaging activities include, but are not limited to:

- Any activity that is illegal under federal or applicable state law (e.g., drugs, gambling, counterfeit goods);
- Firearms, ammunition and other weapons;
- Sexual activities or materials;
- Pornography;
- Materials that promote intolerance, violence or hate;
- Ponzi schemes;
- Traveler's checks, money orders, equities, annuities, or currencies;
- Digital currencies such as bitcoins;
- Terrorist funding;
- Fraud, for example:
    i. Unauthorized Payments that occur in instances of account takeover, lost/stolen debit cards or account information, etc.;
    ii. Scams - Recipient convinces a Sender to send money with Zelle by (i). pretending to be or to represent another person or entity; or (ii). offering to provide a good, service, or additional funds while intending to provide nothing in return.
- Money laundering
- Use of the Zelle Payments Service in a manner for which it was not intended, or in a way that another customer finds harassing or inappropriate (e.g., use of memo fields to communicate with another customer with no intention of processing a Payment).

We may determine other eligibility criteria in our sole discretion.

### C. Enrolling for the Service

i. You must provide us with an email address that you regularly use and intend to use regularly and/or a permanent U.S. mobile phone number that you intend to use for an extended period of time.

You may not enroll in the Service with a landline phone number, Google Voice number, or Voice over Internet Protocol.

ii. Once enrolled, you may:

   a. authorize a debit of your account to send money to another User either at your initiation or at the request of that User; and
   b. receive money from another User either at that User's initiation or at your request, subject to the conditions of the Section below titled "Requesting Money."

iii. If at any time while you are enrolled, you do not receive money using the Service for a period of 18 consecutive months, we may contact you and/or take other steps to confirm that the U.S. mobile phone number or email address that you enrolled still belongs to you.  If we are unable to confirm that you are the owner of the mobile phone number or email address, then you understand that we may cancel your enrollment and you will not be able to send or receive money with the Service until you enroll again.

### D. Consent to Emails and Automated Text Messages

By participating as a User, you represent that you are the owner of the email address, mobile phone number, and/or other alias you enrolled, or that you have the delegated legal authority to act on behalf of the owner of such email address, mobile phone number and/or other alias to send or receive money as described in this Agreement. You consent to the receipt of emails or text messages from us, from *Zelle*, from other Users that are sending you money or requesting money from you, and from other Network Banks or their agents regarding the Services or related transfers between Network Banks and you. You agree that we may, *Zelle* may or our agents may use automatic telephone dialing systems in connection with text messages sent to any mobile phone number you enroll. You further acknowledge and agree:

i. You are responsible for any fees or other charges that your wireless carrier may charge for any related data, text or other message services, including without limitation for short message service. You are also responsible for the content of the memos you send using Zelle. Please check your mobile service agreement for details or applicable fees.

ii. You will immediately notify us if any email address or mobile phone number you have enrolled is (i) surrendered by you, or (ii) changed by you. For your security, if we notice changes on the email or mobile number, we may delete it and notify you.

iii. In the case of any messages that you may send through either us or *Zelle* or that we may send or *Zelle* may send on your behalf to an email address or mobile phone number, you represent that you have obtained the consent of the recipient of such emails or automated text messages to send such emails or text messages to the recipient. You understand and agree that any emails or text messages that we send or that *Zelle* sends on your behalf may include your name and the memo that you sent.

iv. Your wireless carrier is not liable for any delay or failure to deliver any message sent to or from us or *Zelle*, including messages that you may send through us or through *Zelle* or that we may send or *Zelle* may send on your behalf.

v. To cancel text messaging from us, text STOP to **53849**. This will unenroll you from the Service. For help or information regarding text messaging, text HELP to **53849** or contact our customer service at **800.933.6262** for consumer accounts and **866.758.5972** for small business accounts. You expressly consent to receipt of a text message to confirm your "STOP" request.

vi. Bank of America's Zelle notifications are supported by many carriers, like AT&T, T-Mobile, Sprint, and Verizon Wireless. Check with your individual carrier to confirm availability.

vii. We or *Zelle* may use information on file with your wireless operator to further verify your identity and to protect against or prevent actual or potential fraud or unauthorized use of the Service. By using the Service, you authorize your wireless operator (AT&T, Sprint, T-Mobile, US Cellular, Verizon, or any other branded wireless operator) to use or disclose information related to your wireless subscriber account (such as your mobile number, name, address, email, network status, customer type, mobile device identifiers and other device and subscriber status information) to Bank of America or its service providers, which they may use for the duration of your business relationship with them, solely to verify your identity and help prevent fraud. See *Zelle's* Privacy Policy [https://www.zellepay.com/privacy-policy] for how it treats your data. For Bank of America's Privacy Policy, go to our Web site at https://www.bankofamerica.com/privacy.

## E. Receiving Money; Money Transfers by Network Banks

Once a User initiates a transfer of money to your email address or mobile phone number enrolled with the Service, you have no ability to stop the transfer. By using the Service, you agree and authorize us to initiate credit entries to the bank account you have enrolled.

Most transfers of money to you from other Users will occur within minutes. There may be other circumstances when the payment may take longer. For example, in order to protect you, us, *Zelle* and the other Network Banks, we may need or *Zelle* may need additional time to verify your identity or the identity of the person sending the money. We may also delay or block the transfer to prevent fraud or to meet our regulatory obligations. If we block a payment that you have initiated through a request for money, we will notify you by email.

If you are receiving a payment from a business or government agency, your payment will be delivered in accordance with both this Agreement and the procedures of the business or government agency that is sending you the payment.

## F. Sending Money; Debits by Network Banks

You may send money to another User at your initiation or in response to that User's request for money. You understand that use of this Service by you shall at all times be subject to (i) this Agreement, and (ii) your express authorization at the time of the transaction for us or another Network Bank to initiate a debit entry to your bank account. You understand that when you send the payment, you will have no ability to stop it. You may only cancel a payment if the person to whom you sent the money has not yet enrolled in the Service. If the person you sent money to has already enrolled with *Zelle*, either in the *Zelle* mobile app or with a Network Bank, the money is sent directly to their bank account (except as otherwise provided below) and may not be canceled or revoked.

In most cases, when you are sending money to another user, the transfer will occur in minutes; however, there are circumstances when the payment may take longer. For example, in order to protect you, us, *Zelle* and the other Network Banks, we may need additional time to verify your identity or the identity of the person receiving the money. During this period, and in any other circumstance when we need additional time to verify the transfer details, a hold will be placed on your account for the amount of the transfer. You understand and acknowledge that a person to whom you are sending money and who is not enrolled as a User may fail to register with *Zelle*, or otherwise ignore the payment notification, and the transfer may not occur. If the person to whom you are sending money does not enroll, set up an email address or mobile number and accept the transfer within 14 days, the transfer will be canceled.

The money may also be delayed or the transfer may be blocked to prevent fraud or comply with regulatory requirements. We will notify you by email if we block a payment that you have initiated using the Service.

We have no control over the actions of other Users, other Network Banks or other financial institutions that could delay or prevent your money from being delivered to the intended User.

### G. Liability

Except as otherwise provided in this Agreement, neither we nor *Zelle* shall have liability to you for any transfers of money under the Service, including without limitation, (i) any failure, through no fault of us or *Zelle* to complete a transaction in the correct amount, or (ii) any related losses or damages. Neither we nor *Zelle* shall be liable for any typos or keystroke errors that you may make when using the Service.

THE SERVICE IS INTENDED FOR SENDING MONEY TO FAMILY, FRIENDS AND OTHERS WHOM YOU TRUST. YOU SHOULD NOT USE *ZELLE* TO SEND MONEY TO RECIPIENTS WITH WHOM YOU ARE NOT FAMILIAR OR YOU DO NOT TRUST. NEITHER WE NOR *ZELLE* OFFER A PROTECTION PROGRAM FOR AUTHORIZED PAYMENTS MADE THROUGH THE SERVICE (FOR EXAMPLE, IF YOU DO NOT RECEIVE THE GOODS OR SERVICES THAT YOU PAID FOR, OR THE GOODS OR SERVICES THAT YOU RECEIVED ARE DAMAGED OR ARE OTHERWISE NOT WHAT YOU EXPECTED).

### H. Requesting Money

You may request money from another User. You understand and acknowledge that Users to whom you send payment requests may reject or ignore your request. Neither we nor *Zelle* guarantee that you will receive money from other Users by sending a payment request, or that you will receive the amount that you request. If a User ignores your request, we may decide or *Zelle* may decide, in our sole discretion, that we will not send a reminder or repeat request to that User.

By accepting this Agreement, you agree that you are not engaging in the business of debt collection by attempting to use the Service to request money for the payment or collection of an overdue or delinquent debt; to request money that is owed to another person; or to collect any amounts that are owed pursuant to a court order. You agree to indemnify, defend and hold harmless us, *Zelle*, our and their owners, directors, officers agents and Network Banks from and against all claims, losses, expenses, damages and costs (including, but not limited to, direct, incidental, consequential, exemplary and indirect damages), and reasonable attorney's fees, resulting from or arising out of any request for money that you send that is related to overdue or delinquent amounts.

You agree to receive money requests from other Users, and to only send requests for legitimate and lawful purposes. Requests for money are solely between the sender and recipient and are not reviewed or verified by us or by *Zelle*. Neither we nor *Zelle* assume responsibility for the accuracy or legality of such requests and do not act as a debt collector on your behalf or on behalf of the sender of a request for money.

We reserve the right, but assume no obligation, to terminate your ability to send requests for money in general, or to specific recipients, if we deem such requests to be potentially unlawful, abusive, offensive or unwelcome by the recipient.

### I. Fees

There is no fee for sending or receiving a transfer under the Service.

### J. Cancellation

A transfer submitted through the Service may not be canceled once the recipient has enrolled. If the recipient has not yet enrolled, you may cancel by going to the Zelle section of the Bank of America website or mobile app and tapping on "Activity".

### K. Limits

The following limits apply to Zelle transfers.[1]

|  | Every 24 hours | Every 7 days | Every Month |
|---|---|---|---|
| Consumer | $3500 / 10 Transactions | $10,000 / 30 transactions | $20,000 / 60 Transactions |
| Small Business[2] | $15,000 / 20 Transactions | $45,000 / 60 Transactions | $60,000 / 120 Transactions |

**Case 3:22-cv-00140-MOC-WCM   Document 42-3   Filed 09/11/23   Page 101 of 115**

[1]/Private Bank and Merrill Lynch Wealth Management clients may be subject to higher dollar limits and total transfers. Please contact your advisor for more information on your limits.

[2]/ Zelle send limits are set at the customer profile (Online ID) and apply to all accounts visible in the "From" dropdown when initiating a Zelle payment.  If you are a small business customer and are not receiving the small business limits, make sure you are signed in with your small business Online ID.

There are no receiving limits for Zelle transfers.


## 5. ACH and Wire Transfers

Transfers sent outside of the United States that are initiated by consumers primarily for personal, family or household purposes ("Remittance Transfers"), are governed by federal law (see section 5.F below). This Agreement governs not only Remittance Transfers, but also certain other transfers between your linked accounts at Bank of America and your accounts at other financial institutions, or to someone else's account, using an account number and financial institution identifier.

For transfers other than Remittance Transfers, including general questions, requests for cancellation of payments and transfers, or to report unauthorized transactions, please call us at **800.432.1000** or **866.758.5972** for small business accounts, available Monday through Friday from 7:00 a.m. to 10:00 p.m., and Saturday and Sunday from 8:00 a.m. to 5:00 p.m., local time. From outside of the continental U.S., call us collect at **925.681.7600**.

You may also write us at:

Bank of America
FL1-300-02-07
P.O. Box 25118
Tampa, FL 33622-5118

For Remittance Transfers, please see the contact information in Section 5.F. below.


### A. Security Procedures

By enrolling in the Service and accessing it using your Online ID and passcode, and such other security and identification methods as we may require from time to time, such as security questions or one-time passcodes, you acknowledge and agree that this system includes security procedures for transfers initiated through this Service that are commercially reasonable. You agree to be bound by instructions, whether authorized or unauthorized, which we implement in compliance with these procedures, unless you have given us prior notice of possible unauthorized use of your passcode and we had a reasonable opportunity to act on such notice.


### B. Types of ACH and Wire Transfers

You may send and receive the following types of ACH and Wire transfers:

| Types of Transfers[1, 2] | Sending Limits (24 hours)[3] | Receiving Limits[3] | Fees[4] | Cut-Off Times (all eastern PM) |
|---|---|---|---|---|
| Three Business Day ACH (outbound)<br>• Consumer<br>• Small Business | • $1000<br>• $5000 | • N/A | • **$3**.00<br>• $1.00 | • 8:00<br>• 8:00 |
| Three Business Day ACH (inbound)<br>• Consumer | • N/A | • $10,000 (per 24 hours) | • $0.00 | • 8:00 |

| | | | | |
|---|---|---|---|---|
| | | • $50,000 (monthly) | | |
| Next Business Day ACH (outbound)<br>• Consumer<br>• Small Business | • $1000<br>• $5000 | • N/A | • $10.00<br>• $5.00 | • 8:00<br>• 8:00 |
| Next Business Day ACH (inbound)[5]<br>• Consumer | • N/A | • $10,000 (per 24 hours)<br>• $50,000 (monthly) | • $0.00 | • 8:00 |
| Same Business Day (domestic) Wire Transfer (outbound)<br>• Consumer<br>• Small Business | • $1000<br>• $5000 | • N/A | • **$3**0.00<br>• **$3**0.00 | • 5:00 |
| International Wire Transfer (outbound)<br>• Consumer<br>• Small Business | • $1000<br>• $5000 | • N/A | • $45.00 (US Dollar transfer)<br>• $0.00 (Foreign currency transfer)<br>• $45.00 (US Dollar transfer) $0.00 (Foreign currency) | • 5:00 |

[1]/ For domestic transfers, funds will be debited from your Bank of America account on the business day you direct us to initiate processing of the transfer, and typically will be credited to the receiving account on the same business day, next business day or third business day after the transfer is initiated, depending on your choice.

[2]/ For Direct Payments Service, see the Business Services Addendum for details on fees and limits.

[3]/ Higher limits may apply for Bank of America Private Bank or Merrill. You may be eligible for higher limits if you enroll in SafePass. Learn more about SafePass.

[4]/ You will be charged $25 for each transfer trace that you ask us to execute for you. International transfers may be subject to additional fees charged by intermediary, receiving and beneficiary banks.

[5]/ To be eligible to receive a next business-day ACH transfer, you must first have received an aggregate of $500.00 in one or more three business day ACH transfers, and the first three business day ACH transfer must have been at least 60 days prior to the first next business day ACH transfer.

[6]/ For international outbound transfers, funds will be debited from your Bank of America account on the business day you direct us to initiate processing of the transfer. Bank of America will send the payment out on that business day and, except for Remittance Transfers the beneficiary's bank typically receives the funds 1 to 2 business days later and the funds typically will be credited to the beneficiary within 2 business days. See Section 5.F for special rules applicable to Remittance Transfers.

ACH/Wires send limits are set at the customer profile (Online ID) and apply to all accounts visible in the "From" dropdown when initiating an ACH/Wire payment. If you are a Small Business customer and are not receiving the Small Business limits, make sure you are signed in with your Small Business Online ID.

You may also move money within the U.S. without a transfer fee by using Zelle (described in Section 4 above) or Bill Pay (described in Section 3 above). ACH and Wire transfers are alternatives that allow you to transfer funds when delivery of funds domestically by a specific date is critical or when you are transferring funds outside the U.S.

### C. Transfer Rules

- Small business customers may transfer funds from their business checking account to an individual's or vendor's account at another financial institution, but may not transfer funds from an external account to their small business account. Before scheduling a transfer to an individual, you agree that you will have received a signed authorization from the payee, and that the authorization will not have been revoked. You agree to provide a copy of the authorization to us upon our request. Before scheduling any vendor payment, you agree that you will have received authorization from the vendor to make the payment by electronic means.

- You will need to provide certain identifying information about each non-Bank of America account in order to register that account for this Service. For inbound transfers, you agree that you will only attempt to register non-Bank of America personal accounts that you own or for which you have the authority to transfer funds. Same-Business-Day Wire transfers are not available for inbound transfers. Transfers to accounts located outside the United States are available for outbound transfers only and are subject to the delivery times indicated above. Next-Business-Day and Three-Business-Day ACH transfers are not available for international transfers.

- Bank of America cannot guarantee the timely delivery or return of funds as a result of the failure of another financial institution to act in a timely manner. Please note that beneficiary banks located in some countries may take several days or even weeks to credit the receiving account. There may be some risk in making a transfer to a slow-to-pay country. Currency conversion charges also may apply to international outbound transfers.

- For each transfer, we will e-mail a confirmation to you at the e-mail address indicated in our records. The confirmation will note the date and the amount of the transfer and the bank or institution to or from which the transfer was made. You agree to examine the confirmation promptly upon receipt and to notify us immediately of any discrepancy between the confirmation and your records. Bank of America will not be liable for interest compensation, as otherwise set forth in this Agreement, unless Bank of America is notified of the discrepancy within 30 days from the date of your receipt of the confirmation or your bank statement including the transfer, whichever is earlier. You acknowledge and agree that if a payment order relating to a transfer describes a beneficiary inconsistently by name and account number, payment might be made by the beneficiary's bank on the basis of the account number, even if it identifies a person different from the named beneficiary, and that your obligation to pay the transfer issued by you to us shall not be excused by such payment.

- You agree that you will have sufficient available funds in the designated deposit account to cover all outbound transfers on the date scheduled. If an account does not have sufficient available funds on the scheduled date, we may elect not to initiate one or more of the transfers. If we do elect to initiate the transfer, which may involve one or more attempts on subsequent business days, it may cause an overdraft in your account in which case you shall be liable for the overdraft and any overdraft fees, as set forth in your Deposit Agreement.

- You agree that Bank of America may use any means or routes which we in our sole discretion consider suitable to execute your transfer. For small business customers, if you transfer funds in U.S. dollars to a non-U.S. dollar account, your payment may be converted into the local currency by any originating, intermediary or receiving bank, payment system or payment service provider, including Bank of America or an affiliate, as applicable. We and/or an affiliate include a mark-up or fee on such currency conversion and may profit in connection with any such currency conversion. Bank of America hereby gives notice that Same-Business-Day domestic transfers and international outbound transfers may be executed through Fedwire, a funds transfer system operated by the Federal Reserve Banks, through CHIPS (Clearing House Interbank Payments System), a funds transfer system operated by The Clearing House or through SWIFT (Society for Worldwide Interbank Financial Telecommunication). With respect to payment orders relating to the transfer which are executed through Fedwire, Federal Reserve Regulation J and all applicable Federal Reserve operating rules shall govern the payment orders. With respect to payment orders relating to the transfer which are executed through CHIPS, the CHIPS Operating Rules shall govern the payment orders. With respect to payment orders relating to the transfer which are executed through SWIFT, the SWIFT operating rules shall govern the payment orders. However, with respect to Remittance Transfers, to the extent of any inconsistencies between the above referenced rules and the provisions of the Electronic Funds Transfer Act ("EFTA"), the provisions of EFTA shall prevail. Notwithstanding anything to the contrary contained herein, the rights and obligations that apply to Remittance Transfers are set forth in the EFTA and, as applicable, as set forth in New York law. Three-Business-Day ACH transfers and Next-Business-Day ACH transfers may be made through the Automated Clearing House processor selected by us or directly to another bank, and you agree will be subject to the National Automated Clearing House Association rules or our agreement with the other bank, in effect at such time, as applicable.

Future scheduled or recurring transfers scheduled for a weekend or a non-business day will be processed on the prior business day.

### D. Cancelling Transfers

- Except for Remittance Transfers, if you direct us to begin processing a transfer immediately or a transfer's status is In Process or Processed, you no longer have the right to cancel it. Bank of America may at its option accept your cancellations or amendments to a transfer. You acknowledge that if Bank of America attempts to cancel or amend a transfer, then the reversal request or amendment must be agreed to by each financial institution which has accepted a payment order related to the transfer at issue before it will be acted upon and you further agree that Bank of America shall have no liability if a cancellation or amendment is not completed.

- Except for Remittance Transfers, you can cancel future scheduled and recurring domestic transfers prior to midnight ET on the date processing for the transfer is scheduled to be initiated by accessing the Transfers page and selecting To/From my accounts at other banks or To someone else or business This is the preferred method for cancelling transfers. You may also request to cancel a future scheduled or recurring transfer by calling us at **800.432.1000** for consumer accounts and **866.758.5972** for small business accounts. If you are calling from outside of the continental U.S., call us collect at **925.681.7600**. After you cancel a future-dated transfer, the status changes to Canceled.

- Once an international outbound transfer has been sent, or, in the case of Remittance Transfers, after the 30 minute cancellation period has passed, you may request that a transfer be recalled, and we will communicate your request to the beneficiary's bank. If the beneficiary's bank agrees to return the funds to us, then upon confirmation of receipt of funds in our account, we will credit your account at the current Bank of America retail buy rate for that currency that day (see below). Please note that the exchange rate may be different from the original rate applicable to the transfer, which may result in a loss to you. Furthermore, the beneficiary's bank may assess charges for their services, which will be deducted from the amount returned to you. We will have no liability to you if the beneficiary's bank or foreign beneficiary refuses your request to recall the international wire transfer.

- If a transfer is returned by the receiving bank or beneficiary's bank for no fault of ours, we will credit your account at the current Bank of America retail buy rate for the currency that day (see below). Please note that the exchange rate will be different from the original rate applicable to the transfer, which may result in a loss to you. Furthermore, a returning bank and/or beneficiary's bank may assess charges for their services, which will be deducted from the amount returned to you.

Please see Section 5.F for the cancellation procedures applicable to Remittance Transfers.


## E. Liability

- The following applies to Same-Business Day Domestic Wire transfers and all ACH and Wire transfers from a business account. The liability for Three-Business Day ACH transfers and Next-Business Day ACH transfers involving a transfer to or from a Bank of America consumer account is described in Section 7 below. The liability for Remittance Transfers is described in Section 5.F. below.

- If we fail or delay in making a transfer pursuant to your instructions, or if we make a transfer in an erroneous amount that is less than the amount per your instructions, unless otherwise required by law or as otherwise provided in this Agreement, our liability will be limited to correcting the error. If we make a payment or transfer in an erroneous amount that exceeds the amount per your instructions, or if we permit an unauthorized payment or transfer after we have had a reasonable time to act on a notice from you of possible unauthorized use, unless otherwise required by law or as otherwise provided in this Agreement, our liability will be limited to a refund of the amount erroneously paid or transferred, plus interest thereon from the date of the transfer to the date of the refund, but in no event to exceed 60 days' interest. If we become liable to you for interest compensation under this Agreement or applicable law, such interest shall be calculated based on the average federal funds rate at the Federal Reserve Bank in the district where Bank of America is headquartered for each day interest is due, computed on the basis of a 360-day year. Unless otherwise required by law, in no event will Bank of America be liable to you for special, indirect or consequential damages including, without limitation, loss or damage from subsequent wrongful dishonor resulting from our acts or omissions or lost profits, even if we are advised in advance of the possibility of such damages. We shall not be liable for your attorney's fees, except as required by law.

- You expressly agree that Bank of America shall be liable to you only for our negligent performance or non-performance of the ACH and Wire Transfer services, and that our responsibility shall be limited to the exercise of reasonable and ordinary care. Unless otherwise required by law, Bank of America shall not be liable for any error or delay on the part of any third party or for any other act or omission of any third party, including without limitation third parties used by Bank of America in executing any payment order relating to a transfer or performing a related act, and no such third party shall be deemed to be our agent.

We do not accept any liability for our exchange rates. Any and all liability relating to this information and the rates provided herein is disclaimed, including without limitation, direct, indirect, or consequential loss, and any liability if our exchange rates are different from rates offered or reported by third parties, or offered by us at a different time, at a different location, for a different transaction amount, or involving a different payment media (including, but not limited to bank notes, checks, wire transfers etc.) For Remittance Transfers, the exchange rate to be applied to the transfer will be set forth in disclosures provided to you for the transfer in accordance with federal law.


## F. Special Rules for Remittance Transfers

The following applies to Remittance Transfers.

- As described above, a Remittance Transfer is an electronic transfer of funds initiated by a consumer primarily for personal, family or household purposes to a designated recipient in a foreign country. Federal law provides certain rights and obligations related to Remittance Transfers that may differ from rights and obligations that apply to other types of funds transfers, including disclosure, cancellation and error resolution rights. Your rights with respect to Remittance Transfers will be explained to you in a disclosure provided to you at the time you initiate each Remittance Transfer.

- Prior to sending a Remittance Transfer, we will provide you with certain important disclosures including, if applicable: (i) the amount that will be transferred to the recipient, (ii) a description of any fees or taxes we impose, (iii) the total amount of the transaction (which is the sum of (i) and (ii) above,) and (iv) the exchange rate we will use in the event you tell us that the receiving account is denominated in a foreign currency and you identify such currency . In addition, if you chose to transfer money in foreign currency, the disclosures will also include the following items in such foreign currency: (x) the transfer amount, (y) the fees imposed by third parties in connection with the transfer, and (z) the total amount to be received by the recipient (which is the difference between (x) and (y) above.) Please note the recipient may receive less than the total amount disclosed due to foreign taxes and fees charged by the recipient's financial institution for receiving a Remittance Transfer into an account, which are not required to be disclosed.

Once you confirm your acceptance of the Remittance Transfer terms, you will be shown a receipt which includes the items listed above and, in addition, (i) the date the funds will be available to the recipient, (ii) information you provide that identifies the recipient, and (iii) a statement of your rights in the event of an error or if you wish to cancel the transfer, as described below.

You are hereby notified that in the event that you provide an incorrect account number or institutional identifying number, and we are not able to recover the funds, you may lose the amount of the payment order.

If you think there has been an error or problem with your Remittance Transfer:

Call us at **877.337.8357**; or, from outside the U.S. call us collect at **302.781.6374**.

You can also write to us at:

Bank of America, N.A.
PO Box 25118
Tampa, FL 33622-5118

Frequently asked questions about wire transfers including error resolution procedures, can be viewed by accessing https://www.bankofamerica.com/deposits/wire-transfers-faqs/.

You must contact us within 180 days of the date we indicated to you that funds would be made available to the recipient. When you do, please tell us:

1. Your name and address or telephone number;

2. The error or problem with the transfer, and why you believe it is an error or problem;

3. The name of the person receiving the funds, and if you know it, his or her telephone number or address;

4. The dollar amount of the transfer; and

5. The confirmation code or number of the transaction.

We will determine whether an error occurred within 90 days after you contact us and we will correct any error promptly. We will tell you the results within three business days after completing our investigation. If we decide that there was no error, we will send you a written explanation. You may ask for copies of any documents we used in our investigation.

What to do if you want to cancel a Remittance Transfer:

You have the right to cancel a Remittance Transfer and obtain a refund of all funds paid to us, including any fees, within 30 minutes of your confirmation of the transfer. The best way to cancel a transfer is to sign in to your account at www.bankofamerica.com and select Transfers>Send Money To Someone>Using their account number at another bank to access the right transfers activity tab. Alternatively, you may call us at **877.337.8357**, Monday through Friday from 7:00 a.m. to 10:00 p.m., and Saturday and Sunday from 8:00 a.m. to 5:00 p.m., local time. From outside the U.S., call us collect at **302.781.6374**. When you contact us, you must provide us with information to help us identify the transfer you wish to cancel, including the amount and location where the funds were sent. We will refund your money within three business days of your request to cancel a transfer as long as the funds have not already been picked up or deposited into a recipient's account.

## G. Currency Exchange Rates

We may determine a currency exchange rate and assign it to your transaction without notice to you. Exchange rates fluctuate, at times significantly, and you acknowledge and accept all risks that may result from such fluctuations. If we assign an exchange rate to your foreign exchange transaction, that exchange rate will be determined by us in our sole discretion based upon such factors as we determine relevant, including without limitation, market conditions, exchange rates charged by other parties, our desired rate of return, market risk, credit risk and other market, economic and business factors, and is subject to change at any time without notice. You acknowledge that exchange rates for retail and commercial transactions, and for transactions effected after regular business hours and on weekends, are different from the exchange rates for large inter-bank transactions effected during the business day, as may be reported in The Wall Street Journal or elsewhere. Exchange rates offered by other dealers or shown at other sources by us or other dealers (including online sources) may be different from our exchange rates. The exchange rate you are offered may be different from, and likely inferior to, the rate paid by us to acquire the underlying currency. We reserve the right to refuse to process any request for a foreign exchange transaction.

We provide all-in pricing for exchange rates. The price provided may include profit, fees, costs, charges or other mark ups as determined by us in our sole discretion. The level of the fee or markup may differ for each customer and may differ for the same customer depending on the method or venue used for transaction execution.

We do not accept any liability for our exchange rates. Any and all liability for our exchange rates is disclaimed, including without limitation direct, indirect or consequential loss, and any liability if our exchange rates are different from rates offered or reported by third parties, or offered by us at a different time, at a different location, for a different transaction amount, or involving a different payment media (including but not limited to bank-notes, checks, wire transfers, etc.).

## 6. Online Banking Alerts

### A. General Information

We provide three types of alerts:

1. General & Security Alerts are sent to you when important changes are made online to your account, such as changing your email or home address, telephone number, Online ID or passcode, or unusual card activity.

    General and Security alerts are automatically activated and sent to your primary email address. If you choose, you may turn off General alerts, but not Security alerts.

2. Automatic Alerts provide you with important account notifications, such as information about a money transfer, insufficient funds or availability of a paperless statement.

    Automatic alerts are automatically activated and sent to your primary email address only. You may not turn off Automatic Alerts.

3. Account Alerts allow you to choose optional alert messages for your accounts, such as payment reminders or transaction alerts for credit or debit card charges.

    You must select and activate account alerts; you can turn off account alerts at any time.

Alerts are subject to the following:

- We may add new alerts from time to time, or cancel old alerts. We usually notify you when we cancel alerts, but are not obligated to do so. Because alerts are not encrypted, we will never include your full account number. However, alerts may include your name and some information about your accounts, such as your account balance or due date. Anyone who has access to your messages could view the alert information.

- Alerts will be sent to the email address you have provided as your primary email address for online banking. For General & Security and Account Alerts, you can also choose to have these sent to a secondary email address, a mobile device that accepts text messages or a mobile device that can receive our Mobile App Alerts through a push notification system. You can control mobile Push notification delivery within the Bank of America mobile app. If your email address or your mobile number changes, you are responsible for informing us of that change. While Bank of America does not charge for the delivery of the alerts, please be advised that text or data charges or rates may be imposed by your carrier.

- We do our best to provide alerts in a timely manner with accurate information, but alerts may be delayed or prevented by a variety of factors beyond our control (such as system failures or misdirected delivery). We don't guarantee the delivery or accuracy of alerts. You agree that we are not liable for any delays, failure to deliver, or misdirected delivery of any alert; for any errors in the content of an alert or for any actions taken or not taken by you or a third party as the result of an alert.

### B. Mobile Text Alerts

1. Online Banking Alerts via Text Message

You have the option of adding a mobile phone number to your online banking profile. By adding a mobile phone number to your online banking profile, you are certifying that you are the account holder for the mobile phone account or have the account holder's permission to use the mobile phone number for online banking. You are also consenting to receive online banking Alerts using auto-dialer technology and to receiving text messages. Text message fees may apply depending on your mobile carrier plan.

You can text STOP to **692632** at any time to stop SMS text alerts that you activated on the Alerts Settings pages. Alerts sent to your primary email address won't be affected by this action. To restore text alerts, go to the Alerts Settings pages and reactivate the alerts. For help with SMS text alerts, send the word HELP to **692632**.

2. Security Alerts via Text Message

We may also send credit card, business line of credit and/or debit card security text alerts to your mobile phone number when applicable. Text alerts will be delivered from a short code number which are Free to End User (FTEU), however, data rates may apply depending on your mobile carrier plan. You can opt out of security alerts anytime by sending the word STOP to the applicable short codes below. Opting out of the alerts will automatically STOP all security alerts from being sent to you. If you need further assistance text HELP to any of the following codes for more information.

| Product | Short Code | Toll Free Number |
|---|---|---|
| Credit Card Security Alerts | 322632 | 844.585.0488 |
| Debit Card Security Alerts | 39989 | 844.585.0485 |
| Small Business Credit Card Security Alerts | 96264 | 800.427.2399 |
| Check Fraud Security Alerts | 86006 | 877.887.8935 |
| Digital Banking Security Alerts | 55983 | 866.500.6260 |
| Account Takeover Security Alerts | 56433 | 866.376.7091 |
| Zelle Payment Security Alerts | 80814 | 866.376.4584 |

Account Restrictions alerts are sent from short code **85594**. You can opt out of this alert any time by texting STOP to **85594**. Opting out of this alert will automatically stop these account restriction alerts from being sent to you. Text HELP for SMS help, or call us at **800.427.2449**

For information about our privacy and security practices and a link to our U.S. Consumer Privacy Notice, go to our website at https://www.bankofamerica.com/privacy

## 7. Error Resolution Procedures for Consumer Accounts

### A. In Case of Errors or Questions About Your Electronic Transactions

Send us a secure online mail message or call us at **800.432.1000**

If you are calling from outside of the continental U.S., call us collect at **925.681.7600**

You may also write us at:

**Bank of America**

**FL1-300-02-07**
**P.O. Box 25118**

Case 3:22-cv-00140-MOC-WCM   Document 42-3   Filed 09/11/23   Page 108 of 115

**Tampa, FL 33622-5118**

Contact us immediately if you think:

- Your statement or transaction record is wrong
- You need more information about a transaction listed on your statement
- An unauthorized person has discovered your Online Banking passcode
- Someone has transferred or may transfer money from your account without your permission

We must hear from you no later than 60 days after we have sent the FIRST statement on which the problem or error appeared (or 90 days if the problem or error relates to a transfer from an account maintained at another financial institution).

If you tell us verbally, we may require you to send us your complaint or question in writing or via email within ten (10) business days (Online Banking customers may use secure online mail). When you contact us, please provide the following information:

- Your name and account number
- The date and dollar amount of the transaction in question
- The name of the Payee if the transaction in question is a bill payment
- The transaction number assigned by Online Banking, if available
- A description of the transaction about which you are unsure

Please explain as clearly as you can why you believe there is an error or why you need more information.

We will determine whether an error occurred within 10 business days after we hear from you, and we will promptly correct any error we have made. If we need more time, however, we may take up to 45 days to investigate your complaint or question. In this case, we will provisionally credit your account within 10 business days for the amount you think is in error, so that you have the use of the money during the time it takes us to complete our investigation. If we ask you to put your complaint or question in writing, and we do not receive your letter in 10 business days, we reserve the right not to provisionally credit your account.  For errors involving new accounts, we may take up to 90 days to investigate your complaint or question and up to 20 business days to provisionally credit your account.

We will tell you the results within 3 business days after we complete our investigation.  If we conclude there was no error, we will send you a written explanation. You may request copies of the documents that we used in our investigation.

If your transaction was a Remittance Transfer (transfer of funds initiated by a consumer primarily for personal, family or household purposes to a designated recipient in a foreign country), please see the error resolution procedures in Section 5.F.

**B. Limitation of Liability for Online Banking Transactions**

Tell us at once if you believe your Online Banking passcode has been compromised or if someone has transferred or may transfer money from your account without your permission. The best way to minimize your loss is to call us immediately. The unauthorized use of your Online Banking services could cause you to lose all of your money in your accounts, plus any amount available under your overdraft protection plan.

You will have no liability for unauthorized transactions if you notify us within 60 days after the statement showing the transaction has been mailed to you (or 90 days if the transaction was from an account maintained at another financial institution). If you do not, you may not get back any of the money you lost from any unauthorized transaction that occurs after the close of the 60-day period (or 90 day period if the transaction was from an account maintained at another financial institution), if we can show that we could have stopped the transaction if you had notified us in time. If a good reason (such as a long trip or hospital stay) kept you from telling us, we may extend the time periods.

If you give your Online ID and passcode and grant authority to make transfers to a person who exceeds the authority given, you are responsible for all transactions that person performs unless you notify us that the transfers by that person are no longer authorized. Transactions that you or someone acting with you initiates with fraudulent intent are also authorized transactions.

Note: These liability rules are established by Regulation E, which implements the federal Electronic Fund Transfer Act and does not apply to business accounts. Our liability policy regarding unauthorized Online Banking transactions on consumer deposit accounts may give you more protection, provided you report the transactions promptly. Also, the state law applicable to your account may give you more time to report an unauthorized transaction or may give you more protection.

**C. Our Liability for Failure to Complete Transactions**

If we do not complete a transaction to or from your account on time, or in the correct amount according to our agreement with you, we will be liable for your losses or damages. However, there are some exceptions. For instance, we will not be liable:

- If, through no fault of ours, you don't have enough available funds in your account (or available funds under your overdraft protection plan), or credit to cover the transaction or transfer
- If Online Banking services weren't working properly, and you knew about the malfunction when you started the transaction or transfer
- If circumstances beyond our control (such as fire or flood) prevented the transaction or transfer, despite reasonable precautions we've taken
- If there are postal delays or processing delays by the Payee
- There may be other exceptions not specifically mentioned

### D. Our Liability for ACH and Wire Transfers

For the provisions governing our liability for Same-Business Day Outbound wire transfers and international transfers please see Section 5. Our liability for Three-Business Day ACH transfers and Next Business Day ACH transfers involving a transfer to or from a Bank of America consumer account is as described in this Section 7.

## 8. Additional Provisions Only Applicable to Small Business Accounts

### A. Protecting Passcodes

If you think your passcode may have been compromised, or you believe there has been unauthorized or erroneous online activity with respect to your account, contact us at **866.758.5972**. If you are calling from outside the continental U.S., call us collect at **925.681.7600**.

You agree that we may send notices and other communications, including passcode confirmations, to the current address shown in our records, whether or not that address includes a designation for delivery to the attention of any particular individual. You further agree that Bank of America will not be responsible or liable to you in any way if information is intercepted by an unauthorized person, either in transit or at your place of business. You agree to: 1) keep your passcode secure and strictly confidential, providing it only to authorized signers on your account(s); 2) instruct each person to whom you give your passcode that he or she is not to disclose it to any unauthorized person; and 3) immediately notify us and select a new passcode if you believe your passcode may have become known to an unauthorized person. Bank of America will have no liability to you for any unauthorized payment or transfer made using your passcode that occurs before you have notified us of possible unauthorized use and we have had a reasonable opportunity to act on that notice. We may suspend or cancel your passcode even without receiving such notice from you, if we suspect your passcode is being used in an unauthorized or fraudulent manner. For businesses who use the additional services described in the Business Services Addendum, this section applies to all Online Banking passcodes, including those assigned to users or Administrators. You are responsible for all transactions performed by you and any designated user(s), including Administrator(s), whether you specifically authorize the transactions or not. If you notify us that the person is no longer authorized, then only transactions that person performs after the time you notify us are considered unauthorized.

### B. Acknowledgment of Commercially Reasonable Security Procedures

By using Online Banking, you acknowledge and agree that this Agreement sets forth security procedures for electronic banking transactions that are commercially reasonable. You agree to be bound by instructions, whether authorized or unauthorized, which we implement in compliance with these procedures, unless you have given us prior notice of possible unauthorized use as described above (and we had a reasonable opportunity to act on such notice).

### C. Limitation of Bank's Liability

If we fail or delay in making a payment or transfer pursuant to your instructions, or if we make a payment or transfer in an erroneous amount that is less than the amount per your instructions, unless otherwise required by law, our liability shall be limited to interest on the amount that we failed to timely pay or transfer, calculated from the date on which the payment or transfer was to be made until the date it was actually made or you canceled the instructions. We may pay such interest either to you or the intended recipient of the payment or transfer, but in no event will we be liable to both parties, and our payment to either party will fully discharge any obligation to the other. If we make a payment or transfer in an erroneous amount that exceeds the amount per your instructions, or if we permit an unauthorized payment or transfer after we have had a reasonable time to act on a notice from you of possible unauthorized use as described above, unless otherwise required by law, our liability will be limited to a refund of the amount erroneously paid or transferred, plus interest thereon from the date of the payment or transfer to the date of the refund, but in no event to exceed 60 days' interest. If we become liable to you for interest compensation under this Agreement or applicable law, such interest shall be calculated based on the average federal funds rate at the Federal Reserve Bank in the district where Bank of America is headquartered for each day interest is due, computed on the basis of a 360-day year. Unless otherwise required by law, in no event will Bank of

America be liable to you for special, indirect or consequential damages including, without limitation, lost profits or attorney's fees, even if we are advised in advance of the possibility of such damages.

For the provisions governing our liability for ACH or Wire Transfers, please see Section 5.E above.

## 9. Disclaimer of Warranties, Limitation of Liability and Indemnification

### A. Disclaimer of Warranties

EXCEPT AS OTHERWISE PROVIDED HEREIN, AND SUBJECT TO APPLICABLE LAW, NEITHER WE NOR OUR VENDORS, INCLUDING OUR OR THEIR OWNERS, DIRECTORS, OFFICERS OR AGENTS, MAKE ANY EXPRESS OR IMPLIED WARRANTIES, REPRESENTATIONS OR ENDORSEMENTS WHATSOEVER WITH RESPECT TO THE SERVICES.  WE AND OUR VENDORS EXPRESSLY DISCLAIM ALL WARRANTIES OF ANY KIND, EXPRESS, IMPLIED, STATUTORY OR OTHERWISE, INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE AND NON-INFRINGEMENT, WITH REGARD TO THE SERVICES DESCRIBED OR PROVIDED. NEITHER WE NOR OUR VENDORS, INCLUDING OUR OR THEIR OWNERS, DIRECTORS, OFFICERS OR AGENTS, WARRANT THAT THE SERVICES WILL BE UNINTERRUPTED, TIMELY, SECURE OR ERROR-FREE, OR THAT DEFECTS WILL BE CORRECTED. THE SERVICES ARE PROVIDED ON AN "AS IS" AND "AS AVAILABLE" BASIS. FOR PURPOSES OF THIS AGREEMENT, "VENDOR(S)" MEANS ANY THIRD-PARTY SERVICE PROVIDER, NETWORK OR PARTNER FINANCIAL INSTITUTION WE MAY ENGAGE TO PERFORM FUNCTIONS FOR US UNDER THIS AGREEMENT.

NEITHER WE NOR OUR VENDORS, INCLUDING OUR OR THEIR OWNERS, DIRECTORS, OFFICERS OR AGENTS, WARRANT THAT THE WEB SITE, OR THE SERVER THAT MAKES THEM AVAILABLE, IS FREE OF VIRUSES OR OTHER HARMFUL COMPONENTS. YOU ASSUME THE ENTIRE COST OF ALL NECESSARY SERVICING, REPAIR, OR CORRECTION OF PROBLEMS CAUSED BY VIRUSES OR OTHER HARMFUL COMPONENTS.

### B. Limitation of Liability

EXCEPT AS OTHERWISE PROVIDED HEREIN, AND SUBJECT TO APPLICABLE LAW, IN NO EVENT WILL WE OR OUR VENDORS, INCLUDING OUR OR THEIR OWNERS, DIRECTORS, OFFICERS OR AGENTS BE LIABLE FOR ANY DAMAGES WHATSOEVER, INCLUDING, BUT NOT LIMITED TO ANY DIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL, EXEMPLARY OR OTHER INDIRECT DAMAGES ARISING OUT OF (I) ANY TRANSACTION CONDUCTED THROUGH OR FACILITATED BY THE SERVICES; (II) ANY CLAIM ATTRIBUTABLE TO ERRORS, OMISSIONS, OR OTHER INACCURACIES IN THE SERVICES DESCRIBED OR PROVIDED, (III) UNAUTHORIZED ACCESS TO OR ALTERATION OF YOUR TRANSMISSIONS OR DATA, OR (IV) ANY OTHER MATTER RELATING TO THE SERVICES DESCRIBED OR PROVIDED, EVEN IF WE OR OUR VENDORS HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. IF YOU ARE DISSATISFIED WITH THE SERVICES OR WITH THE TERMS OF THIS AGREEMENT, YOUR SOLE AND EXCLUSIVE REMEDY IS TO DISCONTINUE USING THE SERVICES.

FURTHER, WE SHALL NOT BE LIABLE TO YOU OR ANY THIRD PARTY FOR FAILURE TO EXECUTE ANY TRANSFER OR PERFORM A RELATED ACT IF SUCH FAILURE IS DUE TO CAUSES OR CONDITIONS BEYOND OUR REASONABLE CONTROL, INCLUDING WITHOUT LIMITATION, STRIKES, RIOTS, INSURRECTION, WAR, MILITARY OR NATIONAL EMERGENCIES, ACTS OF GOD, NATURAL DISASTERS. FIRE, OUTAGES OF COMPUTERS OR ASSOCIATED EQUIPMENT, QUARANTINES, PANDEMICS. OR FAILURE OF TRANSPORTATION OR COMMUNICATION METHODS OR POWER SUPPLIES.

IN THOSE STATES WHERE THE EXCLUSION OR LIMITATION OF LIABILITY FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES MAY NOT APPLY, ANY LIABILITY OF US OR OUR VENDORS, INCLUDING OUR OR THEIR OWNERS, DIRECTORS, OFFICERS AND AGENTS IN THOSE STATES IS LIMITED AND WARRANTIES ARE EXCLUDED TO THE GREATEST EXTENT PERMITTED BY LAW, BUT SHALL, IN NO EVENT, EXCEED ONE HUNDRED DOLLARS ($100.00).

### C. Indemnification

You acknowledge and agree that you are personally responsible for your conduct while using the Services, and except as otherwise provided in this Agreement, you agree to indemnify, defend and hold harmless us, our Vendors, including our or their owners, directors, officers, agents from and against all claims, losses, expenses, damages and costs (including, but not limited to, direct, incidental, consequential, exemplary and indirect damages), and reasonable attorney's fees, resulting from or arising out of your use, misuse, errors, or inability to use the Services, or any violation by you of the terms of this Agreement or your breach of any representation or warranty contained in this Agreement.

The provisions of Sections 9.A, B and C shall survive termination of this Agreement.

## 10. Other Terms and Conditions

### A. Service Charges

Except as otherwise provided in this Agreement or your applicable account agreements and schedule of fees, there is no service charge for accessing your linked accounts with the Service.

In addition to the fees already described in this Agreement, you should note that depending on how you access the Services, you might incur charges for:

- Normal account fees and service charges, such as stop payment requests, check copy orders and account statement copy orders.
- Internet service provider fees.
- Wireless carrier fees.
- A non-sufficient funds fee, returned item, overdraft or similar fee may also apply if you schedule payments or transfers and your available balance is not sufficient to process the transaction on the date scheduled or, in the case of a personal check used for a bill payment, on the date when the check is presented to us for payment.

### B. Service Hours

The Services are available 365 days a year and 24 hours a day, except during system maintenance and upgrades. When this occurs, a message will be displayed on-line when you sign on to Online Banking. Our Call Centers are available Monday through Friday from 7:00 a.m. to 10:00 p.m., and Saturday and Sunday from 8:00 a.m. to 5:00 p.m. local time, excluding bank holidays, and may be reached through the contact numbers contained in the applicable sections of this Agreement. You may also write us at:

**Bank of America**
**FL1-300-02-07**
**P.O. Box 25118**
**Tampa, FL 33622-5118**

### C. Business Days

For the Services, our business days are Monday through Friday, excluding bank holidays. For investment accounts only, all stock exchange closures and holidays will be observed (such as Good Friday) as well as the bank holidays.

### D. Changes to Agreement

We may add, delete or change the terms of this Agreement at any time. We will inform you of changes when legally required and will try to inform you of the nature of any material changes even when not legally required to do so. We may communicate changes by either mail, email or a notice on our website and will make the updated terms available on our website. You agree that by continuing to use the Services after the date that changes are posted to our website, such changes will be effective for transactions made after that date, whether or not you access the website or otherwise receive actual notice of the changes. If you do not agree with a change, you may discontinue using the Services.

### E. Cancellation

The Services remain in effect until they are terminated by you or Bank of America. You may cancel one or more of your Services at any time by notifying us of your intent to cancel in writing, through Online Banking secure mail, or by calling customer service at **800.432.1000**. For small business accounts, call **866.758.5972.** This cancellation applies to your Services, and does not terminate your Bank of America accounts. We recommend that you cancel any scheduled payments prior to notifying us that you are discontinuing the Service. Otherwise, Bank of America will cancel any scheduled payments within two (2) business days from the date we receive your request to discontinue the Service. If you close your primary checking account, or there is no longer any eligible funding account linked to your Service, any unprocessed payments will be canceled. The Services will also end if you close all accounts linked to your Online Banking profile.

We may terminate your participation in any or all of your Services for any reason, including inactivity, at any time. We will try to notify you in advance, but we are not obliged to do so.

### F. Disclosure of Account Information

We may disclose information about your accounts to consumer reporting agencies and to other persons or agencies who, in our judgment, have a legitimate purpose for obtaining information, as more fully described in the account agreement for the applicable account.

By enrolling in online and mobile banking, you will be automatically enrolled in the Bank's merchant rewards program, BankAmeriDeals, whereby the Bank will share anonymized transaction information with vendors in order to facilitate your participation in the rewards program and present offers that may be of interest to you.  By participating in BankAmeriDeals, the Bank will also share anonymized transaction information with participating merchants, third parties and card networks to administer your benefits and rewards.  As always, we will only use personally identifiable information if needed and in accordance with our Online Privacy Notice and U.S. Consumer Privacy Notice.

By using our services, you authorize your wireless operator (AT&T, Sprint, T-Mobile, US Cellular, Verizon, or any other branded wireless operator) to use, or to disclose to Bank of America, or other entities working with Bank of America, your mobile number, name, address, email, network status, customer type, customer role, billing type, mobile device identifiers (IMSI and IMEI) and other subscriber and device status details, if available, where provided in accordance with your mobile operator's privacy policy, for the duration of our business relationship solely to help verify your identity and to protect against or prevent actual or potential fraud or unauthorized use of our services.

We will only use personally identifiable information in accordance with our Online Privacy Notice and U.S. Consumer Privacy Notice.  For more information, go to our Web site at https://www.bankofamerica.com/privacy.

We make security and the protection of your information a top priority. You can access our Online Privacy Notice and U.S. Consumer Privacy Notice at https://www.bankofamerica.com/security-center/overview/, which are incorporated into and made a part of this Agreement by this reference.

## G. Consent to Provide Electronic Communications

As part of Online Banking enrollment, you consented to the Online Banking Electronic Communications Disclosure ("eCommunications Disclosure") which allows us to provide you with account-related communications electronically.  Pursuant to this consent, we will deliver these communications electronically by either posting the communication to your online banking secure mailbox or to our website, sending it to your email address or by other electronic means.   You are responsible for providing us with a valid e-mail address to accept delivery of electronic communications and you must notify us of any changes or updates to your email address.  You agree that once we email or post the communications within our website, we have delivered the Communications to you in a form that you can retain.  You have the option to view, save, or print PDF versions of your account documents from the Website via desktop, tablet or mobile device.

Business Services Addendum

Some accounts and services, and the fees that apply to them, vary from state to state. Please review the information for your state in the Personal Schedule of Fees (at www.bankofamerica.com/feesataglance or at your local Banking Center) and in the Online Banking Service Agreement at www.bankofamerica.com/serviceagreement.

Bank of America, N.A. Member FDIC. Equal Housing Lender
© 2020 Bank of America Corporation. All rights reserved.

Connect with us

Case 3:22-cv-00140-MOC-WCM   Document 42-3   Filed 09/11/23   Page 113 of 115

**EXHIBIT F**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ELINE BAROKAS, on behalf of herself and all others similarly situated, | |
| Plaintiff, | Case No. 1:21-cv-02272 (AT)(OTW) |
| v. | |
| BANK OF AMERICA, N.A., | |
| Defendants. | |

## STIPULATION OF DISMISSAL WITH PREJUDICE

Plaintiff Eline Barokas and Defendant Bank of America, N.A., by and through their

undersigned attorneys, pursuant to Fed. R. Civ. P. 41(a)(1)(ii), hereby stipulate to dismissal of all

claims and causes of action by Plaintiff with prejudice, with each party to bear its own costs,

expenses, and attorneys' fees.

Date: September ___, 2023

**SHAMIS & GENTILE, P.A.**

Andrew Shamis
14 NE 1st Avenue, Suite 705
Miami, FL 33132
Tel.: (305) 479-2299
*ashamis@shamisgentile.com*

**EDELSBERG LAW, P.A.**
Scott Edelsberg
Christopher Gold
20900 NE 30th Ave., Suite 417
Aventura, FL 33180
Tel.: (305) 975-3320
*scott@edelsberglaw.com*
*chris@edelsberglaw.com*

*Attorneys for Plaintiff Eline Barokas*

Date: September ___, 2023

**GOODWIN PROCTER** LLP

Allison J. Schoenthal
Robin Muir
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel.: (212) 813-8800
*ASchoenthal@goodwinlaw.com*
*RobinMuir@goodwinlaw.com*

*Attorneys for Defendant Bank of America, N.A.*